# EXHIBIT 1

This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

## State of Indiana v. 3M COMPANY, AGC CHEMICALS AMERICAS, INC., ARCHROMA U.S., INC.et al

| | |
|---|---|
| Case Number | 73D01-2404-PL-000009 |
| Court | Shelby Superior Court 1 |
| Type | PL - Civil Plenary |
| Filed | 04/10/2024 |
| Status | 04/10/2024 , Pending  (active) |

## Parties to the Case

Defendant  3M COMPANY

| Address | c/o Registered Agent
Corporation Service Company
135 North Pennsylvania Street, Suite 1610
Indianapolis, IN 46204 |
|---|---|

Defendant  AGC CHEMICALS AMERICAS, INC.

| Address | c/o Registered Agent
CT Corporation System
334 North Senate Avenue
Indianapolis, IN 46204 |
|---|---|

Defendant  ARCHROMA U.S., INC.

| Address | c/o Registered Agent
CT Corporation System
334 North Senate Avenue
Indianapolis, IN 46204 |
|---|---|

Defendant  ARKEMA INC.

| Address | c/o Registered Agent
Corporation Service Company
135 North Pennsylvania Street, Suite 1610
Indianapolis, IN 46204 |
|---|---|

Defendant  BASF CORPORATION

| Address | c/o Registered Agent |
| | CT Corporation System |
| | 334 North Senate Avenue |
| | Indianapolis, IN 46204 |

**Defendant   BUCKEYE FIRE EQUIPMENT COMPANY**

| Address | c/o Registered Agent |
| | A Haon Corporate Agent, Inc. |
| | 29225 Chagrin Blvd., Suite 350 |
| | Pepper Pike, OH 44122 |

**Defendant   CARRIER FIRE & SECURITY CORPORATION**

| Address | c/o Registered Agent |
| | United Agent Group, Inc. |
| | 801 US Highway 1 |
| | North Palm Beach, FL 33408 |

**Defendant   CARRIER FIRE & SECURITY AMERICAS CORPORATION**

| Address | c/o Registered Agent |
| | United Agent Group, Inc. |
| | 8520 Allison Pointe Blvd. #220 |
| | Indianapolis, IN 46250 |

**Defendant   CARRIER GLOBAL CORPORATION**

| Address | c/o Registered Agent |
| | United Agent Group, Inc. |
| | 801 US Highway 1 |
| | North Palm Beach, FL 33408 |

**Defendant   CHEMDESIGN PRODUCTS, INC.**

| Address | c/o Registered Agent |
| | Corporation Service Company |
| | 33 East Main Street, Suite 610 |
| | Madison, WI 53703 |

**Defendant   CHEMGUARD, INC.**

| Address | c/o Registered Agent |
| | CT Corporation System |
| | 1999 Bryan St., Ste. 900 |
| | Dallas, TX 75201 |

Defendant   CLARIANT CORPORATION

Address
c/o Registered Agent
Corporation Service Company
135 North Pennsylvania Street, Suite 1610
Indianapolis, IN 46204

Defendant   CORTEVA, INC.

Address
c/o Registered Agent
CT Corporation System
334 North Senate Avenue
Indianapolis, IN 46204

Defendant   DUPONT DE NEMOURS, INC.

Address
c/o Registered Agent
The Corporation Trust Company
Corporation Trust Center 1209 Orange St.
Wilmington, DE 19801

Defendant   DYNAX CORPORATION

Address
c/o Registered Agent
Corporate Systems LLC
3500 S. Dupont Highway
Dover, DE 19901

Defendant   EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY

Address
c/o Registered Agent
CT Corporation System
334 North Senate Avenue
Indianapolis, IN 46204

Defendant   THE CHEMOURS COMPANY

Address
c/o Registered Agent
CT Corporation System
334 North Senate Avenue
Indianapolis, IN 46204

Defendant   KIDDE-FENWAL, INC.

| Address | c/o Registered Agent |
| --- | --- |
| | United Agent Group, Inc. |
| | 225 Cedar Hill Street #200 |
| | Marlborough, MA 01752 |

Defendant   KIDDE LIMITED

| Address | c/o Registered Agent |
| --- | --- |
| | United Agent Group, Inc. |
| | 1521 Concord Pike, Suite 201 |
| | Wilmington, DE 19803 |

Defendant   NATIONAL FOAM, INC.

| Address | c/o Registered Agent |
| --- | --- |
| | The Corporation Trust Company |
| | Corporation Trust Center 1209 Orange St. |
| | Wilmington, DE 19801 |

Defendant   TYCO FIRE PRODUCTS LP

| Address | c/o Registered Agent |
| --- | --- |
| | The Corporation Trust Company |
| | Corporation Trust Center 1209 Orange St. |
| | Wilmington, DE 19801 |

Defendant   UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION

| Address | CT Corporation |
| --- | --- |
| | 4701 Cox Rd. |
| | Ste. 285 |
| | Glen Allen, VA 23060 |

Defendant   ABC CORPORATIONS 1-10

Plaintiff   State of Indiana

| | |
|---|---|
| Attorney | Betsy Mae DeNardi<br>*#2385671, Lead, Retained*<br><br>Indiana Government Center South, Fifth Floor<br>302 W Washington Street<br>Indianapolis, IN 46204-2770<br>317-232-6231(W) |
| Attorney | Scott Leroy Barnhart<br>*#2547482, Retained*<br><br>230 E. Ohio Street<br>Suite 400<br>Indianapolis, IN 46204<br>317-232-6309(W) |
| Attorney | Cory C. Voight<br>*#2318049, Retained*<br><br>302 West Washington Street<br>Indianapolis, IN 46204<br>317-234-7132(W) |

## Chronological Case Summary

| 04/10/2024 | **Case Opened as a New Filing** | |
|---|---|---|
| 04/10/2024 | **Complaint/Equivalent Pleading Filed**<br>Complaint for Damages and Injunctive Relief | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |
| 04/10/2024 | **Appearance Filed**<br>Appearance | |
| | For Party: | State of Indiana |
| | File Stamp: | 04/10/2024 |
| 04/10/2024 | **Subpoena/Summons Filed**<br>Summons to 3M Company | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to AGC Chemicals | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Archroma | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Arkema | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to BASF | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Buckeye Fire Equipment | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Carrier Fire and Security Americas | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Carrier Fire and Security Corp. | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Carrier Global | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

4/30/24, 4:54 PM
Case 1:24-cv-00750-JRS-MKK   Document 1-1   Filed 05/01/24   Page 8 of 181 PageID #:
Summary of Case
&lt;pageID&gt;

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Chemdesign | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Chemguard | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Chemours Company | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Clariant | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Corteva | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Dynax | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to EIDP | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Kidde Limited | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Kidde-Fenwal | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to National Foam | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to DuPont de Nemours | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Tyco | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to UTC | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Appearance Filed** | |
|---|---|---|
| | Appearance | |
| | For Party: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/10/2024 | **Appearance Filed** | |
|---|---|---|
| | Appearance | |
| | For Party: | State of Indiana |
| | File Stamp: | 04/10/2024 |

| 04/25/2024 | **Document Filed** | |
|---|---|---|
| | Return of Service | |
| | Filed By: | State of Indiana |
| | File Stamp: | 04/25/2024 |

| 04/26/2024 | **Automated Paper Notice Issued to Parties** |
|---|---|
| | Document Filed ---- 4/25/2024 : 3M COMPANY;AGC CHEMICALS AMERICAS, INC.;ARCHROMA U.S., INC.;ARKEMA INC.;BASF CORPORATION;BUCKEYE FIRE EQUIPMENT COMPANY;CARRIER FIRE & SECURITY CORPORATION;CARRIER FIRE & SECURITY AMERICAS CORPORATION;CARRIER GLOBAL CORPORATION;CHEMDESIGN PRODUCTS, INC.;CHEMGUARD, INC.;CLARIANT CORPORATION;CORTEVA, INC.;DUPONT DE NEMOURS, INC.;DYNAX CORPORATION;EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY;THE CHEMOURS COMPANY;KIDDE-FENWAL, INC.;KIDDE LIMITED;NATIONAL FOAM, INC.;TYCO FIRE PRODUCTS LP;UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION |

| 04/26/2024 | **Automated ENotice Issued to Parties** |
|---|---|
| | Document Filed ---- 4/25/2024 : Betsy Mae DeNardi;Cory C. Voight;Scott Leroy Barnhart |

This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. 73D01-2404-PL-000009 _____

|  |  |
|---|---|
| STATE OF INDIANA<br><br>               Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>               Defendants. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**REQUEST FOR JURY TRIAL** |

1.     The State of Indiana ("State" or "Indiana"), by and through Attorney General Todd

Rokita, commences this civil action seeking injunctive relief, damages, civil penalties, costs, and

other relief against Defendants 3M Company ("3M"); AGC Chemicals Americas, Inc. ("AGC

Chemicals"); Archroma U.S., Inc. ("Archroma"); Arkema Inc. ("Arkema"); BASF Corporation

("BASF"); Buckeye Fire Equipment Company ("Buckeye"); Carrier Fire & Security Corporation

("Carrier Fire"); Carrier Fire & Security Americas Corporation ("Carrier Fire Americas"), Carrier Global Corporation ("Carrier"); ChemDesign Products, Inc. ("ChemDesign"); Chemguard, Inc. ("Chemguard"); Clariant Corporation ("Clariant"); Corteva, Inc. ("Corteva"); DuPont de Nemours, Inc. ("New DuPont"); Dynax Corporation ("Dynax"); EIDP, Inc., f/k/a E. I. du Pont de Nemours and Company ("Old DuPont"); The Chemours Company ("Chemours"); Kidde-Fenwal Inc. ("KFI"); Kidde Limited ("Kidde Limited"); National Foam, Inc. ("National Foam"); United Technologies Corporation n/k/a RTX Corporation ("UTC"); Tyco Fire Products LP ("Tyco"); and ABC Corporations 1-10 (names fictitious) (collectively, "Defendants").

2.      For decades, Defendants have known of the dangers of toxic per- and polyfluoroalkyl substances, including but not limited to perfluorooctane sulfonic acid ("PFOS"), perfluoroheptanoic acid ("PFHpA"), perfluorooctanoic acid ("PFOA"), perfluorohexane sulfonic acid ("PFHxS"), perfluorodecanoic acid ("PFDA"), perfluorononanoic acid ("PFNA"), perfluorobutane sulfonic acid ("PFBS"), and hexafluoropropylene oxide dimer acid ("HFPO-DA," also known as "GenX") (collectively, "PFAS"). Accordingly, Defendants have also known of the dangers of PFAS, including, but not limited to, those in: (i) aqueous film-forming foam ("AFFF") used for firefighting training and emergency response at military and industrial facilities, airports, and other locations throughout the State, as well as related fluorochemicals and fluorosurfactants (together with AFFF, "AFFF Products"); (ii) consumer products, including personal, family, and household products like Stainmaster®, Scotchgard™, and Teflon® (together with AFFF Products, "PFAS-containing Products"); and (iii) PFAS released from industrial facilities and other sources.

3.      Despite this knowledge, Defendants chose not to take steps to reduce those risks; instead they continued to advertise, market, manufacture for sale, offer for sale, and sell PFAS-containing Products, including AFFF Products to, inter alia, state and local governments, fire

departments, businesses, and everyday consumers. Now that the State and the larger public are becoming aware of just some of the massive problems Defendants have created while reaping enormous profits, Defendants are seeking to foist the equally massive costs of addressing those problems onto the victims of their deceit.

4.     The U.S. Environmental Protection Agency ("EPA") claims to have identified more than 12,000 types of PFAS and has concluded that exposure to PFAS may lead to significant negative health effects, including but not limited to: decreased fertility; preeclampsia and high blood pressure in pregnant women; adverse developmental effects in children such as low birth weight, accelerated puberty, bone variations, and behavioral changes; increased risk of certain cancers, including kidney and testicular cancers; reduced ability of the body's immune system to fight infections, including reduced vaccine response; interference with the body's natural hormones; ulcerative colitis; thyroid disease; and medically diagnosed high cholesterol and/or high risk of obesity.

5.     Defendants knew that their PFAS and PFAS-containing Products, including AFFF Products, when used as intended, would cause releases of PFAS into the environment, harm people and natural resources, and require enormous costs to remediate. Yet, they concealed information about the chemicals' negative health effects, and affirmatively contradicted such information in public statements and marketing campaigns, in pursuit of profit.

6.     Defendants' tortious, deceptive, unlawful, unfair, and/or abusive actions have caused and/or contributed to significant known PFAS contamination of the State's air, soil, sediment, biota, surface water, groundwater, drinking water, watercourses, wetlands, other natural resources, and property held in trust or otherwise owned by the State. Through these actions, toxic and persistent "forever chemicals" are contaminating countless water supplies, and it will require significant effort and expense to supply potable water to large numbers of people in the State and to investigate, treat,

3

and remediate the contamination of the State's natural resources, property held in trust by the State, and/or property otherwise owned by the State.

7.      Despite expending significant public resources to study the nature and extent of existing PFAS contamination in the State, the State has only just begun to understand the extent of the problem, and its understanding of the PFAS problem continues to grow. The PFAS contamination that Defendants caused has called for, and will call for, substantial effort and expense to investigate, treat, and remediate. The Defendants who created and profited from the creation of this problem must pay to address the PFAS contamination throughout the State.

8.      Many locations in the State have been identified as being contaminated with PFAS. Sampling conducted by the Indiana Department of Environmental Management ("IDEM") between March 2021 and December 2023 revealed levels of PFAS above EPA Health Advisory Levels in public drinking water in the following counties: Clark, Floyd, Gibson, Harrison, Johnson, Posey, Vigo, Warrick, LaPorte, Perry, Crawford, Carroll, Elkhart, Sullivan, Decatur, Cass, Bartholomew, Lake, Jackson, Jefferson, Madison, Marion, Scott, and St. Joseph.

9.      Samples of untreated groundwater from Columbus City, Bartholomew County, contained levels of PFOA as high as 81 parts per trillion ("ppt") – over 20 times higher than the proposed federal maximum contaminant level of 4 ppt.

10.      In addition, the Army National Guard performed a Site Investigation at Shelbyville Army Aviation Support Facility in 2022, the results of which indicate PFAS contamination likely caused by Defendants' AFFF Products. Soil samples taken at the Facility contained concentrations of PFOS as high as 2,680,000 ppt – 670,000 times higher than the proposed federal maximum contaminant level of 4 ppt. Grissom Air Reserve Base and Fort Benjamin Harrison are likewise

contaminated as a result of AFFF, with elevated levels of PFAS detected in soil, sediment, surface water, and/or groundwater near fire training areas, fire stations, and hangars.

11.     Studies of indoor air and house dust indicate exposure to PFAS from products used for household purposes, such as carpet cleaners, nonstick cookware, packaged fast food, and waterproof clothing.[1] Defendants misrepresented or failed to disclose the health risks and environmental degradation arising from normal use and disposal of their PFAS-containing Products, depriving consumers of the opportunity to make informed decisions about their health and the health of their families before entering into a consumer transaction. Such practices by Defendants constitute deceptive, unfair, and/or abusive acts or practices in the context of consumer transactions, in violation of Indiana's Deceptive Consumer Sales Act.

12.     Furthermore, Defendants echoed and reinforced their misrepresentations through deceptive, unfair, and/or abusive marketing practices. Decades after Defendants had data demonstrating the adverse impacts of PFAS on human health, advertisements touting the safety of PFAS-containing Products were distributed to consumers through various channels nationwide, including in Indiana.

13.     The injury caused by PFAS contamination to the State of Indiana, the wellbeing of its residents, and its natural resources, is indivisible and attributable to all Defendants. For the reasons set forth herein, the State seeks to hold Defendants accountable for the harm they have caused, and continue to cause, to Indiana and its residents.

---

[1]   *See, e.g.,* ATSDR, "PFAS Chemical Exposure" (2022), https://www.atsdr.cdc.gov/pfas/health-effects/exposure.html; Indiana Department of Health, Environmental Public Health Division, "PFAS and Health" (2022), https://www.in.gov/health/eph/files/PFAS-and-Health.pdf; Tina Savvaides et al., "Prevalence and Implications of Per- and Polyfluoroalkyl Substances (PFAS) in Settled Dust." *Current Env't Health Reps.* 8, no. 4 (2021): 323-35, https://doi.org/10.1007/s40572-021-00326-4.

## II.  THE PARTIES

14.     The State brings this action as an exercise of its authority to protect public trust resources and its inherent police powers, which include but are not limited to: its power to restrain a person's contribution to pollution; protect the State's natural resources from significant pollution, impairment, or destruction; abate or enjoin a nuisance; prevent pollution of the State's water, biota, land, and soil; and prevent and abate hazards to public health, safety, and welfare. The Attorney General has authority to bring this lawsuit pursuant to Indiana Code ("I.C.") §§ 4-6-1-6, 4-6-3-2, 13-30-1-1, 14-11-5-1, 24-5-0.5-4, 32-30-6-7.

15.     The State also brings this suit in its *parens patriae* capacity for the benefit of its residents and to protect the State's interests in the welfare of its citizens and its natural resources.

16.     This action is also brought pursuant to the State's possessory interest in State-owned land and other public property.

17.     Defendant 3M Company ("3M") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. 3M has designed, manufactured, marketed, promoted, distributed, and/or sold PFAS-containing Products that were used and/or disposed of in Indiana. 3M is registered to do business in Indiana.

18.     Defendant AGC Chemicals Americas, Inc. ("AGC Chemicals") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 5 East Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. AGC Chemicals is the North American subsidiary of AGC Inc. (f/k/a Asahi Glass Co., Ltd.). AGC Chemicals and/or its affiliates have designed, manufactured, marketed, promoted, distributed, and/or sold PFAS used to manufacture PFAS-containing Products that were used and/or disposed of in Indiana. AGC Chemicals is registered to do business in Indiana.

6

19.     Defendant Archroma U.S., Inc. ("Archroma") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 5435 77 Center Drive, Suite 10, Charlotte, North Carolina 28217. Archroma, a subsidiary of Archroma Management, LLC, has designed, manufactured, marketed, promoted, distributed, and/or sold PFAS used to manufacture PFAS-containing Products that were used and/or disposed of in Indiana. Archroma is registered to do business in Indiana. On information and belief, Archroma is a successor to Clariant, which manufactured fluorochemicals used in AFFF and was formerly known as Sandoz Chemicals Corporation and Sodeyeco, Inc.

20.     Defendant Arkema Inc. ("Arkema") is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business located at 900 First Avenue, King of Prussia, Pennsylvania 19406. Arkema is a successor in interest to Atochem North America Inc.; Elf Atochem North America, Inc.; and Atofina Chemicals, Inc. Arkema and/or its predecessors have designed, manufactured, marketed, promoted, distributed, and/or sold PFAS used to manufacture PFAS-containing Products that were used and/or disposed of in Indiana. Arkema is registered to do business in Indiana.

21.     Defendant BASF Corporation ("BASF") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 100 Park Avenue, Florham Park, New Jersey 07932. On information and belief, BASF is the successor in interest to Ciba Inc. (f/k/a Ciba Specialty Chemicals Corporation). On information and belief, Ciba Inc. designed, manufactured, marketed, promoted, distributed, and/or sold PFAS used to manufacture PFAS-containing Products that were used and/or disposed of in Indiana. BASF is registered to do business in Indiana.

22.     Defendant Buckeye Fire Equipment Company ("Buckeye") is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business located at 110 Kings Road, Kings Mountain, North Carolina 28086. Buckeye has designed, manufactured, marketed, promoted, distributed, and/or sold PFAS-containing Products that were used and/or disposed of in Indiana.

23.     Defendant Carrier Fire & Security Corporation ("Carrier Fire") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Carrier Fire is the indirect parent of Kidde-Fenwal, Inc., which is the successor in interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc., f/k/a National Foam System, Inc.) (collectively, "Kidde/Kidde Fire"). Carrier Fire is the entity formerly known as UTC Fire & Security Corporation ("UTC F&S"),[2] following the spinoff transaction described below. UTC F&S is the successor to Kidde Limited, f/k/a Kidde plc, which, as set forth below, assumed historical liabilities for the AFFF business operated by the National Foam brand in 2000. UTC F&S is also liable for the AFFF business through its ownership of, control over, and conduct associated with the business operations related to AFFF, including with respect to communications to regulators and efforts to capture AFFF market share. On or about September 28, 2020, UTC F&S changed its name to Carrier Fire.  At no time did Carrier Fire/UTC F&S disclose the dangers related to AFFF. Carrier Fire is registered to do business in Indiana.

24.     Defendant Carrier Fire & Security Americas Corporation ("Carrier Fire Americas") is a corporation organized and existing under the laws of the State of Delaware, with its principal

---

[2] This Complaint refers to UTC F&S when describing historical conduct and transactions that occurred during its existence and to Carrier Fire when identifying the entity that is presently liable for such conduct.

place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Carrier Fire Americas is a subsidiary of Carrier Global Corporation and is the direct parent of Kidde-Fenwal, Inc.'s direct parent, Kidde Fire Protection, Inc. Carrier Fire Americas is the entity formerly known as UTC Fire & Security Americas Corporation ("UTC F&S Americas").[3] UTC F&S Americas is also liable for the AFFF business through its ownership of, control over, and conduct associated with the business operations related to AFFF, including with respect to communications to regulators and efforts to capture AFFF market share. On or about October 1, 2020, UTC F&S Americas changed its name to Carrier Fire Americas. At no time did Carrier Fire Americas/UTC F&S Americas disclose the dangers related to AFFF. Carrier Fire Americas is registered to do business in Indiana.

25. Defendant Carrier Global Corporation ("Carrier") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. On or around April 3, 2020, United Technologies Corporation completed the spinoff of one of its reportable segments into Carrier, a separate publicly traded company. Pursuant to the Separation and Distribution Agreement by and Among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation (the "2020 Separation Agreement"), Carrier assumed certain liabilities, including those related to the AFFF business manufactured and sold under the National Foam brand, which includes the liabilities of Kidde-Fenwal, Inc., Kidde Limited, UTC F&S, UTC F&S Americas, and United Technologies Corporation ("UTC"). Carrier also agreed to indemnify UTC for such liabilities pursuant to the 2020 Separation Agreement. Carrier's operations are classified into three segments: HVAC; Refrigeration; and Fire & Security. Carrier's Fire & Security products and services are sold

---

[3] This Complaint refers to UTC F&S Americas when describing historical conduct and transactions that occurred during its existence and to Carrier Fire Americas when identifying the entity that is presently liable for such conduct.

under brand names including Chubb and Kidde. Carrier conducts business throughout the United States, including in Indiana.

26.     Defendant ChemDesign Products, Inc. ("ChemDesign") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at Two Stanton Street, Marinette, Wisconsin 54143. On information and belief, ChemDesign designed, manufactured, marketed, promoted, distributed, and/or sold PFAS used to manufacture PFAS-containing Products, primarily to Chemguard, that were used and/or disposed of in Indiana.

27.     Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. Chemguard has designed, manufactured, marketed, promoted, distributed, and/or sold PFAS-containing Products that were used and/or disposed of in the State and also has designed, manufactured, marketed, and sold PFAS used to manufacture PFAS-containing Products that were used and/or disposed of in Indiana.

28.     Defendant The Chemours Company ("Chemours") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899. In 2015, Old DuPont spun off its performance chemicals business to Chemours, along with vast environmental liabilities. Chemours has designed, manufactured, marketed, promoted, distributed, sold, released, emitted, and/or discharged PFAS, including PFAS used to manufacture PFAS-containing Products that were used and/or disposed of in Indiana. Chemours is registered to do business in Indiana.

29.     Defendant Clariant Corporation ("Clariant") is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 500 East Morehead Street, Suite 400, Charlotte, North Carolina 28202. Clariant has designed, manufactured,

10

marketed, promoted, distributed, and/or sold PFAS used to manufacture PFAS-containing Products that were used and/or disposed of in Indiana. Clariant is registered to do business in Indiana. Clariant is a predecessor to Archroma and was formerly known as Sandoz Chemicals Corporation and as Sodeyeco, Inc.

30.    Defendant Corteva, Inc. ("Corteva") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805. In 2019, New DuPont spun off a new, publicly traded company, Corteva, which currently holds Old DuPont as a subsidiary. In connection with these transfers, Corteva contractually assumed certain Old DuPont liabilities—including those relating to PFAS. Corteva does business throughout the United States, including in Indiana. Corteva is registered to do business in Indiana.

31.    Defendant DuPont de Nemours, Inc. ("New DuPont"), f/k/a DowDuPont Inc., is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805. In 2015, after Old DuPont spun off Chemours, Old DuPont merged with The Dow Chemical Company and transferred Old DuPont's historic liabilities and assets to other entities, including New DuPont. In connection with these transfers, New DuPont assumed certain Old DuPont liabilities—including those relating to PFAS. New DuPont does business throughout the United States, including in Indiana.

32.    Defendant Dynax Corporation ("Dynax") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 79 Westchester Avenue, Pound Ridge, New York 10576. Dynax has designed, manufactured, marketed, promoted, distributed, and/or sold PFAS used to manufacture PFAS-containing Products that were used and/or disposed of in Indiana.

11

33.    Defendant EIDP, Inc. ("Old DuPont"), f/k/a E. I. du Pont de Nemours and Company, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805. Old DuPont has designed, manufactured, marketed, promoted, distributed, sold, released, emitted, and/or discharged PFAS, including PFAS used to manufacture PFAS-containing Products that were used and/or disposed of in Indiana. Old DuPont is registered to do business in Indiana.

34.    Defendant Kidde-Fenwal, Inc. ("KFI") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 400 Main Street, Ashland, Massachusetts 01721. KFI is the successor in interest to Kidde Fire Fighting, Inc. ("KFF") by way of merger, which occurred on or around 2007. At all times relevant, KFI and/or its predecessors designed, manufactured, marketed, promoted, distributed, and/or sold PFAS-containing Products throughout the United States, including in Indiana. On May 14, 2023, KFI filed for bankruptcy relief in the United States Bankruptcy Court for the District of Delaware, thereby commencing the Chapter 11 case captioned *In re Kidde-Fenwal, Inc.*, Case No. 23-10638-LSS (D. Del. Bankr.).[4]

35.    Defendant Kidde Limited ("Kidde Limited") f/k/a Kidde plc[5] is a private limited company organized under the laws of England, with its principal place of business located at First Floor, Ash House, Littleton Road, Ashford, Middlesex, England TW15, 1TZ. Kidde Limited was part of United Technologies Corporation from 2005 through 2020. At all relevant times, Kidde Limited conducted business throughout the United States, including in Indiana. Kidde Limited,

---

[4] Pursuant to a stipulation with KFI and other parties in interest in the Bankruptcy Case, the State is permitted to name KFI as a Defendant in the instant action, but cannot prosecute its claims against it due to the automatic stay in effect as a result of KFI's bankruptcy filing. *See* Adv. Pro. No. 23-50387, Docket No. 91, at ¶ 2 (the "Stay Extension Stipulation"). The Stay and Injunction Period (as defined in the Stay Extension Stipulation) has been subsequently extended to June 7, 2024 by agreement of parties in interest in the Bankruptcy Case.

[5] In this Complaint, we refer to Kidde plc when describing historical conduct and transactions that occurred during its existence and to Kidde Limited when identifying the entity that is presently liable for such conduct.

through Kidde/Kidde Fire, designed, manufactured, marketed, promoted, distributed, and/or sold PFAS-containing Products throughout the United States, including in Indiana.

36.     Defendant National Foam, Inc. ("National Foam") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. National Foam manufactures the National Form and Angus brand of products (collectively, "National Foam/Angus Fire"). These products included AFFF product marketed for years under the name National Foam (the "National Foam Business"). National Foam/Angus Fire has designed, manufactured, marketed, promoted, distributed, and/or sold PFAS-containing Products that were used and/or disposed of in Indiana.

37.     Defendant Tyco Fire Products LP ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. Tyco manufactures the Ansul brand of products and is the successor in interest to Ansul Company (together, "Tyco/Ansul"). Tyco/Ansul has designed, manufactured, marketed, promoted, distributed, and/or sold PFAS-containing Products that were used and/or disposed of in the State and has also designed, manufactured, marketed, and sold PFAS used to manufacture PFAS-containing Products that were used and/or disposed of in Indiana. Tyco was registered to do business in Indiana between 2001 and 2019.

38.     Defendant United Technologies Corporation n/k/a RTX Corporation ("UTC") is a Delaware corporation. Following the merger of United Technologies Corporation and the Raytheon Company in April 2020, United Technologies Corporation was renamed Raytheon Technologies Corporation, which entity was recently renamed RTX Corporation. UTC through its ownership of, control over, and conduct associated with, the National Foam Business, designed, manufactured,

13

marketed, promoted, distributed, and/or sold PFAS-containing Products throughout the United States, including in Indiana.

39.     Defendants ABC Corporations 1 through 10, unknown at this time, are manufacturers of PFAS or PFAS-containing Products, including AFFF Products, manufacturers of PFAS used to make PFAS-containing Products, including AFFF Products, and/or distributors of PFAS-containing Products, including AFFF Products, that have caused injuries to the State's natural resources or otherwise share responsibility for such injuries. When these ABC Corporations are identified, they will be added by name.

40.     Defendants 3M, AGC Chemicals, Archroma, Arkema, BASF, Buckeye, Carrier Fire, Carrier Fire Americas, Carrier, ChemDesign, Chemguard, Clariant, Corteva, New DuPont, Dynax, Old DuPont, Chemours, KFI, Kidde Limited, National Foam, Tyco, UTC, and ABC Corporations 1 through 10 are collectively referred to herein as "Defendants."

### III.  JURISDICTION AND VENUE

41.     This Court has subject-matter jurisdiction over this civil action pursuant to Indiana Code § 33-29-1-1.5(1). No federal subject-matter jurisdiction is invoked herein, as the natural resources that are the subject of this suit are all within the State of Indiana and the State is not a citizen of any state for purposes of federal diversity jurisdiction.

42.     This Court has personal jurisdiction over Defendants because they either do business in Indiana; are organized under the laws of Indiana; supplied goods or materials furnished in Indiana; caused personal injury or property damage in Indiana by acts or omissions done inside the state; caused personal injury or property damage in Indiana by regularly soliciting business in the state; or derived substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in the state. Indiana Trial Rule 4.4.

43.     Each Defendant named here maintains sufficient minimum contacts with the State and at relevant times such that this Court's exercise of jurisdiction over it is reasonable and consistent with the Constitution and laws of the United States.

44.     Venue is proper in Shelby County pursuant to Indiana Trial Rule 75(A)(2) because property contaminated by Defendants' PFAS and PFAS-containing Products, including AFFF Products, is located in Shelby County and throughout the State of Indiana. *See* Trial Rule 75(A)(2).

45.     Venue is proper in Shelby County pursuant to Indiana Trial Rule 75(A)(8) because the significant pollution, impairment, or destruction of natural resources throughout the State, including but not limited to water, wildlife, and land, caused by Defendants' conduct, has occurred in Shelby County and throughout the State.  *See* Trial Rule 75(A)(8); Ind. Code. § 13-30-1-9.

46.     Defendants' PFAS-containing Products, including AFFF Products, were sold and used in Shelby County.

## IV.  STATUTORY AND REGULATORY BACKGROUND

### A.     Protection of Indiana's Natural Resources

47.     The General Assembly has codified the State's mandate to conserve Indiana's natural resources and wildlife, protect the water quality of lakes and streams, protect public land, protect and promote the health, safety, and general welfare of the people of Indiana, and protect and improve soil quality. I.C. § 14-32-1-2. This is because "the land and water resources of Indiana are among the basic assets of Indiana[,]" and the people of Indiana are entitled to "proper management of soil and water resources," including the prevention of water quality impairment and the proper disposal of water in the watersheds of Indiana. I.C. § 14-32-1-1(1).

48.     The General Assembly has further found and declared that "[i]t is a public policy of the state in the interest of the economy, health, and welfare of Indiana and the citizens of Indiana to conserve and protect the ground water resources of Indiana[.]" I.C. § 14-25-3-3. In addition, "[w]ater

15

in a natural stream, natural lake, or another natural body of water in Indiana that may be applied to a useful and beneficial purpose is declared to be…a natural resource and public water of Indiana…subject to control and regulation for the public welfare." I.C. § 14-25-1-2(a).

49. The General Assembly has further found and declared that the "natural resources and the natural scenic beauty of Indiana are a public right," and "the public has a vested right in the…preservation, protection, and enjoyment of all the public freshwater lakes of Indiana" and the "use of the public freshwater lakes for recreational purposes." I.C. § 14-26-2-5(c)(1).

50. The State "has full power and control of all of the public freshwater lakes in Indiana…[and] holds and controls all public freshwater lakes in trust for the use of all of the citizens of Indiana for recreational purposes." I.C. § 14-26-2-5(c)(2). The State also holds Lake Michigan, within the boundaries of Indiana, in trust for the use and enjoyment of its citizens, who have a vested right to use and enjoy it and in its preservation and protection. I.C. §§ 14-26-2.1-3(a), 14-26-2.1-4(c)-(d).

51. The General Assembly has further found and declared that, as part of the continuing growth of the population and development of the economy of Indiana, rivers of natural, scenic, or recreational significance must be preserved for the benefit of present and future generations. I.C. § 14-29-6-7.

52. Moreover, nature preserves—acquired by gift, devise, purchase, exchange, condemnation, or any other method of acquiring real property or an estate, an interest, or a right in real property— "are to be held in trust for the benefit of the people of Indiana of present and future generations." I.C. § 14-31-1-10, 1-15.

53. The State is required to "use all practicable means and measures" to "[f]oster and promote the general welfare[; c]reate and maintain conditions under which humans and nature can

exist in productive harmony[; and f]ulfill the social, economic, and other requirements of present and future generations of Indiana citizens." I.C. § 13-12-4-3.

**B.      Regulation of PFAS**

54.      PFAS are subject to federal regulation. For example, with respect to PFAS in drinking water: (1) in March 2021, EPA issued a final determination to regulate PFOA and PFOS as contaminants pursuant to the Safe Drinking Water Act ("SDWA"), 42 U.S.C. §§ 300f *et seq.*; (2) in December 2021, EPA published the final fifth Unregulated Contaminant Monitoring Rule, which will require public water systems around the country to monitor for 29 PFAS compounds between 2023 and 2025; (3) in June 2022, EPA issued interim health advisory levels for PFOA (0.004 ppt), PFOS (0.02 ppt), HFPO-DA, and PFBS; and (4) in March 2023, EPA released proposed maximum contaminant levels ("MCLs") for PFOA (4 ppt), PFOS (4 ppt), PFNA, PFHxS, PFBS, and HFPO-DA in drinking water pursuant to the SDWA. As adopted as a final rule on April 10, 2024, the MCLs will require public water systems across the United States to monitor for these PFAS, notify the public of detections, and take action to remove PFAS concentrations above those levels.

55.      Additionally, with respect to remediation of contaminated sites: (1) in October 2021, EPA announced important steps toward evaluating the existing data for four PFAS compounds pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 *et seq.*, and strengthening the ability to clean up PFAS contamination across the country through the RCRA corrective action process; (2) in May 2022, EPA added five PFAS compounds to a list of risk-based values for site cleanups known as Regional Screening Levels and Regional Remedial Management Levels; (3) in August 2022, EPA issued a proposed rule that would designate PFOA and PFOS as "hazardous substances" pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.*; (4) in April 2023, EPA issued an Advance Notice of Proposed Rulemaking asking the public for input regarding potential future hazardous

substance designations of additional PFAS under CERCLA. On January 31, 2024, EPA issued a proposal to amend RCRA regulations to include nine specific PFAS, their salts, and their structural isomers, to the list of "hazardous constituents."

56.    With respect to use of PFAS in products and processes: (1) in January 2023, EPA proposed a rule pursuant to the Toxic Substances Control Act ("TSCA"), 15 U.S.C. §§ 2601 *et seq*., that would prevent anyone from starting or resuming, without a complete EPA review and risk determination, the manufacture, processing, or use of an estimated 300 PFAS that have not been made or used for many years, known as "inactive PFAS"; and (2) in September 2023, EPA finalized a rule pursuant to TSCA that requires manufacturers and importers to submit information to EPA about the use, volume, byproducts, disposal, exposure, and environmental and health effects of PFAS.

57.    With respect to PFAS in discharges of wastewater: (1) in December 2022, EPA issued a memorandum providing guidance to states on how to use the National Pollutant Discharge Elimination System permitting program of the Federal Water Pollution Control Act (a/k/a the Clean Water Act), 33 U.S.C. §§ 1251 *et seq*., to reduce harmful PFAS pollution; and (2) in January 2023, EPA released its final Effluent Limitations Guidelines ("ELGs") Plan 15, including a determination that revised ELGs and pretreatment standards are warranted for reducing PFAS in leachate discharges from landfills, an announcement of an expansion of the ongoing study of PFAS discharges from textile manufacturers, and a new study of waste streams to wastewater treatment plants.

58.    With respect to reporting releases of PFAS to the environment, on January 9, 2024, EPA enacted a rule that designates PFAS as "chemicals of special concern" and improves reporting PFAS to the Toxics Release Inventory ("TRI") by eliminating an exemption that allowed facilities

to avoid reporting information on PFAS when those chemicals are used in small, or de minimis, concentrations. Because PFAS are used at low concentrations in many products, this rule ensures that covered industry sectors and federal facilities that make or use TRI-listed PFAS will no longer be able to rely on the de minimis exemption to avoid disclosing their PFAS releases and other waste management quantities for these chemicals.

59.      In 2020, the Indiana General Assembly passed House Enrolled Act 1189, prohibiting the use of AFFF for (1) training purposes and (2) testing purposes, unless the testing facility has implemented appropriate measures to prevent releases of the firefighting foam to the environment. *See* I.C. §§ 36-8-10.7 *et seq.*

## C.      Indiana Deceptive Consumer Sales Act

60.      Indiana's Deceptive Consumer Sales Act ("DCSA") "shall be liberally construed and applied to promote its purposes and policies." I.C. § 24-5-0.5-1(a).

61.      The purpose and policies of the DCSA include protecting "consumers from suppliers who commit deceptive and unconscionable sales acts" and encouraging the "development of fair consumer sales practices." I.C. § 24-5-0.5-1(b).

62.      This action is brought against Defendants for their use of deceptive and unfair acts and practices related to their sales of PFAS-containing Products, in violation of Indiana Code § 24-5-0.5-3. With this suit, the State seeks to put a stop to Defendants' deceptive and unfair practices, to force Defendants to disgorge all profits and benefits obtained from their unlawful practices, and to impose civil penalties for Defendants' violations of the DCSA.

63.      The deceptive and unfair acts and practices committed by Defendants during their consumer transactions are set out in further detail in the following section of the State's Complaint.

19

**D.      Indiana Product Liability Act**

64.      Defendants are liable under Indiana's Product Liability Act ("IPLA"), I.C. §§ 34-20-1 *et seq*., because they designed, developed, manufactured, marketed, advertised, distributed, sold, released, supplied, used, and/or disposed of PFAS-containing Products, including AFFF Products, which were intended to be used in a wide array of consumer and industrial products, including nonstick cookware, food packaging, stain resistant carpet and furniture, water resistant clothing, personal care products, and firefighting foam. Defendants' PFAS-containing Products, including AFFF Products, were not reasonably safe as designed and have been unreasonably dangerous for their intended, foreseeable, and ordinary use and disposal.

65.      PFAS released into the environment from Defendants' PFAS-containing Products, including AFFF Products, caused, and still causes, contamination in the environment, including in drinking water supplies, that endangers public health and safety and threatens natural resources. Defendants further failed to warn, or inadequately warned of, inter alia, the likelihood that PFAS would be released into the environment during the normal use of Defendants' PFAS-containing Products.

66.      The bases for Defendants' liability under IPLA are set out in further detail in the following section of the State's Complaint.

**V.  FACTUAL ALLEGATIONS**

**A.      The Harmful Impacts of PFAS on the Environment, Animals, and Human Health**

67.      PFAS, including but not limited to PFOS, PFOA, PFHxS, PFNA, PFHpA, PFDA, PFBS, and GenX chemicals, have characteristics that cause extensive and long-lasting environmental contamination.

68.      The use and disposal of PFAS-containing Products result in PFAS migrating into the environment. For example, landfills receive sewage sludge, waste from cleanup of contaminated

20

sites, and consumer goods—all of which contain PFAS. PFAS from the waste disposed of in unlined landfills may leach into groundwater, surface water, and soils, subsequently migrating to impact other natural resources, including but not limited to marine sediments and biota. PFAS also can be released from disposal sites into the air in the form of dust.

69.     Wastewater treatment systems in Indiana receive wastewater that contains PFAS from a variety of sources, including landfill leachate, sites contaminated with AFFF Products, and shedding from PFAS-containing Products. Treatment units at conventional wastewater treatment plants generally do not remove PFAS efficiently, allowing the chemicals to enter nearby coastal water, surface water, and groundwater.

70.     AFFF is a PFAS-containing fire-suppressing foam used to extinguish flammable liquid fires, including jet-fuel fires, aviation-related fires, hangar fires, ship fires, and chemical fires and has historically been used to train firefighters and test firefighting equipment.

71.     When AFFF Products are used as intended, PFAS contamination occurs through direct application or discharge to soils, sediment, surface water, and groundwater, causing hundreds, even thousands, of gallons of foamy water laced with PFAS to enter the environment at each firefighting event or training exercise.

72.     PFAS are highly fluorinated synthetic chemical compounds made up of chains of carbon atoms bonded together and to fluorine bonds. The carbon-fluorine bond is one of the strongest bonds in chemistry and gives PFAS their unique chemical properties. The carbon-fluorine bond found in PFAS generally does not occur in nature.

73.     PFAS are mobile and persist in the environment. Once introduced into the environment, PFAS spread quickly because they easily dissolve in water. Thus, PFAS have reached numerous water systems within the State. PFAS also persist in the environment indefinitely because

of their multiple carbon-fluorine bonds, which are resistant to metabolic and environmental degradation processes.

74.     PFAS bioaccumulate and biopersist in animals and are toxic to their health. Because several PFAS, including PFOS and PFOA, are very slowly excreted from individual organisms, ongoing low-level exposure results in a buildup of PFAS within the body. Thus, they also can biomagnify, meaning that their concentration in organic tissue increases as they are consumed up the food chain.

75.     PFAS are toxic and cause significant adverse effects to human health, especially when present in drinking water. For example, PFOS exposure is associated with numerous adverse health effects in humans, including increases in serum lipids (i.e., medically diagnosed high cholesterol); decreases in antibody response to vaccines; increases in risk of childhood infections; and adverse reproductive and developmental effects, along with pregnancy induced hypertension and preeclampsia. PFOA exposure is associated with, among other things, decreased birthweight, testicular and kidney cancers, ulcerative colitis, medically diagnosed high cholesterol, and thyroid disease.

76.     Removal of PFAS from drinking water sources requires specialized, expensive drinking water treatment systems. Additionally, once PFAS are removed from drinking water, they must be disposed of in a safe manner, which is itself costly and creates new risks.

77.     In short, once PFAS are used, they are inevitably released to and then migrate through the environment, where they resist natural degradation, contaminate groundwater and drinking water, damage human and animal life, and are difficult and costly to remove.

**B.     Affected Natural Resources**

78.     The natural resources and the natural scenic beauty of Indiana are considered a public right. I.C. § 14-26-2-5(c)(1).

79.     Further, the General Assembly has recognized "[t]he critical importance of restoring and maintaining environmental quality to the overall welfare and development of humans" and noted that "each person should enjoy a healthful environment…[and] each person has a responsibility to contribute to the preservation and enhancement of the environment." I.C. § 13-12-4-2.

80.     PFAS, including in AFFF Products and other PFAS-containing Products, have injured and continue to injure the State's natural resources.

81.     PFAS attributable to AFFF Products and other PFAS-containing Products have been found in groundwater, surface water, sediments, and soils in the State where PFAS-containing Products, including AFFF Products, were used, stored, disposed of, or otherwise discharged. Furthermore, it is likely that additional contamination to natural resources from PFAS will be uncovered as the State's investigation continues.

82.     PFAS contamination persists in the State's natural resources (i.e., it does not break down in the environment); damages their intrinsic value; and impairs the public benefits derived from access to, use, and enjoyment of Indiana's natural resources.

83.     The current and future residents of the State have a substantial interest in having natural resources uncontaminated by PFAS, as do the agriculture, recreation, and other industries that rely upon a clean environment.

### i.     Groundwater

84.     Groundwater is a critical ecological natural resource for the people of the State, as the State relies on groundwater for drinking, irrigation, and agriculture, among other uses.

85.     Fresh groundwater makes up approximately 54 percent of the total public drinking water supply in Indiana. Public water systems using groundwater as their primary source supply nearly three million people across the State.

86.     Additionally, approximately 1.7 million Indiana citizens use private water wells, all of which are supplied by groundwater.

87.     Indiana's groundwater is also used for irrigation and agriculture, making up approximately 70 percent of water used for irrigation and approximately 61 percent of the total livestock and aquaculture water supply. Agriculture contributes an estimated $35.1 billion to Indiana's economy, and more than 80 percent of land in Indiana is devoted to farms, forests and woodland.

88.     Groundwater promotes cycling and nutrient movement within and among the State's bodies of water and wetlands, prevents sinkholes, and helps to maintain critical water levels in freshwater wetlands. It provides base flow to streams and influences surface water quality, wetland ecological conditions, and the health of aquatic ecosystems.

89.     AFFF Products are a significant source of PFAS contamination in groundwater, as PFAS mobilize in and through groundwater sources to reach areas beyond the location of the AFFF Products' use.

90.     Non-AFFF PFAS-containing Products also contribute to PFAS contamination in groundwater, for example through air, water, and waste discharges from industrial facilities, and from leachate from landfills that contain discarded PFAS-containing Products.

91.     This contamination has had and will continue to have severe and adverse effects on the State's groundwater.

92.     Investigation of PFAS contamination in groundwater in the State is ongoing, but to date has revealed elevated levels in groundwater.

ii.      **Surface Water**

93.     Surface water, including the Ohio River and other rivers in Indiana, also provides a source of drinking water for certain public water supply systems, including, for example, systems serving Indianapolis, Evansville, and Fort Wayne.

94.     Surface water—including streams, natural and artificial lakes, ponds, swale, marshes, and diffused surface water—is also used in Indiana for industrial, agricultural, and recreational purposes, such as swimming, boating, and fishing.

95.     The tourism, recreation, and fishing industries, which are dependent on clean water, are vital to the State's economy. Indeed, as part of the continuing growth of the population and development of the economy of Indiana, the State is required to preserve rivers of natural, scenic, or recreational significance. I.C. § 14-29-6-7.

96.     In 2019, the discovery of PFOS in fish tissue necessitated the issuance of fish consumption guidelines for Little Deer Creek and Government Ditch in Cass County and Big Lick Creek and Little Lick Creek in Blackford County. This impacted some of the 440 public access sites and 25 public fishing areas owned by the State.

97.     Surface water also provides aesthetic and ecological value. In particular, the General Assembly has noted that it is essential that the people of Indiana retain opportunities to maintain close contact with the natural, scenic, and recreational rivers in order to benefit from the scientific, aesthetic, cultural, recreational, scenic, and spiritual values the rivers possess. I.C. § 14-29-6-7.

98.     PFAS are mobile in water and can spread great distances from the point of discharge. PFAS contamination attributable to the use of PFAS and PFAS-containing Products, including AFFF Products, in the State has reached and contaminated surface water throughout Indiana.  In addition, PFAS have contaminated the Ohio River, including from the Washington Works facility in West Virginia, formerly owned by Old DuPont and currently owned by Chemours.

99.     Investigation of PFAS contamination in surface water in the State is ongoing.

### iii.    Sediments, Soils, and Watercourses

100.    The State's sediments, soils, and watercourses are critical components of the State's complex ecological resources. Sediments, soils, and watercourses sustain a wide diversity of plants and animals that are essential to a healthy ecosystem. They provide a living substrate for submerged and emergent flora, which in turn support diverse invertebrate species, wading birds, and fish and shellfish populations.

101.    A rich diversity of fish and freshwater mussels can be found in every permanent type and size of water body in the State, and even some floodplain ponds, wetlands, and intermittent streams. The abundance of fish and mussels is heavily dependent on past and present water quality and habitat disturbances.

102.    Sediments and soils serve as a long-term reservoir of PFAS, where PFAS are stored and released over time, impacting biota and increasing PFAS concentrations in fish tissue, other wildlife, and plants.

103.    PFAS contamination caused by the use, storage, disposal, and discharge of PFAS-containing Products, including AFFF Products, in the State has reached and adversely affected soil and sediment throughout Indiana. Additionally, PFAS in the soil column serve as a continuing source of contamination to groundwater and other natural resources of the State. PFAS in sediments, as well as surface water, increase PFAS concentrations in fish and other biota.

104.    As stated above, fish in some Indiana waterbodies have levels of PFOS that require reducing their consumption, leading the Indiana Department of Health to issue fish advisories.[6]

---

[6] *See* Indiana Department of Health, Environmental and Public Health Division, *Per- and Polyfluoroalkyl Substances (PFAS) in Fish* (2022), https://www.in.gov/health/eph/files/PFAS-in-Fish-Fact-Sheet.pdf.

105. Investigation of PFAS contamination in sediments, soils, and watercourses in the State is ongoing.

### iv. Biota

106. Biota, including the State's flora and fauna, are critical ecological resources.

107. Of Indiana's 60 mammal species, 22 are listed as a Species of Greatest Conservation Need, meaning a species whose populations are declining or who have limited abundance in the State, by the Indiana Department of Natural Resources ("DNR").

108. Indiana is also home to 41 species of amphibians (frogs and salamanders) and 54 species of reptiles (turtles, lizards, and snakes). Of these 95 species, about one-third are listed as a Species of Greatest Conservation Need by DNR.

109. Additionally, 53 species of birds are listed as Species of Greatest Conservation Need.

110. Indiana's aquatic habitats are currently home to about 200 species of fish and 60 species of freshwater mussels. While many are common and distributed throughout much of the State, several species are rare and restricted to a single stream, lake, or watershed. Twenty-two species of fish and 25 species of freshwater mussels are listed as Species of Greatest Conservation Need by the Indiana DNR.

111. As of 2022, IDEM has analyzed 66,368 samples of fish tissue for PFAS. IDEM found PFOS in 100 percent of samples analyzed.

112. Contamination attributable to PFAS compounds the risk of species endangerment because PFAS contamination causes damage to the liver and immune system in animals. Plant uptake of certain PFAS has also been demonstrated, and PFAS has been shown to damage cell structure and organelle functions in plants.

113.    Natural resource injuries to biota in the State negatively affect not only the individual species directly involved, but also the capacity of the injured ecosystems to regenerate and sustain life in the future.

114.    Investigation of PFAS contamination in biota in the State is ongoing.

**C.    Defendants' History of Manufacturing and Selling PFAS-Containing Products, Including AFFF Products**

115.    3M began to produce PFOS and PFOA by electrochemical fluorination in the 1940s. By the 1960s, 3M had used its fluorination process to develop PFAS-containing Products such as Scotchgard™ and AFFF Products.

116.    3M manufactured, marketed, and sold AFFF from the 1960s to the early 2000s. National Foam and Tyco/Ansul began to manufacture, market, and sell AFFF in the 1970s. Chemguard began to manufacture, market, and sell AFFF in the 1990s. Buckeye began to manufacture, market, and sell AFFF in the 2000s.

117.    Arkema's predecessors supplied fluorosurfactants (e.g., PFOA) used to manufacture AFFF beginning in the 1970s. Ciba Corporation ("Ciba") supplied fluorosurfactants used to manufacture AFFF beginning in the 1970s. Dynax supplied fluorosurfactants used to manufacture AFFF beginning in the 1990s. Old DuPont acquired Arkema's predecessors' fluorosurfactants business in 2002, after which it supplied fluorosurfactants used to manufacture AFFF. Chemguard acquired Ciba's fluorosurfactants business in 2003, after which it supplied fluorosurfactants used to manufacture AFFF. Following Chemours's spinoff from Old DuPont, Chemours supplied fluorosurfactants used to manufacture AFFF.

118.    At varying times, AGC Chemicals, Clariant, and Old DuPont supplied fluorochemicals used to make AFFF.

28

119.    From the 1960s through 2001, the U.S. Department of Defense purchased AFFF exclusively from 3M and Tyco/Ansul.

120.    In 2000, 3M announced it was phasing out its manufacture of PFOS, PFOA, and related PFAS-containing Products, including AFFF. In communications with EPA at that time, 3M stated that it had "concluded that…other business opportunities were more deserving of the company's energies and attention." In its press release announcing the phase-out, 3M stated "our products are safe" and that 3M's decision was "based on [its] principles of responsible environmental management." 3M further stated that "the presence of these materials at…very low levels does not pose a human health or environmental risk." 3M made no mention in its press releases or regulatory statements of the risks to human health and the environment posed by the chemicals, although those risks were well-known to 3M at the time.

121.    After 3M exited the AFFF market, other Defendants continued to manufacture and sell AFFF Products that contained PFAS. Indeed, Old DuPont saw an opportunity to grab a larger share of the AFFF market when 3M exited, although Old DuPont had decades of evidence that PFAS were highly toxic and dangerous to human health and the environment.

122.    Defendants advertised, offered for sale, and sold AFFF Products to federal, state, and territory government entities, including the military, counties, municipalities, airports, fire departments, and/or other governmental or quasi-governmental entities, for use in the State.

123.    3M's AFFF Products were created using an electrochemical fluorination process and contain PFAS. The remaining Defendants' AFFF Products, were created using a telomerization process and contain or break down into PFOA. AFFF Products manufactured by Defendants other than 3M are fungible and lack traits that would make it possible to identify the product as being manufactured, distributed, or sold by a particular Defendant. Due to this fungibility, Defendants are

in the best position to identify the original manufacturer of the AFFF Products released at any particular site. Any inability of the State to identify the original manufacturer of the specific AFFF Products released into the State's natural resources in particular instances at particular sites is a result of the fungible nature of the products and not as a result of any action or inaction by the State.

124.   Defendants knew their customers stored large stockpiles of AFFF Products. In fact, Defendants marketed their AFFF Products by promoting their long shelf life. Even after Defendants fully understood the toxicity of PFAS—and their injurious impacts when released into the environment through use of AFFF Products exactly as Defendants had marketed and intended for them to be used—Defendants concealed the true harmful nature of PFAS. Even while Defendants phased out production or transitioned to other formulas, they did not advise their customers that they should not use PFAS-containing Products, including AFFF Products, or otherwise reveal the dangers posed by PFAS-containing Products.

125.   Defendants further did not attempt to remove their harmful products from the market. Defendants did not warn the State or consumers that the use of PFAS-containing Products, including AFFF Products, would harm the environment, endanger human health, or result in substantial costs to investigate and clean up groundwater contamination and damage to other natural resources.

126.   Accordingly, PFAS from PFAS-containing Products are still released into the environment today.

127.   Likewise, for many years after their original sale, AFFF Products were still being applied directly to the ground and washed into sediments, soils, and waters of the State, harming the environment and endangering human health. Defendants never advised their customers that they needed to properly dispose of their stockpiles of AFFF Products, and they did not advise them on how to properly dispose of AFFF Products.

128.    Defendants' failure to ensure that their customers properly disposed of AFFF Products has pushed the monetary burden of disposal onto the State. The Indiana Department of Homeland Security ("IDHS") and IDEM have established a Class B Foam Collection Initiative, involving the collection of PFAS-containing AFFF from fire departments and volunteer fire departments. As of February 26, 2024, this free service had collected 36,779 gallons of AFFF from 253 fire departments across the State.[7] As the Class B Foam Collection Initiative grows, so too do the State's costs associated with the this program.

**D.    Defendants Knew, or Should Have Known, That Their PFAS-Containing Products, Including AFFF Products, and Related PFAS Precursors Were Harmful to the Environment and Human Health**

**i.    3M Knew, or Should Have Known, of the Harm Caused by PFAS, and 3M Concealed Negative Information About These Chemicals from Regulators and Users of PFAS-Containing Products, Including AFFF Products**

129.    3M has known for decades that the PFAS in its PFAS-containing Products, including AFFF Products, are toxic and adversely affect the environment and human health.

130.    By 1956, 3M's PFAS were found to bind to proteins in human blood, resulting in bioaccumulation of those compounds in the human body.

131.    3M knew as early as 1960 that its PFAS waste could leach into groundwater and otherwise enter the environment. An internal 3M memorandum from 1960 described 3M's understanding that such wastes "[would] eventually reach the water table and pollute domestic wells."

132.    As early as 1963, 3M knew that its PFAS were highly stable in the environment and did not degrade after disposal.

---

[7] Indiana Department of Homeland Security, Division of Fire and Building Safety, "Foam Collection Program: Foam Collection Status" (2024), https://www.in.gov/dhs/fire-and-building-safety/foam-program.

133. By the 1970s, 3M had become concerned about the risks posed to the general population by exposure to 3M's fluorochemicals.

134. By no later than 1970, 3M knew that its PFAS-containing Products including AFFF Products were hazardous to marine life. Still, 3M refused to take any steps to mitigate these hazards. In fact, around this time, 3M abandoned a study of its fluorochemicals after the company's release of the chemicals during the study caused severe pollution of nearby surface waters.

135. In 1975, 3M found there was a "universal presence" of PFOA and/or PFOS in blood serum samples taken from across the United States. Since PFAS are not naturally occurring, this finding reasonably alerted 3M to the high likelihood that its products were a source of this PFAS, a scenario 3M discussed internally but did not share outside the company. This finding also reasonably alerted 3M to the likelihood that PFAS are mobile, persistent, bioaccumulative, and biomagnifying, as these characteristics would explain the presence of PFAS in human blood.

136. As early as 1976, 3M began monitoring the blood of its employees for PFAS because the company was concerned about the health effects of PFAS.

137. In 1978, 3M conducted PFOS and PFOA studies in monkeys and rats. All monkeys died within the first few days or weeks after being given food contaminated with PFOS. The studies also showed that PFOS and PFOA affected the liver and gastrointestinal tract of the species tested.

138. In the late 1970s, 3M studied the fate and transport characteristics of PFOS in the environment, including in surface water and biota. A 1979 report drew a direct line between effluent from 3M's Decatur, Alabama plant and fluorochemicals bioaccumulating in fish tissue taken from the Tennessee River adjacent to the 3M plant.

139. According to a 3M environmental specialist who resigned his position due to the company's inaction over PFOS's environmental impacts, 3M had resisted calls from its own

ecotoxicologists going back to 1979 to perform an ecological risk assessment on PFOS and similar chemicals. At the time of the specialist's resignation in 1999, 3M continued its resistance.

140.    In 1983, 3M scientists opined that concerns about PFAS "give rise to legitimate questions about the persistence, accumulation potential, and ecotoxicity of fluorochemicals in the environment."

141.    In 1984, 3M's internal analyses proved that fluorochemicals were likely bioaccumulating in 3M's employees.

142.    By the mid-1990s, 3M was aware that scientists had linked exposure to PFAS at its PFAS manufacturing operations to increased incidence of prostate cancer among its workers.

143.    Despite its understanding of the hazards associated with the PFAS in its products, 3M suppressed scientific research on the hazards associated with them and mounted a campaign to control the scientific dialogue on the fate, exposure, analytics, and effects to human health and the ecological risks of PFAS.

144.    At least one scientist funded by 3M saw his goal as "keep[ing] 'bad' papers [regarding PFAS] out of the literature" because "in litigation situations," those articles "can be a large obstacle to refute."

145.    Thus, 3M deceived others and hid the negative effects of PFAS. For example, Dr. Rich Purdy, a former environmental specialist with 3M, wrote a letter detailing, without limitation: (1) 3M's tactics to prevent research into the adverse effects of its PFOS, (2) 3M's submission of misinformation about its PFOS to EPA, (3) 3M's failure to disclose substantial risks associated with its PFOS to EPA, (4) 3M's failure to inform the public of the widespread dispersal of its PFOS in the environment and population, (5) 3M's production of chemicals it knew posed an ecological risk and a danger to the food chain, and (6) 3M's attempts to keep its workers from discussing the

problems with the company's fluorochemical projects to prevent their discussions from being used in the legal process.

146.    By the late 1990s, 3M's own toxicologist had calculated a "safe" level for PFOS in human blood to be 1.05 parts per billion ("ppb"), at a time when 3M was well aware that the average level of PFOS being found in the blood of the general population of the United States was approximately 30 times higher than this "safe" blood level, but 3M did not disclose that information to regulatory authorities or the public.

147.    3M knew, or should have known, that its PFAS-containing Products, including AFFF Products, in their intended use, would release PFAS that would dissolve in water; reach water systems and the environment in the State; resist degradation; bioaccumulate and biomagnify; and harm ecological, animal, and human health in the State due to their toxicity. Such knowledge was accessible to 3M, but not to the State until 3M's acts and omissions came to light and the State developed its own understanding of the toxicity of PFAS.

148.    Despite knowing that PFAS are toxic and adversely affect the environment and human health, 3M advertised numerous PFAS-containing Products as consumer-friendly and safe for families.

149.    For example, 3M began selling PFOS-based Scotchgard™ products in 1956, advertising them as protection for fabrics from water damage and stains. Scotchgard™ products exposed consumers to PFOS during application and, once the treated fabrics began to degrade, through air and dust. Yet, 3M continued to market Scotchgard™ products to consumers, to misrepresent them as safe for household use, and to fail to disclose health risks. From 1970 to 2002, carpet treatments like Scotchgard™ Fabric Protector were the most common use of PFOS substances, with 48,000 tons used worldwide.

34

150.   As another example, in the 1970s, 3M applied Scotchban™ to consumer products like paper cups, cake mix boxes, and pet food packaging, as the grease-resistant chemicals left paper intact. On information and belief, 3M did not warn paper mills or other manufacturers of these products about the toxicity of PFAS, leading to the propagation of misrepresentations to consumers.

151.   3M concealed information about its PFAS-containing Products' effects on human health and the environment. By concealing the "safe" blood level from the State, 3M delayed the implementation of safeguards that could have protected consumers from unknowingly purchasing PFAS-containing Products, including AFFF Products.

152.   3M knew that its AFFF Products and other PFAS-containing Products could be harmful, but it concealed and misrepresented that information to consumers. When 3M announced its phase-out of PFAS in 2000, it assured consumers that "our products are safe" instead of disclosing what it knew about the substantial threat posed by PFOS and PFOA.

153.   3M's deception and misrepresentations deprived consumers of the opportunity to make informed decisions about their health and their own contribution to environmental harm.

      **ii.   Old DuPont Knew, or Should Have Known, of the Harms Caused by PFOA, and It Concealed Its Knowledge from Regulators and Users of PFAS-Containing Products, Including AFFF Products**

154.   In 1945, Old DuPont trademarked the fluoropolymer PTFE as Teflon®, introducing it to the consumer and industrial markets shortly thereafter. For decades, Old DuPont utilized PFOA as a processing aid in the production of PTFE, a practice which left residual PFOA in and on consumer products like Teflon® cookware. PFOA has been found in PTFE cookware, PTFE-based dental floss, PTFE-based dental tape, and PTFE film/sealant.

155.   Old DuPont quickly developed an understanding of the dangers of using these chemicals. Its scientists issued internal warnings about the toxicity associated with PFOA as early

as 1961; Old DuPont's Toxicology Section Chief opined that such substances should be "handled with extreme care" and that contact with the skin should be "strictly avoided."

156.     Still, Old DuPont advertised Teflon® as a protective coating for cookware and a soil and stain repellant for fabrics. Even after Old DuPont scientists warned the company about the toxicity of PFOA, advertisements from the 1970s continued to promote family and household use of Teflon®. For instance, Old DuPont released Stainmaster® Carpet in 1986, a stain-resistant carpet coated with Teflon®. Old DuPont advertised this product as especially helpful to families with children and pets, disregarding that the Stainmaster® Carpet increased children's exposure to harmful PFOA residue, as children are most likely to be on or near the ground.

157.     Old DuPont also manufactured and advertised PTFE micropowders, under the Zonyl™ brand, beginning in the 1960s. Zonyl™ can break down in use or in the environment to PFOA and, according to Old DuPont, PFOA was an "unintended byproduct of the manufacturing process" of fluorotelomers like Zonyl™.

158.     Zonyl™ was used in grease-resistant, nonstick paper and cardboard consumer products like fast food packaging and microwave popcorn bags. In a 1966 Food Additive Petition to the Food and Drug Administration ("FDA"), Old DuPont submitted data indicating that Zonyl™ could migrate into food in concentrations that caused rats fed Zonyl™ at the FDA's required "no-effect level" to suffer adverse liver reactions. After the FDA requested a longer-term health study, Old DuPont revised its calculations, suggested that a different compound was partially causing the toxic reaction, and got its Petition approved without submitting another study. In 1987, Old DuPont confirmed that levels of Zonyl™ in food could reach three times the FDA-approved amount.

159.     In 1978, based on information it received from 3M about elevated and persistent organic fluorine levels in workers exposed to PFOA, Old DuPont initiated a plan to review and

36

monitor the health conditions of potentially exposed workers to assess whether any negative health effects were attributable to PFOA exposure. This monitoring plan involved obtaining blood samples from the workers and analyzing the samples for the presence of fluorine.

160. By 1979, Old DuPont had data indicating that, not only was organic fluorine/PFOA building up in the blood of its exposed workers (and was, thus, "biopersistent"), but those workers exposed to PFOA had a significantly higher incidence of health issues than did unexposed workers. Old DuPont did not share these data or the results of its worker health analysis with the general public or government entities, including the State, at that time.

161. The following year, Old DuPont internally confirmed, but did not make public, that PFOA "is toxic," that humans accumulate PFOA in their tissues, and that "continued exposure is not tolerable."

162. Not only did Old DuPont know that PFOA accumulated in humans, it was also aware that PFOA could cross the placenta from an exposed mother to her gestational child. In 1981, Old DuPont conducted a blood sampling study of pregnant or recently pregnant employees. Of the eight women in the study who worked with Teflon®, two had children with birth defects in their eyes or face and at least one had PFOA in the umbilical cord.

163. While Old DuPont reported to EPA in March 1982 that results from a rat study showed PFOA crossing the placenta if present in maternal blood, Old DuPont concealed the results of the blood sampling study it had conducted on its own workers. At this time, Old DuPont was also aware that PFAS could contaminate the surrounding environment, creating another pathway to human exposure. After obtaining data on PFAS releases from its facilities and the consequent contamination near Old DuPont's Washington Works plant in West Virginia, Old DuPont held a meeting at its corporate headquarters in Wilmington, Delaware, in 1984 to discuss health and

37

environmental issues related to PFOA in particular. Old DuPont employees in attendance spoke of the PFOA issue as "one of corporate image, and corporate liability." They were resigned to Old DuPont's "incremental liability from this point on if we do nothing" because Old DuPont was "already liable for the past 32 years of operation." They also stated that the "legal and medical [departments within Old DuPont] will likely take the position of total elimination" of PFOA use in Old DuPont's business and that these departments had "no incentive to take any other position." Nevertheless, Old DuPont not only decided to keep using and releasing PFOA but affirmatively misrepresented to regulators, the scientific community, and the public that its PFOA releases presented no risks to human health or the environment.

164.    Yet, a 2008 letter from Old DuPont's shareholders to the Securities and Exchange Commission ("SEC") explained that, while Old DuPont's management asserted that studies it had funded showed no harm to human health from PFOA exposure, Old DuPont's own Epidemiology Review Board adamantly disagreed with this conclusion and sent emails to the company lambasting the "no health effects" characterization. For example, in February 2006, the Board "strongly advise[d] against any public statements asserting that PFOA does not pose any risk to health" and questioned "the evidential basis of [Old DuPont's] public expression asserting, with what appears to be great confidence, that PFOA does not pose a risk to health."

165.    In 2004, EPA filed an administrative enforcement action against Old DuPont based on its failure to disclose toxicity and exposure information for PFOA in violation of TSCA and RCRA. Old DuPont eventually settled the lawsuit by agreeing to pay over $16 million in civil administrative penalties and supplemental environmental projects. EPA called the settlement the "largest civil administrative penalty EPA has ever obtained under any federal environmental statute."

166.     Despite its knowledge regarding PFOA's toxicity, Old DuPont continued to claim that PFOA posed no health risks and, in fact, began to sell AFFF after 3M announced its phase-out of PFOA and PFOS in 2000 (due to 3M's knowledge of the compounds' toxicity and threats of further enforcement action by EPA).

167.     In 2008, Old DuPont literature was quoted in an Industrial Fire World magazine article regarding AFFF, stating that Old DuPont "believes the weight of evidence indicates that PFOA exposure does not pose a health risk to the general public" because "there are no human health effects known to be caused by PFOA." Old DuPont also claimed that its other PFAS-containing products, whether they contained residual PFOA from the manufacturing process or degraded into PFOA in the environment or human body, were safe for personal, family, and household use. In February 2006, The New York Times noted that DuPont ran full page advertisements in its and others' newspapers telling the public that "cookware coated with Teflon 'is safe' and that 'there is no reason to stop' using it." Old DuPont knew these statements were not true but did not correct them.

168.     Up until 2013, when Old DuPont claimed to have stopped making or using PFOA, it attempted to mislead regulators, scientists, and consumers into accepting and purchasing its substantially injurious PFAS-containing Products, including AFFF Products.

169.     Old DuPont replaced PFOA in its manufacturing processes with a chemical process involving another PFAS, HFPO-DA (also called C3 Dimer Acid) and its ammonium salt ("Gen X"), which is now used by Chemours. Yet Gen X has also contaminated groundwater, surface water, and soil around Chemours's manufacturing facilities, including through air emissions and discharges to surface water, including the Ohio River.

### iii.   Old DuPont Worked in Concert with Other Defendants and the Firefighting Foam Coalition to Mislead States, Regulators, and Consumers

170.   The Firefighting Foam Coalition ("FFFC"), a Virginia-based national AFFF trade group, was formed in 2001 to advocate for AFFF's continued viability. Over time, National Foam, KFI, Tyco/Ansul, Chemguard, Dynax, Old DuPont, and Chemours (collectively, "FFFC Members") joined the group, along with others in the industry. Unlike 3M's PFOS-based AFFF, FFFC Members' AFFF used PFOA, which FFFC Members claimed was a far safer option.

171.   Through their involvement in the FFFC and other trade associations and groups, FFFC Members shared knowledge and information regarding PFOA and its precursors but did not share that information with the general public or government entities, including the State.

172.   FFFC Members worked together to protect their AFFF Products from scrutiny by, among other things, coordinating their messaging on PFOA's toxicological profile and on their AFFF Products' contribution of PFOA into the environment. All of this was done as a part of the FFFC's efforts to shield its members and the AFFF industry from the detrimental impact of the public and government entities learning the truth about the harms of PFOA to human health and the environment. FFFC Members regularly published newsletters promoting their AFFF Products and attended trade group conferences to disseminate misleading messaging.

173.   FFFC Members' coordinated messaging and publishing efforts were meant to undermine and dispel concerns about the impact AFFF Products had on human health and the environment. They worked in concert to conceal the known risks of their AFFF Products from the general public and government entities, including the State.

174.   FFFC Members knew that their messaging regarding AFFF Products was false. Each of the FFFC Members knew that PFOA was released directly into the environment from the use of their AFFF Products and that PFOA presented a similar threat to human health and the environment

as that posed by PFOS. While FFFC Members knew this, it was not similarly understood by the public and government entities, including the State, because FFFC Members withheld their knowledge about the dangers of PFAS and AFFF Products.

175.    As explained by the federal court in South Carolina overseeing the multidistrict litigation related to PFAS contamination from AFFF Products (the "AFFF MDL Court") (record citations omitted and emphasis added):

> In its effort to distinguish telomer-based AFFF from 3M's AFFF, the FFFC stated that "telomer based AFFF does not contain PFOS and cannot be oxidized or metabolized into PFOS." This was something of a red herring because PFOS was exclusively manufactured by 3M. But 3M AFFF also contained PFOA, another highly persistent C8 chemical, and there was concern with any product that allowed PFOS or PFOA to be released into the environment.

> The FFFC recognized the risk posed by any association of telomer AFFF with PFOA and stated to the EPA during the September 28, 2001 meeting that telomer-based AFFF "does not contain any PFOA-based product." **What the FFFC notably omitted to address, however, was whether telomer-based AFFF degraded in the environment to PFOA.**

176.    The AFFF MDL Court further explained that "[d]espite internal industry communications reflecting knowledge that telomer-based AFFF degraded to PFOA, the FFFC publicly asserted that 'telomer based fire fighting foams are not likely to be a source of PFOA in the environment.'"[8]

### iv.    Kidde plc, KFI, UTC F&S and UTC Were Aware of the Dangers of AFFF

177.    KFI and predecessor entities operating the National Foam Business were members of the FFFC, and their main supplier, DuPont, was a founding member. Anne Regina, commonly

---

[8] *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2:18-1\4N-2873-RMG, 2022 WL 4291357, at *13 (D.S.C. Sept. 16, 2022) ("AFFF MDL").

referred to as the "Queen of Foam," was an executive who worked in the National Foam Business for more than 40 years, including the entire period KFI was owned by UTC. Ms. Regina was a key employee of KFI during the period that KFI was owned and controlled by UTC.

178.   By 2001, Ms. Regina and other key players in the National Foam Business had voluminous data on PFAS risks. The AFFF MDL Court explained the following, specifically in reference to "Kidde/National Foam" and Ms. Regina (record citations omitted):

> Defendant Kidde/National Foam claimed it did not have "actual knowledge until years after the government that its MilSpec AFFF even contained PFOA or components that may degrade to PFOA." Record evidence indicates a material factual dispute on that issue. Kidde executive Anne Regina stated in a March 7, 2001 internal email, titled "Foam Nasties," that there was a "common understanding" that telomer AFFF degrades and can produce PFOA. Another Kidde executive, John Dowling, stated in an April 18, 2001 email titled "EPA meeting: comments," that he feared that "[o]nce a witch hunt starts over bioaccumulation" with 3M AFFF, "it is inevitable that that attention will turn to telomer AFFF. He acknowledged that Kidde's AFFF "will degrade in the environment" to PFOA. Another Dowling email in 2002 stated that chemists "with knowledge of telomer structure and formulation are aware that telomer AFFF could degrade to PFOA.[9]

179.   At the time of the proposed acquisition of Kidde plc in 2005, UTC was well aware of the serious potential human health and environmental risks posed by AFFF Products. Upon information and belief, UTC was aware of the concern that the telomer-based AFFF Products manufactured by Kidde plc and its subsidiaries such as KFF, would degrade into PFOA in the environment. Nevertheless, UTC pursued the acquisition of Kidde plc, seeking to expand the market for AFFF Products.

---

[9] *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, at *14 (D.S.C. Sept. 16, 2022).

180.    As of January 26, 2007, and two months prior to the merger between KFF and KFI discussed below, KFF used DuPont's "1157N" line of PFAS surfactants in the National Foam AFFF formulation. Despite KFF's awareness of the EPA's PFOA Stewardship Program to phase out products containing PFOA, KFF continued to market its AFFF products. UTC, which then owned KFF, was aware of the risks as well.

181.    Certain key employees of the National Foam Business who were in regular contact with UTC during the period 2005-2013, also were active participants in the FFFC. Indeed, a Kidde plc employee personally attended the organizational meeting of the FFFC and was fully aware of the steps taken by the FFFC so that the EPA would not include telomer-based AFFF in the PFOA enforceable consent agreement ("ECA") process the EPA was conducting with the AFFF industry. The ECA process eventually led to an industry-wide agreement with EPA in 2006 to phase out PFOA manufacturing by 2015 under the PFOA Stewardship Program.

182.    UTC also was well aware of the scheme by the FFFC, including KFI and its predecessors, to defraud, or to at least negligently fail to provide relevant information to, the EPA and other regulators. In 2008, for example, an employee noted internally that the FFFC had been "economical with the truth" in leading EPA to believe that telomer AFFF foams were only made with C6 surfactants. This misbelief resulted in a call for PFOA and any precursors that could break down to form PFOA, but not the FFFC members' telomer-based products, to be phased out under the PFOA Stewardship Program.

183.    UTC employees played an active role in attempting to capture AFFF market share, as both members of the FFFC and independently, in the continued concealment of the risks telomer-based AFFF posed. KFI (and its predecessors) and UTC are responsible for the misleading statements and conduct of the FFFC, which they endorsed and supported.

184.    Indeed, the AFFF MDL Court found that in a "2008 email exchange, two employees discussed the FFFC's claim to the U.S. Department of Defense that telomer-based products were made with C6 surfactants rather than C8 surfactants," and "[t]hey agreed this claim was untrue and was likely done to distinguish telomer AFFF from 3M's discredited AFFF."

185.    This pattern of deception continued unabated during the period UTC owned and controlled the National Foam Business. For example, in 2011, at a time when KFI had become a leader of the domestic foam and hose supplier sector, KFI advised its customers that its telomer-based fluorinated surfactants were not made from PFOA-based chemicals and no PFOA-based product was added in the manufacturing process, thus perpetrating the misinformation on its own customers that the AFFF MDL Court sharply criticized in a September 2022 ruling denying summary judgment.

186.    UTC F&S's predecessors, Angus and National Foam, were aware of the EPA's goal of phasing out PFOA, were aware of the PFOA Stewardship Program, and were aware that several of their suppliers were participating in the PFOA Stewardship Program, in which suppliers of C8 raw material did not expect to manufacture those raw materials after 2015.

### v.    The Remaining Defendants Knew, or Should Have Known, of the Harm Caused by the Release of PFAS from Their PFAS-Containing Products, Including AFFF Products

187.    The remaining Defendants knew, or should have known, that, in their intended common use, their PFAS-containing Products, including AFFF Products, would harm the environment and human health.

188.    The remaining Defendants knew, or should have known, that, due to their toxicity, their PFAS-containing Products, including AFFF Products, released PFAS that would dissolve in water; reach water systems and the environment in the State; resist degradation; bioaccumulate and biomagnify; and harm ecological, animal, and human health in the State.

189.     Information regarding PFAS was readily accessible to each of the remaining Defendants for decades. Each is an expert in the field of PFAS-containing Products, including AFFF Products, and related PFAS precursors, and each has detailed information and understanding about the PFAS in AFFF Products. The State, by contrast, did not have access to such information.

**E.     PFAS-Containing Products, Including AFFF Products, Have Resulted in PFAS Contamination in the State, Including Sources of Drinking Water, and Defendants Are Liable for Costs to Remediate and Restore Contaminated Natural Resources**

190.     The State's natural resources have been contaminated with PFAS by the use of PFAS-containing Products, and investigation of that contamination is ongoing. For example, Defendants' designing, manufacturing, marketing, promoting, distributing, and selling of AFFF Products in the State, including to the U.S. military, have been substantial factors in causing PFAS contamination and its injuries to the natural resources of the State. As investigation continues, it is expected that significant further PFAS contamination will be discovered.

191.     The contamination from Defendants' AFFF Products is widespread in the State. The following sites exemplify the significant contamination these products have caused in Indiana: Grissom Air Reserve Base, Fort Benjamin Harrison, and Shelbyville Army Aviation Support Facility.

192.     Grissom Air Reserve Base, located at 7207 South Grissom Avenue, Peru, is contaminated with PFAS derived from the U.S. Air Force's use of AFFF in firefighting training areas. For example, the current fire training pit where AFFF-equipped fire trucks conduct spray tests has a piping system that collects runoff from the training exercises and pumps it into an adjacent retention basin. Although the AFFF is supposed to be contained, the retention basin often overflows into the grassy area surrounding the basin during heavy rainfall, leaching into the soil and groundwater.

193.    Indeed, a Site Inspection of Grissom Air Reserve Base, conducted in 2018 for the U.S. Air Force Civil Engineer Center, reported levels of PFOS in soil as high as 2,100,000 ppt and in sediment as high as 1,300,000 ppt. The study reported PFOA and PFOS in groundwater at levels much higher than EPA's then-applicable lifetime Healthy Advisory value of 70 ppt, with concentrations of 190 ppt and 920 ppt, respectively. Water from the aquifer beneath Grissom Air Reserve Base is heavily used in surrounding areas for domestic, agricultural, and municipal supplies. There are approximately 900 wells within a 4-mile radius of the Base, including domestic water wells.

194.    Fort Benjamin Harrison, located at 8950 Otis Avenue, Indianapolis, is contaminated with PFAS resulting from fire training exercises, gas spill cleanup, and the use of AFFF at on-base fire stations. The former military base, which closed in 1995, is now a state park located 12 miles northeast of downtown Indianapolis.

195.    Samples taken for the U.S. Army's 2023 Final Site Inspection all contained detectable levels of PFBS, PFHxS, PFNA, PFOS, and/or PFOA. The Site Inspection also reports concentrations of PFOS as high as 24,000 ppt in soil and concentrations of PFHxS and PFOS as high as 7,500 ppt and 2,500 ppt, respectively, in groundwater. Approximately 15 to 25 percent of the drinking water supplied to the Indianapolis area is drawn from the aquifers that underlie Fort Benjamin Harrison.

196.    Shelbyville Army Aviation Support Facility, located on 3556 North Michigan Road, Shelbyville, is contaminated with PFAS resulting from the testing and storage of fire extinguisher units containing AFFF. The U.S. Army National Guard Bureau's Final Site Inspection, conducted in 2022, reported PFOS and PFOA in the soil at levels of 2,680,000 ppt and 9,450 ppt respectively. These PFAS levels are high enough to pose toxicity hazards to the three federally endangered or

threatened species that live on the Facility, including two species of bats and one species of clam. Moreover, the Facility is adjacent to land used for agriculture and the Brandywine Creek and Hankins Ditch, which are used recreationally for swimming and fishing.

197.    All PFAS-containing Products, including AFFF Products, have injured the State's natural resources. PFAS enter the environment through releases of leachate from unlined municipal landfills, urban runoff, and the use of PFAS-containing effluent and biosolids from wastewater treatment facilities for agriculture and irrigation, among other sources. Leachate generated at landfills that hold discarded PFAS-containing Products, such as household items coated with stain and waterproofing materials, has been shown to have high concentrations of PFAS.

198.    As investigation of PFAS contamination continues, additional impacted areas will be discovered on a location-by-location basis. Such investigation is necessary to ascertain the scope of contamination related to PFAS-containing Products and to return the affected natural resources to levels that are safe for human health and the environment.

199.    Defendants are liable for the cost of investigation, remediation, and restoration of all the State's property, soils, sediments, waters, and other natural resources contaminated with or injured by PFAS from PFAS-containing Products, as well as for the State's loss of past, present, and future use of such injured natural resources.

200.    The PFAS contamination in groundwater and surface water is impacting the State's drinking water sources. PFAS detections in drinking water have been reported to the State at 59 public water systems.

201.    Defendants are liable for all of the costs necessary to investigate and treat (in perpetuity) any and all drinking water wells and sources of drinking water in the State that are adversely affected by PFAS from Defendants' PFAS-containing Products, including AFFF Products.

Case 1:24-cv-00750-JRS-MKK   Document 1-1   Filed 05/01/24   Page 58 of 181 PageID #: <pageID>

**F.    KFI, Kidde Limited, Carrier Fire, Carrier Fire Americas, Carrier, and UTC Are Liable For All Historical Liabilities Related to the National Foam Business**

202.    The National Foam Business has been developing and marketing firefighting foams and delivery systems for more than a century. The National Foam Business began to manufacture AFFF in the 1970s. Based on the transactions described below, various entities, including KFI, Kidde Limited, Carrier Fire, Carrier Fire Americas, Carrier, and UTC became liable for harms caused by the AFFF Products manufactured by the National Foam Business.

203.    From the 1970s to 1997, the National Foam Business was owned by National Foam, Inc., which was known, at various times, as Chubb National Foam, Inc. and National Foam System, Inc. The National Foam Business was also indirectly owned by a number of different corporate parents throughout this period, which include Philadelphia Suburban Corporation, Enterra Corporation, Racal Electronics plc, Chubb Security plc, and Williams Holdings plc ("Williams Holdings").

204.    In 2000, Williams Holdings elected to demerge two of its subsidiary entities, Chubb plc and Kidde plc. In connection with that transaction, Kidde plc assumed the AFFF liabilities related to the National Foam Business in connection with the demerger.

205.    In 2000, 3M made the announcement that it would no longer manufacture AFFF products. UTC saw a significant business opportunity created by 3M's withdrawal from the marketplace, and in 2003, Kidde plc and Chubb plc became acquisition targets for UTC.

206.    On April 1, 2005, through a series of stock purchases by UTC and its subsidiaries, Kaysail Limited (a subsidiary of UTC) came to own 100% of Kidde plc.

207.    To acquire Kidde plc, UTC paid $3.1 billion, which included the assumption of $520 million of Kidde plc debt (the "2005 Acquisition"). According to the corresponding purchase price allocation detail for the 2005 Acquisition, reported in UTC's annual report filed with the SEC for

48

fiscal year 2005, the assets acquired by UTC were worth $4.2 billion. That $4.2 billion included approximately $966 million for intangible assets, such as intellectual property, and over $2 billion for goodwill.

208.    At the time of the 2005 Acquisition, Kidde plc was the parent of KFF (f/k/a National Foam, Inc.) and its AFFF business. As described above, Kidde plc had assumed the historical AFFF liabilities, and its affiliates also remained liable for the historical AFFF claims. At the time UTC completed its acquisition of Kidde plc, 100% of historical AFFF liability for the National Foam Business was housed within KFF.

209.    Net of debt obligations, several billions of dollars remained available, at that time, to satisfy claims concerning the National Foam Business.

210.    Following the acquisition of Kidde plc, KFF became a wholly owned subsidiary of UTC.

211.    According to UTC's Form 10-K for the fiscal year ended December 31, 2005, UTC created a new fire and security business segment ("UTC F&S Business") in the second quarter of 2005, following its acquisition of Kidde plc. Upon information and belief, UTC F&S was the owner and operator of the UTC F&S Business, which included UTC F&S Americas.

212.    The 2005 UTC 10-K explains that the UTC F&S Business "includes our former Chubb segment and Kidde's industrial, residential and commercial fire safety businesses" but excludes "the aircraft fire protection systems business, which is included in the Hamilton Sundstrand segment." The 2005 UTC 10-K further explains that the UTC F&S Business "provides its products and services under Chubb, Kidde, Lenel and other brand names and sells directly to the customer as well as through manufacturers' representatives, distributors and dealers."

213.     UTC's integration of Kidde plc's commercial fire and safety business into the UTC F&S Business did not extinguish any tort liabilities or eliminate assets available to satisfy AFFF claims. The UTC F&S Business continued Kidde's fire and security business—i.e., there was a continuation of normal business operations, including a continuity of physical location, assets, human capital, and general business operations. UTC was the ultimate shareholder of all entities that continued Kidde's fire and security business, including the production of AFFF products.

214.     On March 8, 2007, UTC caused a merger between KFF and KFI. As a result of the merger, KFI assumed KFF's AFFF business and liabilities, which included all historical liability for the National Foam Business. Following the merger, KFF ceased to exist as a separate entity.

215.     Following the merger and until 2013, KFI marketed and sold AFFF products in the United States under the "National Foam" brand.

216.     On June 28, 2013, UTC directed KFI's sale of the National Foam Business to Lloyds Development Capital, a UK based arm of the Lloyds Banking Group.

217.     Following the 2013 sale of the National Foam Business, operational supervision of KFI was transferred to one of UTC's subsidiaries, Carrier Corporation. UTC wholly controlled KFI through its Carrier entities. KFI employees were hired, managed, promoted, and fired, only by Carrier Corporation employees or their affiliates. Therefore, UTC exerted direct control over KFI's daily business operations.

218.     On June 9, 2019, UTC announced its plan to merge with Raytheon. Pursuant to the merger, UTC spun-off two of its business segments, the Otis reporting segment and Carrier reporting segment, to create two new companies, Otis Worldwide Corp., and Carrier. On April 3, 2020, once UTC had distributed 100% of the Otis Worldwide Corp. and Carrier Stock, the separation was complete.

219.   Following the merger, UTC's name changed to Raytheon, n/k/a RTX Corporation.

220.   From April 3, 2020 to today, Carrier has been the ultimate parent company of KFI.

221.   Under the 2020 Separation Agreement, Carrier accepted and assumed all Carrier liabilities. Specifically, Carrier affirmatively assumed, and is obligated to indemnify UTC for "all Carrier Liabilities, regardless of when or where such Carrier Liabilities arose or arise."

222.   Included in all "Carrier Liabilities" are all of the AFFF liabilities arising out of the National Foam Business. Section 2.3(a) of the 2020 Separation Agreement provides that "Carrier Liabilities" includes "all Liabilities" arising from litigation, including "Environmental Liabilities," to the extent that the underlying facts arise out of "Carrier Business." Further, Article 1 of the agreement provides that "Carrier Business" includes the reporting segment that contained the National Foam Business. Therefore, pursuant to the 2020 Separation Agreement, Carrier assumed all of the AFFF liabilities.

223.   Pursuant to the 2020 Separation Agreement, Carrier also agreed to indemnify UTC for all "Carrier Liabilities." The indemnification includes all claims, whether or not they arose before, at, or after the effective date. Therefore, Carrier's indemnification of UTC includes all National Foam Business Liabilities going as far back as the 1970s.

224.   On May 14, 2023, in anticipation of potential settlements in the AFFF MDL lawsuits, Carrier issued a press release purporting to explain its reasons for cutting off financial support to KFI, claiming that it was not responsible for the AFFF activities of KFI, and not liable for KFI's debts under law. These statements are directly contradicted by Carrier's contractual commitments under the 2020 Separation Agreement, under which Carrier assumed all of KFI's AFFF liabilities.

225.   By cutting KFI off from financial support, Carrier drove the entity to file for bankruptcy on May 14, 2023.

226.     At the time of the 2020 Separation Agreement, UTC was already facing significant AFFF liability, and had been named as a defendant in numerous cases alleging serious human health effects and environmental harm resulting from AFFF.  Accordingly, upon information and belief, UTC, in advance of its merger with Raytheon, instituted a series of transactions with the goal of transferring all legacy AFFF liabilities to Carrier and KFI. Thus, pursuant to the 2020 Separation Agreement, Carrier has assumed all the AFFF liabilities of Kidde Limited f/k/a Kidde plc, UTC F&S, UTC F&S Americas, and KFI.

227.     In addition, UTC is liable based on its direct conduct and control of KFI during relevant times. Between 2005 and 2013 (specifically inclusive of the 2007 merger and the sale of the National Foam Business in 2013), UTC, at all relevant times, operated the UTC F&S Business and KFI, including the National Foam Business, as a single business enterprise and in a manner inconsistent with KFI's operation as an autonomous company.

228.     In fact, UTC exercised complete control and domination over KFI. During the same period, UTC was well aware of the risks of AFFF but did nothing to mitigate the mounting liability being incurred by KFI, instead directing and requiring KFI to expand its market share, aware that KFI was misleading regulators, customers, and the public as to the material risks of the AFFF Products that KFI was selling and facilitating such misconduct to benefit UTC financially.

229.     After UTC's sale of its National Foam Business in 2013, the operational supervision of KFI was moved within the business structure of Carrier Corporation, a company that had been acquired by UTC in 1979.

230.     By 2014 and through April 2020, KFI functioned as part of the UTC F&S Business. Carrier, following the sale of the National Foam Business, exercised control of KFI in many ways.

231.     UTC continued to dominate KFI, through Carrier entities, in a manner that lacked respect for formal corporate separateness. For example, KFI employees were hired, managed, promoted, and fired not by KFI superiors, but by employees of Carrier Corporation or its affiliates.

232.     Similarly, while a subsidiary of UTC, KFI was governed and directed by individuals who held positions in parent companies and afforded those companies significant influence over KFI.

**G.     Old DuPont's Multi-Step, Years-Long Fraudulent Scheme to Isolate Its Valuable Tangible Assets from Its PFAS Liabilities**

233.     In or about 2013, Old DuPont began planning a series of corporate restructurings designed to separate its valuable assets from its billions of dollars of legacy liabilities—especially those arising from its historical use of PFOA and other PFAS.

234.     For more than five decades, Old DuPont manufactured, produced, or utilized PFOA and other PFAS at plants in New Jersey, West Virginia, and North Carolina, among others. By 2013, Old DuPont knew it was facing an avalanche of claims related to its PFAS business.

235.     For example, a 2012 study—funded by Old DuPont pursuant to a 2005 class action settlement—confirmed "probable links" between PFOA exposure and several serious human diseases: medically diagnosed high cholesterol, ulcerative colitis, pregnancy induced hypertension, thyroid disease, testicular cancer, and kidney cancer. As a result, more than 3,500 class members with one or more of those linked diseases filed personal injury claims against Old DuPont. Under the terms of the 2005 class settlement, Old DuPont had agreed not to contest the fact that the class members' exposure to PFOA could have caused each of the linked diseases, significantly limiting Old DuPont's available defenses to liability.

236.     Anticipating significant liability exposure, Old DuPont convened an internal initiative known as "Project Beta" in or about 2013 for Old DuPont's management to consider

restructuring the company in order to, among other things, avoid responsibility for the widespread harm that Old DuPont's PFAS had caused and shield billions of dollars in assets from these substantial liabilities.

237.     At the same time, Old DuPont and The Dow Chemical Company ("Old Dow") were discussing a possible "merger of equals." But no rational merger partner, including Old Dow, would agree to a transaction that would expose it to the substantial PFAS and environmental liabilities that Old DuPont faced.

238.     Accordingly, Old DuPont's management decided to pursue a multi-year corporate restructuring specifically orchestrated to isolate Old DuPont's massive legacy liabilities from its valuable tangible assets in an attempt to entice Old Dow to pursue the proposed merger.

239.     Old DuPont engaged in a coordinated three-part restructuring plan that consisted of (i) Old DuPont's attempt to cast off its massive performance chemicals liabilities onto Chemours and spinning off Chemours as a separate publicly traded company; (ii) the creation of New DuPont to facilitate a purported merger with Old Dow; and (iii) a series of internal restructurings and divestitures that culminated with the spinoff of Old DuPont to its newly formed parent, Corteva.

240.     In greater detail, the restructuring scheme was implemented as follows.

### i.     Step 1: The Chemours Spinoff

241.     The first step in Old DuPont's scheme was to transfer its performance chemicals business, which included Teflon®, Stainmaster, and other products associated with Old DuPont's historic use of PFOA ("Performance Chemicals Business") into its wholly owned subsidiary, Chemours. Then, on July 1, 2015, Old DuPont spun off Chemours as a separate public entity and saddled Chemours with Old DuPont's massive legacy liabilities (the "Chemours Spinoff").

242.     To effectuate the Chemours Spinoff, Old DuPont and Chemours entered into a June 26, 2015 Separation Agreement (the "Chemours Separation Agreement").

243.    Pursuant to the Chemours Separation Agreement, Old DuPont agreed to transfer to Chemours all businesses and assets related to the Performance Chemicals Business, including 37 active chemical plants.

244.    Chemours, in turn, broadly assumed Old DuPont's massive liabilities relating to Old DuPont's Performance Chemicals Business and other unrelated business lines, set forth in detail in the nonpublic schedules and exhibits to the Chemours Separation Agreement.

245.    Specifically, the Chemours Separation Agreement requires Chemours to indemnify Old DuPont against, and assume for itself, all "Chemours Liabilities," which are defined broadly to include, among other things, "any and all Liabilities relating . . . primarily to, arising primarily out of or resulting primarily from, the operation or conduct of the Chemours Business, as conducted at any time prior to, at or after the Effective Date," which includes Old DuPont's historic liabilities relating to and arising from its marketing and operation of the Performance Chemicals Business, such as its liabilities arising from PFAS.

246.    In addition to requiring Chemours to assume billions of dollars of Old DuPont's PFAS liabilities, the Chemours Separation Agreement includes an indemnification of Old DuPont in connection with those liabilities, which is uncapped and does not have a survival period.

247.    Notwithstanding the billions of dollars in PFAS liabilities that Chemours would face, on July 1, 2015, Old DuPont caused Chemours to transfer to Old DuPont approximately $3.4 billion as a cash dividend, along with a "distribution in kind" of promissory notes with an aggregate principal amount of $507 million. In total, Old DuPont extracted approximately $3.9 billion from Chemours.

248.   Old DuPont required Chemours to fund these distributions through financing transactions, including senior secured term loans and senior unsecured notes totaling approximately $3.995 billion, on May 12, 2015.

249.   Old DuPont, however, transferred only $4.1 billion in net assets to Chemours.

250.   At the end of 2015, Chemours reported a total net worth of just $130 million. But Chemours's estimated liabilities—which at the time totaled $6.168 billion—vastly underestimated the true value of its liabilities, including the PFAS liabilities it had assumed from Old DuPont, which Chemours knew or should have known would cost it billions of dollars.

251.   Old DuPont dominated Chemours during negotiation and execution of the Chemours Separation Agreement. Old DuPont's conduct was so egregious that in May 2019, Chemours sued Old DuPont, New DuPont, and Corteva in Delaware Chancery Court. *See The Chemours Company v. DowDuPont, et al.*, C.A. No. 2019-0351 (Del. Ch. Ct., filed May 13, 2019).

252.   In its Amended Complaint—which was verified by Chemours's current Chief Executive Officer, Mark Newman—Chemours alleged that the primary motivation for the Chemours Spinoff, the subsequent creation of New DuPont, and the final separation of Corteva was to enable Old DuPont to "wash its hands of its environmental liabilities," including litigation liabilities arising out of Old DuPont's historic use of PFOA and other PFAS.

253.   Chemours also alleged, among other things, that if (i) the full value of Old DuPont's PFAS litigation and environmental liabilities were properly estimated and (ii) the Delaware court did not limit the liability that the Chemours Separation Agreement imposed on it, then Chemours would have been insolvent at the time it was spun off from Old DuPont.

254.   Had the full extent of Old DuPont's legacy liabilities been taken into account, as they should have been at the time of the Chemours Spinoff, Chemours would have had negative equity

(that is, total liabilities greater than total assets), not only on a tangible basis, but also on a total equity

basis, and Chemours would have been rendered insolvent at that time.

### ii.  Step 2: The Old Dow/Old DuPont "Merger"

255.   After the Chemours Spinoff, Old DuPont took the untenable position that it was

somehow no longer responsible for the widespread PFAS liabilities that it had accrued over several

decades. Of course, Old DuPont could not contractually discharge all of its historical liabilities

through the Chemours Spinoff, and Old DuPont remained liable for the liabilities it had caused and

Chemours had assumed.

256.   Old DuPont knew that it could not escape liability and would still face exposure for

PFAS liabilities, including for potentially massive penalties and punitive damages. So Old DuPont

moved to the next phase of its fraudulent scheme.

257.   On December 11, 2015, less than six months after the Chemours Spinoff, Old DuPont

and Old Dow announced that their respective boards had approved an agreement "under which the

companies [would] combine in an all-stock merger of equals" and that the combined company would

be named DowDuPont, Inc. (the "DowDuPont Merger"). The companies disclosed that they

intended to subsequently separate the combined companies' businesses into three publicly traded

companies through further spinoffs, each of which would occur 18 to 24 months following the

closing of the merger.

258.   To effectuate the transaction, Old DuPont and Old Dow entered into an Agreement

and Plan of Merger (the "DowDuPont Merger Agreement") that provided for the formation of a new

holding company renamed first as DowDuPont and then renamed again as DuPont de Nemours, Inc.

(i.e., New DuPont), of which Old DuPont and Old Dow became wholly owned subsidiaries.

259.   Although Old DuPont and Old Dow referred to the transaction as a "merger of

equals," the two companies did not actually merge at all, likely because doing so would have infected

57

Old Dow with all of Old DuPont's historical PFAS liabilities. Rather, Old DuPont and Old Dow became affiliated sister companies that were each owned by the newly formed DowDuPont. DowDuPont was aware of Old DuPont's historical PFAS liabilities.

### iii.    Step 3: The Shuffling, Reorganization, and Transfer of Valuable Assets Away from Old DuPont and Separation of Corteva and New Dow

260.    Following the DowDuPont Merger, DowDuPont underwent a significant internal reorganization and engaged in numerous business segment and product line "realignments" and "divestitures." The net effect of these transactions has been the transfer, either directly or indirectly, of a substantial portion of Old DuPont's assets out of the company, frustrating Old DuPont's creditors, including with respect to its substantial PFAS liabilities.

261.    Old DuPont's assets were transferred either directly or indirectly to DowDuPont, which reshuffled the assets and combined them with the assets of Old Dow, and then reorganized the combined assets into three distinct divisions: (i) the "Agriculture Business," (ii) the "Specialty Products Business," and (iii) the "Materials Science Business."

262.    DowDuPont then incorporated two companies (i) Corteva and (ii) New Dow. In accordance with the merger plan, each of these three companies received one of the three business divisions associated with Old DuPont's and Old Dow's historic assets, and was subsequently separated as an independent, publicly traded company.

263.    The mechanics of the separations are governed by the April 1, 2019 Separation and Distribution Agreement among Corteva, New Dow, and DowDuPont (the "DowDuPont Separation Agreement").

264.    The DowDuPont Separation Agreement allocated the assets and liabilities primarily related to the respective business divisions between the three companies: DowDuPont retained the assets and liabilities associated with the Specialty Products Business and several "non-core" business

segments and product lines that once belonged to Old DuPont; Corteva received the assets and liabilities associated with the Agriculture Business; and New Dow received the assets and liabilities associated with the Materials Science Business.

265.    DowDuPont also "contributed" Old DuPont to Corteva, and Old DuPont remains a wholly-owned subsidiary of Corteva to this day.

266.    Pursuant to the DowDuPont Separation Agreement, Corteva and New DuPont also assumed direct financial liability for legacy liabilities arising from Old DuPont's historic use of PFOA and other PFAS and its former Performance Chemicals Business. While New DuPont and Corteva have buried the details in nonpublic schedules, New DuPont and Corteva's express assumption of Old DuPont's historic liabilities includes all liability associated with PFAS. Indiana can therefore bring claims against New DuPont and Corteva directly for Old DuPont's deceptive marketing of consumer PFAS-containing brands.

267.    The separation of New Dow was completed on or about April 1, 2019, when DowDuPont distributed all of New Dow's common stock to DowDuPont stockholders as a pro rata dividend.

268.    On June 1, 2019, DowDuPont spun off Corteva as an independent public company, when DowDuPont distributed all of Corteva's common stock to DowDuPont stockholders as a pro rata dividend.

269.    Also, on or about June 1, 2019, DowDuPont changed its registered name to DuPont de Nemours, Inc. (i.e., New DuPont).

270.    On or about January 1, 2023, Old DuPont changed its registered name to EIDP, Inc.

271.    The net result of these transactions was to strip away valuable tangible assets from Old DuPont—once available to satisfy successful claims brought by potential plaintiffs such as the

State of Indiana—and transfer those assets to New DuPont and Corteva for far less than the assets are worth.

272.     Many of the details about these transactions are hidden from the public in confidential schedules and exhibits to the various restructuring agreements. Old DuPont, New DuPont, and Corteva have buried these details in an apparent attempt to hide from creditors, like the State of Indiana, where Old DuPont's valuable assets went and the inadequate consideration that Old DuPont received in return.

273.     In addition, neither New DuPont nor Corteva has publicly conceded that they assumed Old DuPont's liabilities arising from its historic use of PFOA and other PFAS. And it is far from clear that either entity will be able to satisfy future judgments.

## VI.  CLAIMS

### COUNT I.
### INDIANA PRODUCT LIABILITY ACT, I.C. §§ 34-20-1 *ET SEQ.*
### DESIGN DEFECT
### (AGAINST ALL DEFENDANTS)

274.     The State realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

275.     Defendants designed, developed, manufactured, marketed, advertised, distributed, sold, released, supplied, used, and/or disposed of PFAS-containing Products, which were intended by Defendants to be used in a wide array of consumer and industrial products, including nonstick cookware, food packaging, stain resistant carpet and furniture, water resistant clothing, personal care products, and firefighting foam.

276.    At all times relevant to this action, Defendants had a duty to ensure that the design of their PFAS-containing Products, including AFFF Products, made them reasonably fit and safe for the purpose for which they were intended.

277.    Defendants' PFAS-containing Products, including AFFF Products, were not reasonably safe as designed and have been unreasonably dangerous for their intended, foreseeable, and ordinary use and disposal.

278.    PFAS released into the environment from Defendants' PFAS-containing Products, including AFFF Products, caused and still causes contamination in the environment, including in drinking water supplies, that endangers public health and safety and threatens natural resources.

279.    Defendants marketed, promoted, sold and/or distributed PFAS-containing Products, including AFFF Products, to the State and consumers in Indiana while concealing the dangers of those products and affirmatively distorting and/or suppressing their knowledge and the scientific evidence linking their products to the unreasonable dangers those products pose.

280.    Defendants expected that their PFAS-containing Products, would reach consumers or users without a substantial change in those products' condition; Defendants' PFAS-containing Products did reach consumers and/or users without a substantial change in those products' condition.

281.    At all times relevant to this action, Defendants' PFAS-containing Products did not meet the reasonable expectations of an ordinary consumer or user as to those products' safety. In particular, ordinary consumers did not expect that PFAS-containing Products would, inter alia, threaten the viability of natural resources; endanger the public's health and safety by exposing them to chemicals known to cause significant diseases, including certain cancers; migrate through the environment; resist degradation; bioaccumulate; biomagnify; persist in the environment; or contaminate drinking water supplies.

282.     At all times relevant to this action, the use of Defendants' PFAS-containing Products, including AFFF Products, in a reasonably foreseeable manner involved a substantial danger that would not be readily recognized by the ordinary user and Defendants failed to give adequate warnings of that danger.

283.     At all times relevant to this action, the foreseeable harm to the environment and public health and welfare posed by Defendants' PFAS-containing Products, including AFFF Products, outweighed the cost to Defendants of reducing or eliminating such harm.

284.     Defendants' PFAS-containing Products, including AFFF Products, caused and continue to cause injury to the State and consumers. As a direct and proximate result of Defendants' defectively designed PFAS-containing Products, including AFFF Products, air, soil, sediment, biota, surface water, groundwater, drinking water, watercourses, wetlands, other natural resources, and/or property held in trust or otherwise owned by the State at and around various locations throughout the State where Defendants' PFAS-containing Products were transported, stored, used, handled, trained with, used to test equipment, released, spilled, otherwise discharged, and/or disposed have become contaminated with PFAS.

285.     As a direct and proximate result of Defendants' acts and omissions, the State has incurred, is incurring, and will continue to incur in the future damages related to PFAS contamination in an amount to be proved at trial.

286.     Defendants acted with conscious disregard for the dangerous consequences of their PFAS-containing Products' foreseeable impact on the State, thereby entitling the State to an award of punitive damages in an amount reasonable, appropriate, and sufficient to punish Defendants for the good of society and deter Defendants from ever committing the same or similar acts.

287.   Chemours, New DuPont, and Corteva agreed to assume Old DuPont's liabilities described above.

288.   Kidde plc assumed all of the historical liabilities of the National Foam Business in connection with the demerger in 2000.  Kidde Limited f/k/a Kidde plc is therefore liable for this claim.

289.   In connection with the 2005 Acquisition, UTC purchased Kidde plc and used its assets to create UTC F&S, which therefore became the successor to Kidde plc and the historical liabilities of the National Foam Business. UTC F&S, along with its subsidiary, UTC F&S Americas, was directly involved in and controlled the operations of the National Foam Business. UTC F&S and UTC F&S Americas are therefore liable for this claim on this ground as well.

290.   UTC, through its ownership, control over and conduct associated with the National Foam Business, designed, manufactured, marketed, promoted, distributed, and/or sold PFAS-containing Products throughout the United States and is thus liable on the State's products liability claim.

291.   On September 28, 2020, UTC F&S changed its name to Carrier Fire.  Carrier Fire is the legal successor to UTC F&S's fire and security business and thus also liable for this claim.

292.   On October 1, 2020, UTC F&S Americas changed its name to Carrier Fire Americas. Carrier Fire Americas is the legal successor to UTC F&S Americas's fire and security business and thus also liable for this claim.

293.   Carrier assumed all the AFFF liabilities of Kidde Limited f/k/a Kidde plc, UTC, UTC F&S, UTC F&S Americas, and KFI in connection with the 2020 Separation Agreement and is also liable for this claim.

## COUNT II.
## INDIANA PRODUCT LIABILITY ACT, I.C. §§ 34-20-1 *ET SEQ.*

## FAILURE TO WARN
## (AGAINST ALL DEFENDANTS)

294.     The State realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

295.     Defendants had a duty to warn the State and consumers of the dangers posed by their PFAS-containing Products, including AFFF Products, and the contamination that would result from those products' intended uses.

296.     Defendants, by exercising reasonable diligence, could have made such warnings available to consumers and/or users.

297.     Defendants expected that their PFAS-containing Products would reach consumers and/or users without a substantial change in those products' conditions; and Defendants' PFAS-containing Products, including AFFF Products, did reach consumers and/or users without a substantial change in those products' conditions.

298.     Defendants knew, or should have known, at the time they manufactured PFAS-containing Products, of the likelihood of harm to human health and the environment from their PFAS-containing Products, including AFFF Products, but they failed to warn, or inadequately warned of, inter alia, the likelihood that PFAS would be released into the environment during the normal use of Defendants' PFAS-containing Products, including AFFF Products, and of the widespread, toxic, and persistent effects of such releases.

299.     Defendants failed to provide such warnings to the State and/or users and buyers of their PFAS-containing Products, including AFFF Products. Defendants' failure to issue the proper warnings relating to their PFAS-containing Products affected the market's acceptance of these products and prevented consumers from seeking alternative products.

300.     Defendants knew or should have known that their marketing and promotional efforts were creating an untrue and misleading impression of the risks associated with their PFAS-containing Products. Those false and misleading representations and omissions were material because they involve information that would be important to consumers and, therefore, likely their choice of, or conduct regarding, PFAS-containing Products.

301.     To the extent Defendants provided any warnings about their products, they were not warnings that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger posed by PFAS-containing Products, including AFFF Products, and the warnings did not convey adequate information on the dangers of PFAS to the mind of a reasonably foreseeable or ordinary user or consumer. Moreover, the seriousness of the potential harms with respect to AFFF Products and other PFAS-containing Products rendered any such warnings inadequate.

302.     Even if the likelihood of harm to human health and the environment from PFAS was not known to Defendants at the time they manufactured the PFAS-containing Products, including AFFF Products, Defendants learned or should have learned about the dangers connected with them after these products were manufactured, based on their internal studies, investigations, and subject-matter expertise. As such, after manufacturing their PFAS-containing Products, Defendants had a duty to act with regard to issuing warnings concerning the dangers associated with products, and a reasonably prudent manufacturer would have done so.

303.     Despite the fact that Defendants knew or should have known about the risks associated with PFAS-containing Products, including AFFF Products, Defendants withheld such knowledge from the State, other government entities, and the public. Moreover, Defendants

affirmatively distorted and/or suppressed their knowledge and the scientific evidence linking their products to the unreasonable dangers those products pose.

304.    As a direct and proximate result of Defendants' failure to warn of the hazards of PFAS-containing Products, including AFFF Products, air, soil, sediment, biota, surface water, groundwater, drinking water, watercourses, wetlands, other natural resources, and/or property held in trust or otherwise owned by the State at and around various locations throughout the State where Defendants' PFAS-containing Products were transported, stored, used, handled, trained with, used to test equipment, released, spilled, otherwise discharged, and/or disposed have become contaminated with PFAS.

305.    As a direct and proximate result of Defendants' acts and omissions, the State has incurred, is incurring, and will continue to incur in the future damages related to PFAS contamination in an amount to be proved at trial.

306.    Defendants acted with conscious disregard for the dangerous consequences of their PFAS-containing Products' foreseeable impact on the State, thereby entitling the State to an award of punitive damages in an amount reasonable, appropriate, and sufficient to punish Defendants for the good of society and deter Defendants from ever committing the same or similar acts.

307.    Chemours, New DuPont, and Corteva agreed to assume Old DuPont's liabilities described above.

308.    Kidde plc assumed all of the historical liabilities of the National Foam Business in connection with the demerger in 2000. Kidde Limited f/k/a Kidde plc is therefore liable for this claim.

309.    In connection with the 2005 Acquisition, UTC purchased Kidde plc and used its assets to create UTC F&S, which therefore became the successor to Kidde plc and the historical

liabilities of the National Foam Business. UTC F&S, along with its subsidiary, UTC F&S Americas, was directly involved in and controlled the operations of the National Foam Business. UTC F&S and UTC F&S Americas are therefore liable for this claim on this ground as well.

310.    UTC, through its ownership, control over and conduct associated with the National Foam Business, designed, manufactured, marketed, promoted, distributed, and/or sold PFAS-containing Products throughout the United States and is thus liable on this claim.

311.    On September 28, 2020, UTC F&S changed its name to Carrier Fire. Carrier Fire is the legal successor to UTC F&S's fire and security business and thus also liable for this claim.

312.    On October 1, 2020, UTC F&S Americas changed its name to Carrier Fire Americas. Carrier Fire Americas is the legal successor to UTC F&S Americas's fire and security business and thus also liable for this claim.

313.    Carrier assumed all the AFFF liabilities of Kidde Limited f/k/a Kidde plc, UTC, UTC F&S, UTC F&S Americas, and KFI in connection with the 2020 Separation Agreement and is also liable for this claim.

## COUNT III.
## VIOLATION OF INDIANA DECEPTIVE CONSUMER SALES ACT, I.C. §§ 24-5-0.5 *ET SEQ.* (AGAINST ALL DEFENDANTS)

314.    The State realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this Count.

315.    The DCSA regulates unfair, abusive, and/or deceptive acts, omissions, and practices between a supplier and consumer when engaging in consumer transactions. I.C. §§ 24-5-0.5 *et seq.*

316.    Under the DCSA, a consumer transaction includes services and other intangibles. I.C. § 24-5-0.5-2(1).

317.    In supplying Indiana consumers with their PFAS-containing Products, Defendants were and continue to remain involved in consumer transactions in Indiana, as defined by Indiana Code § 24-5-0.5-2.

318.    Defendants regularly engage in or solicit consumer transactions with Indiana consumers. As such, Defendants are suppliers pursuant to Indiana Code § 24-5-0.5-2.

319.    The DCSA prohibits a supplier from committing "an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction….whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentation." I.C. § 24-5-0.5-3(a).

320.    As suppliers, Defendants are required to comply with the provisions of the DCSA in their marketing, promotion, sale, and distribution of PFAS-containing products.

321.    As alleged herein, Defendants have regularly engaged in unfair, abusive and/or deceptive acts, omissions, and/or practices in connection with consumer transactions and affecting Indiana consumers, in violation of Indiana Code § 24-5-0.5-3(a), by claiming, marketing, and promoting that their PFAS-containing Products, including AFFF Products, were safe while misrepresenting, concealing, and omitting material facts regarding the risks and dangers associated with their PFAS-containing Products.

322.    Further, by engaging in these acts and practices Defendants committed unfair, abusive and deceptive acts or practices within the meaning of Indiana Code § 24-5-0.5-3(a), by failing to update their information and marketing material with known material risks associated with the use of PFAS-containing Products.

323.    The State has been injured, directly and/or indirectly, by Defendants' acts, omissions, and/or practices in violation of the DCSA.

324.     These unfair, abusive, and/or deceptive acts, omissions, and/or practices were made in connection with a consumer transaction within the meaning of Indiana Code § 24-5-0.5-2(a)(1).

325.     Chemours, New DuPont, and Corteva agreed to assume Old DuPont's liabilities described above.

326.     Kidde plc assumed all of the historical liabilities of the National Foam Business in connection with the demerger in 2000. Kidde Limited f/k/a Kidde plc is therefore liable for this claim.

327.     In connection with the 2005 Acquisition, UTC purchased Kidde plc and used its assets to create UTC F&S, which therefore became the successor to Kidde plc and the historical liabilities of the National Foam Business. UTC F&S, along with its subsidiary, UTC F&S Americas, was directly involved in and controlled the operations of the National Foam Business. UTC F&S and UTC F&S Americas are therefore liable for this claim on this ground as well.

328.     UTC, through its ownership, control over and conduct associated with the National Foam Business, designed, manufactured, marketed, promoted, distributed, and/or sold PFAS-containing Products throughout the United States and is thus liable on this claim.

329.     On September 28, 2020, UTC F&S changed its name to Carrier Fire. Carrier Fire is the legal successor to UTC F&S's fire and security business and thus also liable for this claim.

330.     On October 1, 2020, UTC F&S Americas changed its name to Carrier Fire Americas. Carrier Fire Americas is the legal successor to UTC F&S Americas's fire and security business and thus also liable for this claim.

331.     Carrier assumed all the AFFF liabilities of Kidde Limited f/k/a Kidde plc, UTC, UTC F&S, UTC F&S Americas, and KFI in connection with the 2020 Separation Agreement and is also liable for this claim.

**COUNT IV.**
**KNOWING VIOLATION OF INDIANA DECEPTIVE CONSUMER SALES ACT,**
**I.C. § 24-5-0.5-4**
**(AGAINST ALL DEFENDANTS)**

332.    The State realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this Count.

333.    The deceptive acts asserted in this Complaint were committed by Defendants with knowledge of its unfair deceptive acts, subjecting Defendants to civil penalties pursuant to Indiana Code § 24-5-0.5-4(g).

334.    Chemours, New DuPont, and Corteva agreed to assume Old DuPont's liabilities described above.

335.    Kidde plc assumed all of the historical liabilities of the National Foam Business in connection with the demerger in 2000.  Kidde Limited f/k/a Kidde plc is therefore liable for this claim.

336.    In connection with the 2005 Acquisition, UTC purchased Kidde plc and used its assets to create UTC F&S, which therefore became the successor to Kidde plc and the historical liabilities of the National Foam Business. UTC F&S, along with its subsidiary, UTC F&S Americas, was directly involved in and controlled the operations of the National Foam Business. UTC F&S and UTC F&S Americas are therefore liable for this claim on this ground as well.

337.    UTC, through its ownership, control over and conduct associated with the National Foam Business, designed, manufactured, marketed, promoted, distributed, and/or sold PFAS-containing Products throughout the United States and is thus liable on this claim.

338.    On September 28, 2020, UTC F&S changed its name to Carrier Fire.  Carrier Fire is the legal successor to UTC F&S's fire and security business and thus also liable for this claim.

70

339.     On October 1, 2020, UTC F&S Americas changed its name to Carrier Fire Americas. Carrier Fire Americas is the legal successor to UTC F&S Americas's fire and security business and thus also liable for this claim.

340.     Carrier assumed all the AFFF liabilities of Kidde Limited f/k/a Kidde plc, UTC, UTC F&S, UTC F&S Americas, and KFI in connection with the 2020 Separation Agreement and is also liable for this claim.

## COUNT V.
## VIOLATION OF INDIANA DECEPTIVE CONSUMER SALES ACT
## INCURABLE DECEPTIVE ACTS, I.C. § 24-5-0.5-8
## (AGAINST ALL DEFENDANTS)

341.     The State realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this Count.

342.     The deceptive acts asserted in this Complaint are incurable deceptive acts and were committed by Defendants as part of a scheme, artifice, or device with an intent to defraud or mislead, subjecting Defendants to civil penalties pursuant to Indiana Code § 24-5-0.5-8.

343.     Chemours, New DuPont, and Corteva agreed to assume Old DuPont's liabilities described above.

344.     Kidde plc assumed all of the historical liabilities of the National Foam Business in connection with the demerger in 2000. Kidde Limited f/k/a Kidde plc is therefore liable for this claim.

345.     In connection with the 2005 Acquisition, UTC purchased Kidde plc and used its assets to create UTC F&S, which therefore became the successor to Kidde plc and the historical liabilities of the National Foam Business. UTC F&S, along with its subsidiary, UTC F&S Americas, was directly involved in and controlled the operations of the National Foam Business. UTC F&S and UTC F&S Americas are therefore liable for this claim on this ground as well.

71

346.     UTC, through its ownership, control over and conduct associated with the National Foam Business, designed, manufactured, marketed, promoted, distributed, and/or sold PFAS-containing Products throughout the United States and is thus liable on this claim.

347.     On September 28, 2020, UTC F&S changed its name to Carrier Fire.  Carrier Fire is the legal successor to UTC F&S's fire and security business and thus also liable for this claim.

348.     On October 1, 2020, UTC F&S Americas changed its name to Carrier Fire Americas. Carrier Fire Americas is the legal successor to UTC F&S Americas's fire and security business and thus also liable for this claim.

349.     Carrier assumed all the AFFF liabilities of Kidde Limited f/k/a Kidde plc, UTC, UTC F&S, UTC F&S Americas, and KFI in connection with the 2020 Separation Agreement and is also liable for this claim.

## COUNT VI.
## PUBLIC NUISANCE
## (AGAINST ALL DEFENDANTS)

350.     The State realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

351.     Defendants created a public nuisance by manufacturing, marketing, distributing, releasing, emitting, and or discharging their PFAS or PFAS-containing Products, including AFFF Products, in a manner that resulted in the contamination of the State's natural resources with PFAS.

352.     Defendants, by their intentional, negligent, reckless and ultrahazardous acts and omissions, as set forth above, have caused dangerous and ubiquitous contamination, while concealing the threat from the State and the public.

353.     The nuisance created by Defendants unreasonably endangers and injures the property, health, and welfare of the general public and the natural resources of the State, interfering

with the State's *parens patriae* ability to protect, conserve, and manage the water, land, and wildlife of the State, which are by law precious and invaluable public resources.

354.    By their conduct, Defendants violated and continue to violate the public right to the use and enjoyment of the natural resources within the State, which are held in trust for the common benefit of the public, by releasing and/or causing the release of PFAS and allowing PFAS to contaminate, bioaccumulate, biomagnify, and persist in the environment.

355.    Defendants knew or had reason to know that PFAS are persistent, bioaccumulative, and toxic.

356.    Defendants knew or had reason to know that PFAS are released into the environment as a result of their activities and the use of their PFAS-containing Products, including AFFF Products, and that this PFAS would migrate to and contaminate natural resources.

357.    Defendants knew or had reason to know that their manufacture, sale, distribution, release, emission, and/or discharge of their PFAS and their PFAS-containing Products, including AFFF Products, would result in long-lasting contamination of the State's natural resources, including drinking water sources.

358.    The State has been damaged and continues to suffer damages as a result of Defendants' conduct. The State has incurred and continues to incur costs to identify contamination from PFAS, PFAS-containing Products, including AFFF Products, to prevent PFAS from contaminating additional natural resources, and to remediate the State's natural resources that have been contaminated with PFAS including from AFFF Products and other PFAS-containing Products.

359.    The injury to Indiana's natural resources from PFAS is especially injurious to the State in its proprietary and natural resource trustee capacities. The State is incurring and will incur costs related to PFAS contamination of its natural resources and property, including damage to real

property, damage to public health and natural resources, and injuries to public trust resources that interfere with the rights of the State and its citizens, as well as substantial expenses relating to the investigation, remediation, cleanup, restoration, removal, treatment, and monitoring of the contaminants.

360.    Defendants are liable and subject to injunctive relief prohibiting the creation and continuance of this public nuisance, and the State is entitled to all direct and consequential damages from that nuisance. Defendants also are liable for any other relief that will abate and remediate the nuisance and its short-term and long-term effects.

361.    Chemours, New DuPont, and Corteva agreed to assume Old DuPont's liabilities described above.

362.    Kidde plc assumed all of the historical liabilities of the National Foam Business in connection with the demerger in 2000. Kidde Limited f/k/a Kidde plc is therefore liable for this claim.

363.    In connection with the 2005 Acquisition, UTC purchased Kidde plc and used its assets to create UTC F&S, which therefore became the successor to Kidde plc and the historical liabilities of the National Foam Business. UTC F&S, along with its subsidiary, UTC F&S Americas, was directly involved in and controlled the operations of the National Foam Business. UTC F&S and UTC F&S Americas are therefore liable for this claim on this ground as well.

364.    UTC, through its ownership, control over and conduct associated with the National Foam Business, designed, manufactured, marketed, promoted, distributed, and/or sold PFAS-containing Products throughout the United States and is thus liable on the State's nuisance claim.

365.    On September 28, 2020, UTC F&S changed its name to Carrier Fire. Carrier Fire is the legal successor to UTC F&S's fire and security business and thus also liable for this claim.

366.    On October 1, 2020, UTC F&S Americas changed its name to Carrier Fire Americas. Carrier Fire Americas is the legal successor to UTC F&S Americas's fire and security business and thus also liable for this claim.

367.    Carrier assumed all the AFFF liabilities of Kidde Limited f/k/a Kidde plc, UTC, UTC F&S, UTC F&S Americas, and KFI in connection with the 2020 Separation Agreement and is also liable for this claim.

## COUNT VII.
## STATUTORY NUISANCE, I.C. § 32-30-6-6
## (AGAINST ALL DEFENDANTS)

368.    The State realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

369.    Defendants' manufacturing, marketing, distributing, releasing, emitting, and/or discharging of their PFAS or PFAS-containing Products, including AFFF Products, into the State is injurious to the health of the residents of Indiana, as PFAS are associated with negative health outcomes.

370.    Defendants' acts and omissions obstructed the free use of property by contaminating the State's natural resources so as to limit the public's regular activities, such as fishing and swimming.

371.    Defendants have essentially interfered with the public's comfortable enjoyment of life and property, constituting a nuisance. I.C. § 32-30-6-6.

372.    The State is incurring and will incur costs related to PFAS contamination of its natural resources and property, including damage to real property, damage to public health and natural resources, and injuries to public trust resources that interfere with the rights of the State and

its citizens, as well as substantial expenses relating to the investigation, remediation, cleanup, restoration, removal, treatment, and monitoring of the contaminants.

373.    Defendants are liable and subject to injunctive relief prohibiting the creation and continuance of this public nuisance, and the State is entitled to all direct and consequential damages from that nuisance. Defendants also are liable for any other relief that will abate and remediate the nuisance and its short-term and long-term effects.

374.    Chemours, New DuPont, and Corteva agreed to assume Old DuPont's liabilities described above.

375.    Kidde plc assumed all of the historical liabilities of the National Foam Business in connection with the demerger in 2000.  Kidde Limited f/k/a Kidde plc is therefore liable for this claim.

376.    In connection with the 2005 Acquisition, UTC purchased Kidde plc and used its assets to create UTC F&S, which therefore became the successor to Kidde plc and the historical liabilities of the National Foam Business. UTC F&S, along with its subsidiary, UTC F&S Americas, was directly involved in and controlled the operations of the National Foam Business. UTC F&S and UTC F&S Americas are therefore liable for this claim on this ground as well.

377.    UTC, through its ownership, control over and conduct associated with the National Foam Business, designed, manufactured, marketed, promoted, distributed, and/or sold PFAS-containing Products throughout the United States and is thus liable on this claim.

378.    On September 28, 2020, UTC F&S changed its name to Carrier Fire. Carrier Fire is the legal successor to UTC F&S's fire and security business and thus also liable for this claim.

379.    On October 1, 2020, UTC F&S Americas changed its name to Carrier Fire Americas. Carrier Fire Americas is the legal successor to UTC F&S Americas's fire and security business and thus also liable for this claim.

380.    Carrier assumed all the AFFF liabilities of Kidde Limited f/k/a Kidde plc, UTC, UTC F&S, UTC F&S Americas, and KFI in connection with the 2020 Separation Agreement and is also liable for this claim.

### COUNT VIII.
### NEGLIGENCE
### (AGAINST ALL DEFENDANTS)

381.    The State realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

382.    Defendants had a duty to the State to ensure that PFAS were not released as a result of the use, storage, transport, manufacture and/or sale of their PFAS and PFAS-containing Products, including AFFF Products, and to ensure that those products did not injure air, soil, sediment, biota, surface water, groundwater, drinking water, watercourses, wetlands, other natural resources, and property held in trust or otherwise owned by the State.

383.    Defendants had a duty to the State to exercise due care in the research, design, formulation, handling, manufacture, marketing, sale, testing, labeling, use, distribution, promotion, and/or instructions for use of their PFAS and PFAS-containing Products, including AFFF Products.

384.    Defendants foreseeably put the State, its natural resources, and its residents at unreasonable risk of harm by manufacturing and selling their PFAS-containing Products, including AFFF Products or otherwise causing the release, discharge, or emission of PFAS into the State's natural resources.

77

385.    Defendants breached these duties in that they negligently researched, designed, formulated, handled, manufactured, marketed, sold, tested, labeled, used, distributed, promoted, and/or instructed for use of their PFAS or PFAS-containing Products, including AFFF Products, when should have known, with reasonable diligence, that PFAS would (i) be released into the environment, (ii) be released and contaminate the State's natural resources, and (iii) threaten the health and welfare of the State's citizens.

386.    As a direct and proximate result of Defendants' negligent, willful, and/or wanton actions, as well as their failure to disclose the dangers to human health and the environment, the State has suffered monetary losses and damages in amounts to be proven at trial, including but not limited to investigation, remediation, treatment, monitoring, restoration, rehabilitation, and replacement costs and expenses for which Defendants are jointly and severally liable.

387.    The injury would not have occurred without Defendants' negligent acts and omissions.

388.    Defendants acted with willful, wanton, or conscious disregard for the rights, health, and safety of the State's residents and the wellbeing of the State's natural resources, thereby entitling the State to an award of punitive damages.

389.    Indiana's natural resources belong to the public and are held in trust by the State. As long as the State's natural resources remain contaminated with PFAS due to Defendants' conduct, the harm to the State continues.

390.    Chemours, New DuPont, and Corteva agreed to assume Old DuPont's liabilities described above.

391.    Kidde plc assumed all of the historical liabilities of the National Foam Business in connection with the demerger in 2000. Kidde Limited f/k/a Kidde plc is therefore liable for this claim.

392.    In connection with the 2005 Acquisition, UTC purchased Kidde plc and used its assets to create UTC F&S, which therefore became the successor to Kidde plc and the historical liabilities of the National Foam Business. UTC F&S, along with its subsidiary, UTC F&S Americas, was directly involved in and controlled the operations of the National Foam Business. UTC F&S and UTC F&S Americas are therefore liable for this claim on this ground as well.

393.    UTC, through its ownership, control over and conduct associated with the National Foam Business, designed, manufactured, marketed, promoted, distributed, and/or sold PFAS-containing Products throughout the United States and is thus liable on this claim.

394.    On September 28, 2020, UTC F&S changed its name to Carrier Fire. Carrier Fire is the legal successor to UTC F&S's fire and security business and thus also liable for this claim.

395.    On October 1, 2020, UTC F&S Americas changed its name to Carrier Fire Americas. Carrier Fire Americas is the legal successor to UTC F&S Americas's fire and security business and thus also liable for this claim.

396.    Carrier assumed all the AFFF liabilities of Kidde Limited f/k/a Kidde plc, UTC, UTC F&S, UTC F&S Americas, and KFI in connection with the 2020 Separation Agreement and is also liable for this claim.

## COUNT IX.
## TRESPASS
## (AGAINST ALL DEFENDANTS)

397.    The State realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

398.   Trespass is an unprivileged, intentional intrusion on land in the possession of another, which may arise from the release of chemicals causing contamination of the property.

399.   At all pertinent times, the State had a possessory interest in and owned land in Indiana contaminated by Defendants' PFAS-containing Products, including AFFF Products, which caused and continue to cause PFAS contamination of the State's air, soil, sediment, biota, surface water, groundwater, drinking water, watercourses, wetlands, other natural resources, and property held in trust or otherwise owned by the State.

400.   At all times relevant to the present cause of action, Defendants, as designers, manufacturers, marketers, and sellers of PFAS-containing Products, provided the PFAS-containing Products, including AFFF Products, that were used throughout the State that resulted in the contamination of air, soil, sediment, biota, surface water, groundwater, drinking water, watercourses, wetlands, other natural resources, and property held in trust or otherwise owned by the State.

401.   Defendants have intentionally, recklessly, or negligently caused PFAS contamination to enter the property and natural resources throughout the State by designing, marketing, developing, distributing, selling, manufacturing, releasing, supplying, using, and/or disposing of PFAS-containing Products—all while knowing to a substantial certainty that the intended use of these PFAS-containing Products, including AFFF Products, would result in widespread PFAS contamination in the State.

402.   Defendants affirmatively, unreasonably, voluntarily, and intentionally provided PFAS-containing Products to users and consumers in the State. It was reasonably foreseeable to Defendants that the introduction of PFAS-containing Products to Indiana could disturb the State's possessory interest over its natural resources, as large quantities of PFAS would and/or could be

introduced into the State's air, soil, sediment, biota, surface water, groundwater, drinking water, watercourses, wetlands, other natural resources, and property held in trust or otherwise owned by the State.

403.    Defendants' acts or omissions caused PFAS to be released into the State's natural resources, thereby contaminating and injuring these resources. These acts or omissions wrongfully caused waste or injury to the State's lands. Moreover, at the time the Defendants' acts or omissions caused the contamination, waste, and injury to Indiana's lands, the Defendants lacked any authorization to cause, or permit to be caused, PFAS contamination, waste, and injury to the State's public property.

404.    The State has never consented to the trespass described herein.

405.    Defendants have thus trespassed and are liable for all damages from that trespass, and the State is entitled to recover all such damages and other relief.

406.    Chemours, New DuPont, and Corteva agreed to assume Old DuPont's liabilities described above.

407.    Kidde plc assumed all of the historical liabilities of the National Foam Business in connection with the demerger in 2000. Kidde Limited f/k/a Kidde plc is therefore liable for this claim.

408.    In connection with the 2005 Acquisition, UTC purchased Kidde plc and used its assets to create UTC F&S, which therefore became the successor to Kidde plc and the historical liabilities of the National Foam Business. UTC F&S, along with its subsidiary, UTC F&S Americas, was directly involved in and controlled the operations of the National Foam Business. UTC F&S and UTC F&S Americas are therefore liable for this claim on this ground as well.

409.     UTC, through its ownership, control over and conduct associated with the National

Foam Business, designed, manufactured, marketed, promoted, distributed, and/or sold PFAS-

containing Products throughout the United States and is thus liable on this claim.

410.     On September 28, 2020, UTC F&S changed its name to Carrier Fire. Carrier Fire

is the legal successor to UTC F&S's fire and security business and thus also liable for this claim.

411.     On October 1, 2020, UTC F&S Americas changed its name to Carrier Fire Americas.

Carrier Fire Americas is the legal successor to UTC F&S Americas's fire and security business and

thus also liable for this claim.

412.     Carrier assumed all the AFFF liabilities of Kidde Limited f/k/a Kidde plc, UTC, UTC

F&S, UTC F&S Americas, and KFI in connection with the 2020 Separation Agreement and is also

liable for this claim.

## COUNT X
## UNJUST ENRICHMENT
## (AGAINST ALL DEFENDANTS)

413.     For decades, Defendants' acts and omissions with regard to PFAS and PFAS-

containing Products, including AFFF Products, caused significant contamination of Indiana's natural

resources and posed risks to Indiana residents, while enabling Defendants to enjoy massive profits

from those products.

414.     Defendants enjoyed significant benefits as a result of their wrongful conduct,

including, but not limited to: (i) saving and avoiding the costs necessary to eliminate or mitigate the

sale, release, discharge, or disposal of PFAS and PFAS-containing Products in Indiana; and (ii)

earning substantial profits from such products.

415.     Defendants have been, and continue to be, fully aware of the benefits conferred on

them by Plaintiff.

82

416.    It would be unjust and inequitable to allow Defendants to retain these benefits without providing any compensation.

417.    Thus, Plaintiff is entitled to all legal and equitable relief necessary to remedy the unjust enrichment of Defendants, including restitution and disgorgement.

418.    Chemours, New DuPont, and Corteva agreed to assume Old DuPont's liabilities described above.

419.    Kidde plc assumed all of the historical liabilities of the National Foam Business in connection with the demerger in 2000.  Kidde plc n/k/a Kidde Limited is therefore liable for this claim.

420.    In connection with the 2005 Acquisition, UTC purchased Kidde plc and used its assets to create UTC F&S, which therefore became the successor to Kidde plc and the historical liabilities of the National Foam Business. UTC F&S, along with its subsidiary, UTC F&S Americas, was directly involved in and controlled the operations of the National Foam Business. UTC F&S and UTC F&S Americas are therefore liable for this claim on this ground as well.

421.    UTC, through its ownership, control over and conduct associated with the National Foam Business, designed, manufactured, marketed, promoted, distributed, and/or sold PFAS-containing Products throughout the United States and is thus liable on the State's claim.

422.    On September 28, 2020, UTC F&S changed its name to Carrier Fire. Carrier Fire is the legal successor to UTC F&S's fire and security business and thus also liable for this claim.

423.    On October 1, 2020, UTC F&S Americas changed its name to Carrier Fire Americas. Carrier Fire Americas is the legal successor to UTC F&S Americas's fire and security business and thus also liable for this claim.

424. Carrier assumed all the AFFF liabilities of Kidde Limited f/k/a Kidde plc, UTC, UTC F&S, UTC F&S Americas, and KFI in connection with the 2020 Separation Agreement and is also liable for this claim.

## VII.  PRAYER FOR RELIEF

WHEREFORE, the State of Indiana respectfully requests that this Court enter judgment against Defendants and in favor of the State of Indiana as to the counts described above as follows:

A.      Finding Defendants liable for all PFAS-related costs to investigate, test, clean up and remove, restore, treat, and monitor, and for such orders as may be necessary to provide full relief to address the threat of contamination to the State, including the costs of:

i.      Past and future testing of natural resources at and around the sites throughout Indiana where Defendants' PFAS or PFAS-containing Products, including AFFF Products, were transported, stored, used, handled, released, spilled, and/or disposed of and, thus, likely caused PFAS contamination;

ii.     Past and future treatment of all natural resources at and around the sites throughout Indiana where Defendants' PFAS or PFAS-containing Products, including AFFF Products, were transported, stored, used, handled, released, spilled, and/or disposed of and which contain detectable levels of PFAS until restored to non-detectable levels;

iii.    Past and future monitoring of the State's natural resources at and around the sites throughout Indiana where Defendants' PFAS or PFAS-containing Products, including AFFF Products, were transported, stored, used, handled, released, spilled, and/or disposed of as long as there is a detectable presence of PFAS, and restoration of such natural resources to their pre-discharge condition;

iv.     Providing water from an alternate source;

v.      Installing and maintaining wellhead treatment;

vi.     Installing and maintaining wellhead protection programs;

vii.    Installing and maintaining early warning systems to detect PFAS before it reaches wells;

    viii.    Outreach, education, community engagement, and additional public health studies, testing, assessments, and measures;

    ix.    Implementing biomonitoring programs for water, soil, air, and all other impacted environmental media in communities and other areas where surface water and/or groundwater sources have become contaminated by PFAS;

    x.    Collecting and safely disposing of existing AFFF from sites around the State, including costs incurred in programs such as the Class B Foam Collection Initiative;

    xi.    Designing, implementing, and operating biomonitoring programs and studies (including any blood serum collection or testing) and costs to otherwise assess PFAS public health impacts for all residents of the State; and

    xii.    Otherwise responding to PFAS contamination resulting from Defendants' PFAS-containing Products, including AFFF Products, so the contaminated natural resources are restored to their pre-discharge condition, or are replaced by reasonably equivalent resources;

B.    Ordering Defendants to pay all damages to compensate the residents of the State for the lost use and value, including loss of tax revenue and other economic benefits, from the State's natural resources during all times of injury caused by PFAS;

C.    Ordering Defendants to pay for all costs related to the collection, return, and/or disposal of existing stocks of Defendants' PFAS or PFAS-containing Products, including AFFF Products;

D.    Ordering past and future investigation, assessment, testing, treatment, and remediation of all PFAS-related contamination at sites where Defendants' PFAS or PFAS-containing Products, including AFFF Products, were used or disposed of and which contain detectable levels of PFAS, so that those sites are restored to nondetectable levels, including the State's oversight costs;

E.    Ordering future monitoring of the sites and the State's natural resources where Defendants' PFAS or PFAS-containing Products, including AFFF Products, were used or disposed of as long as there is a detectable presence of PFAS, and order restoration of such

natural resources to their pre-contamination condition, including the State's employees' time and associated costs;

F.      Ordering Defendants to pay for all other damages sustained by the State in its sovereign, *parens patriae*, public trustee, land owner, and other capacities as a direct and proximate result of Defendants' acts and omissions alleged herein;

G.      Ordering Defendants to reimburse the State for its costs of responding to PFAS contamination, without regard to fault, including but not limited to all costs to investigate, clean up, restore, treat, monitor, and otherwise respond to contamination of the State's natural resources, including the State's oversight costs, resulting from Defendants' PFAS or PFAS-containing Products, including AFFF Products, so that such natural resources are remediated and restored to their original condition;

H.      Ordering Defendants to abate the nuisance by investigating, cleaning up, restoring, treating, monitoring, and otherwise responding to contamination of the State's natural resources, including the State's oversight costs, resulting from Defendants' PFAS or PFAS-containing Products, including AFFF Products, so that such natural resources are remediated and restored to their original condition;

I.      Ordering Defendants to reimburse the State for its costs of abatement of the public nuisance, without regard to fault, including but not limited to all costs to investigate, clean up, restore, treat, monitor, and otherwise respond to contamination of the State's natural resources at and around the sites throughout the State where Defendants' PFAS or PFAS-containing Products, including AFFF Products, were transported, stored, used, handled, released, spilled, and/or disposed of so that such natural resources are restored to their original condition;

86

J.      Ordering Defendants to pay special damages to the State for public nuisance, funding its performance of any further assessment and compensatory restoration of any natural resource that has been, or may be, injured as a result of the transport, storage, use, handling, release, spilling, and/or disposal of Defendants' PFAS or PFAS-containing Products, including AFFF Products, and order Defendants to compensate the citizens of the State for the costs of restoration and replacement, including lost use and value, of any injured natural resource;

K.      Finding and declaring that the State has conferred a benefit onto Defendants in the form of costs incurred responding to PFAS contamination resulting from Defendants' PFAS or PFAS-containing Products, including AFFF Products, and that Defendants have been unjustly enriched by Defendants' practice of externalizing the costs associated with PFAS contamination onto the State;

L.      Ordering Defendant to pay consumer restitution of money or property acquired by Defendant as a result of the conduct complained of herein pursuant to Indiana Code §24-5-0.5-4(c)(2), payable to the Office of the Attorney General in an amount to be determined at trial;

M.      Ordering Defendant to pay disgorgement of all profits and benefits obtained from its unlawful practices complained of herein, payable to the Office of the Attorney General in an amount to be determined at trial;

N.      Ordering the payment of civil penalties for each and every violation of the DCSA complained of herein as permitted by statute pursuant to Indiana Code § 24-5-0.5-4(g) and Indiana Code § 24-5-0.5-8, payable to the Office of the Attorney General in an amount to be determined at trial;

O.      Awarding the State of Indiana the costs of investigation and prosecution of this action pursuant to Indiana Code § 24-5-0.5-4(c)(4);

P.      Ordering Defendants to pay restitution to the State;

Q.      Ordering Defendants to disgorge all ill-gotten gains;

R.      Awarding the State punitive damages in an amount to be determined by the trier of fact;

S.      Awarding the State costs and fees in this action, including reasonable attorneys' fees incurred in prosecuting this action, and the State's investigation costs together with prejudgment interest, to the full extent permitted by law;

T.      Enjoining Defendants from continuing or engaging in the conduct complained of herein;

U.      Enjoining Defendants from further actions that will cause further significant pollution, impairment, or destruction of the State's natural resources resulting from their PFAS and PFAS-containing Products, including AFFF, pursuant to Indiana Code § 13-30-1-1;

V.      Enjoining Defendants from any other actions that will damage the State through the use of PFAS in any way; and

W.      Awarding the State such other relief as this Court deems just and proper.

**REQUEST FOR JURY TRIAL**

The State hereby requests a jury trial pursuant to Article 1, Section 20 of the Indiana Constitution.

<div style="margin-left:auto;">

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South

</div>

88

302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

89

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. _____   73D01-2404-PL-000009

|  |  |
|---|---|
| STATE OF INDIANA<br><br>    Plaintiff,<br><br> v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>    Defendants. | **APPEARANCE** |

Attorney Betsy M. DeNardi now appears in this civil action for the State of Indiana. Party and attorney information for service as required by Trial Rule 5(B)(2) and for case information as required by Trial Rules 3.1 and 77(B) follows.

|  |  |
|---|---|
| Party: | **State of Indiana** |
| Party Classification: | **Plaintiff** |
| Attorney Name: | **Betsy M. DeNardi** |
| Attorney Number: | **23856-71** |

| | |
|---|---|
| Office: | **Office of the Indiana Attorney General** |
| Address: | **Indiana Government Center South** |
| | **Fifth Floor** |
| | **302 West Washington Street** |
| | **Indianapolis, IN 46204** |
| Telephone: | **(317) 232-6231** |
| Fax: | **(317) 232-7979** |
| Computer Address: | **Betsy.DeNardi@atg.in.gov** |
| Other party members: | **No** |
| Case Type: | **PL** |
| Support issues: | **No** |
| Related cases: | **No** |
| Certificate of Service: | **No** |
| Additional information: | **None** |

Each attorney specified on this appearance:

1.    certifies that the contact information listed for her on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this Appearance;

2.    acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the email address(es) specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorney; and

3.    understands that she is solely responsible for keeping her Roll of Attorneys contact information current and accurate, see Ind. Admis. Disc. R. 2(A).

Respectfully submitted,

*Counsel for Plaintiff*

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

By: /s/ Betsy M. DeNardi
Deputy Attorney General
Atty. No. 23856-71
Indiana Government Center South – 5th Fl.

Page 2 of 3

302 W. Washington Street
Indianapolis, IN  46204-2770
Phone: (317) 232-6231
Fax: (317) 232-7979
Email:  Betsy.DeNardi@atg.in.gov

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. 73D01-2404-PL-000009

|  |  |
|---|---|
| STATE OF INDIANA<br><br>               Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>               Defendants. | **SUMMONS** |

**TO DEFENDANT:**       3M Company
                             c/o Registered Agent
                             Corporation Service Company
                             135 North Pennsylvania Street, Suite 1610
                             Indianapolis, IN, 46204

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____   4/10/2024

_____ ML _____ (Seal)
Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

2

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. ___73D01-2404-PL-000009___

| | |
|---|---|
| STATE OF INDIANA<br><br>                    Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS<br>AMERICAS, INC.; ARCHROMA U.S.,<br>INC.; ARKEMA INC.; BASF<br>CORPORATION; BUCKEYE FIRE<br>EQUIPMENT COMPANY; CARRIER FIRE<br>& SECURITY CORPORATION; CARRIER<br>FIRE & SECURITY AMERICAS<br>CORPORATION; CARRIER GLOBAL<br>CORPORATION; CHEMDESIGN<br>PRODUCTS, INC.; CHEMGUARD, INC.;<br>CLARIANT CORPORATION; CORTEVA,<br>INC.; DUPONT DE NEMOURS, INC.;<br>DYNAX CORPORATION; EIDP, INC.,<br>F/K/A E.I. DU PONT DE NEMOURS AND<br>COMPANY; THE CHEMOURS<br>COMPANY; KIDDE-FENWAL, INC.;<br>KIDDE LIMITED; NATIONAL FOAM,<br>INC.; TYCO FIRE PRODUCTS LP;<br>UNITED TECHNOLOGY CORPORATION<br>N/K/A RTX CORPORATION; and ABC<br>CORPORATIONS 1-10 (Names Fictitious),<br><br>                    Defendants. | **SUMMONS** |

**TO DEFENDANT:**        AGC Chemicals Americas, Inc.
                         c/o Registered Agent
                         CT Corporation System
                         334 North Senate Avenue
                         Indianapolis, IN, 46204

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated:  _____         4/10/2024

_____ (Seal)
Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

2

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. _____ 73D01-2404-PL-000009

| | |
|---|---|
| STATE OF INDIANA | |
| Plaintiff, | |
| v. | **SUMMONS** |
| 3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious), | |
| Defendants. | |

**TO DEFENDANT:**  Archroma U.S., Inc.
c/o Registered Agent
CT Corporation System
334 North Senate Avenue
Indianapolis, IN, 46204

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____    4/10/2024    _____ ML ___ (Seal)

SEAL

Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

2

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT
73D01-2404-PL-000009
CAUSE NO. _____

| | |
|---|---|
| STATE OF INDIANA<br><br>                    Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>                    Defendants. | **SUMMONS** |

**TO DEFENDANT:**       Arkema Inc.
c/o Registered Agent
Corporation Service Company
135 North Pennsylvania Street, Suite 1610
Indianapolis, IN, 46204

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____        _____ML (Seal)
       4/10/2024                                    Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

                    Respectfully submitted,

                    THEODORE E. ROKITA
                    Attorney General of Indiana
                    Attorney No. 18857-49

                    /s/ Scott L. Barnhart
                    Scott L. Barnhart (Attorney No. 25474-82)
                    Office of Attorney General
                    Indiana Gov't Center South
                    302 West Washington St., 5th Floor
                    Indianapolis, IN 46204
                    Telephone: (317) 232-6309
                    Fax: (317) 232-7979

                    /s/ Cory C. Voight
                    Cory C. Voight (Attorney No. 23180-49)
                    Office of Attorney General
                    Indiana Gov't Center South
                    302 West Washington St., 5th Floor
                    Indianapolis, IN 46204
                    Telephone: (317) 234-7132
                    Fax: (317) 232-7979

                    /s/ Betsy M. DeNardi
                    Betsy M. DeNardi (Attorney No. 23856-71)
                    Office of Attorney General
                    Indiana Gov't Center South
                    302 West Washington St., 5th Floor
                    Indianapolis, IN 46204
                    Telephone: (317) 232-6231
                    Fax: (317) 232-7979

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

73D01-2404-PL-000009

CAUSE NO. _____

|  |  |
|---|---|
| STATE OF INDIANA<br><br>          Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>          Defendants. | **SUMMONS** |

**TO DEFENDANT:**        BASF Corporation
c/o Registered Agent
CT Corporation System
334 North Senate Avenue
Indianapolis, IN, 46204

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

4/10/2024

Dated: _____        _____ ML   (Seal)
                                        Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

Filed: 4/10/2024 9:12 AM
Clerk
Shelby County, Indiana

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. _____   73D01-2404-PL-000009

| | |
|---|---|
| STATE OF INDIANA<br><br>Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>Defendants. | **SUMMONS** |

**TO DEFENDANT:**     Buckeye Fire Equipment Company
c/o Registered Agent
A Haon Corporate Agent, Inc.
29225 Chagrin Blvd. Suite 350
Pepper Pike, Oh 44122 4633

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated:  4/10/2024 _____        _____ ML _____ (Seal)

Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

2

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. 73D01-2404-PL-000009 _____

|  |  |
|---|---|
| STATE OF INDIANA<br><br>               Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>               Defendants. | **SUMMONS** |

**TO DEFENDANT:**      Carrier Fire & Security Americas Corporation
c/o Registered Agent
United Agent Group Inc.
8520 Allison Pointe Blvd #220
Indianapolis, IN, 46250

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____ 4/10/2024          _____ ML   SEAL (Seal)
                                                  Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

2

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. 73D01-2404-PL-000009

| | |
|---|---|
| STATE OF INDIANA<br><br>     Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>     Defendants. | **SUMMONS** |

**TO DEFENDANT:**  Carrier Fire & Security Corporation
        c/o Registered Agent
        United Agent Group Inc.
        801 Us Highway 1
        North Palm Beach, Fl 33408

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____        4/10/2024
                                   _____ ML _____ (Seal)
                                   Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

2

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. _____   73D01-2404-PL-000009

| | |
|---|---|
| STATE OF INDIANA<br><br>Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>Defendants. | **SUMMONS** |

**TO DEFENDANT:**    Carrier Global Corporation
c/o Registered Agent
United Agent Group Inc.
801 Us Highway 1
North Palm Beach, FL 33408

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: __4/10/2024__   _____   _____ (Seal)
_____   Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO.  73D01-2404-PL-000009

|  |  |
|---|---|
| STATE OF INDIANA<br><br>                            Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS<br>AMERICAS, INC.; ARCHROMA U.S.,<br>INC.; ARKEMA INC.; BASF<br>CORPORATION; BUCKEYE FIRE<br>EQUIPMENT COMPANY; CARRIER FIRE<br>& SECURITY CORPORATION; CARRIER<br>FIRE & SECURITY AMERICAS<br>CORPORATION; CARRIER GLOBAL<br>CORPORATION; CHEMDESIGN<br>PRODUCTS, INC.; CHEMGUARD, INC.;<br>CLARIANT CORPORATION; CORTEVA,<br>INC.; DUPONT DE NEMOURS, INC.;<br>DYNAX CORPORATION; EIDP, INC.,<br>F/K/A E.I. DU PONT DE NEMOURS AND<br>COMPANY; THE CHEMOURS<br>COMPANY; KIDDE-FENWAL, INC.;<br>KIDDE LIMITED; NATIONAL FOAM,<br>INC.; TYCO FIRE PRODUCTS LP;<br>UNITED TECHNOLOGY CORPORATION<br>N/K/A RTX CORPORATION; and ABC<br>CORPORATIONS 1-10 (Names Fictitious),<br><br>                            Defendants. | **SUMMONS** |

**TO DEFENDANT:**       ChemDesign Products, Inc.
c/o Registered Agent
Corporation Service Company
33 East Main Street Suite 610
Madison, WI 53703

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____    4/10/2024    _____ ML   (Seal)

Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT
73D01-2404-PL-000009
CAUSE NO. _____

| | |
|---|---|
| STATE OF INDIANA<br><br>                    Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>                    Defendants. | **SUMMONS** |

**TO DEFENDANT:**      Chemguard Inc.
c/o Registered Agent
CT Corporation System
1999 Bryan St., Ste. 900
Dallas, TX 75201

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____     4/10/2024

_____ (Seal)
ML
Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

2

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. 73D01-2404-PL-000009

| | |
|---|---|
| STATE OF INDIANA<br><br>          Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>          Defendants. | **SUMMONS** |

**TO DEFENDANT:**    The Chemours Company
c/o Registered Agent
CT Corporation System
334 North Senate Avenue
Indianapolis, IN, 46204

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____4/10/2024_____          _____(Seal)
                                        Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

                        Respectfully submitted,

                        THEODORE E. ROKITA
                        Attorney General of Indiana
                        Attorney No. 18857-49

                        /s/ Scott L. Barnhart
                        Scott L. Barnhart (Attorney No. 25474-82)
                        Office of Attorney General
                        Indiana Gov't Center South
                        302 West Washington St., 5th Floor
                        Indianapolis, IN 46204
                        Telephone: (317) 232-6309
                        Fax: (317) 232-7979

                        /s/ Cory C. Voight
                        Cory C. Voight (Attorney No. 23180-49)
                        Office of Attorney General
                        Indiana Gov't Center South
                        302 West Washington St., 5th Floor
                        Indianapolis, IN 46204
                        Telephone: (317) 234-7132
                        Fax: (317) 232-7979

                        /s/ Betsy M. DeNardi
                        Betsy M. DeNardi (Attorney No. 23856-71)
                        Office of Attorney General
                        Indiana Gov't Center South
                        302 West Washington St., 5th Floor
                        Indianapolis, IN 46204
                        Telephone: (317) 232-6231
                        Fax: (317) 232-7979

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. 73D01-2404-PL-000009 _____

|  |  |
|---|---|
| STATE OF INDIANA | |
| Plaintiff, | |
| v. | **SUMMONS** |
| 3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious), | |
| Defendants. | |

**TO DEFENDANT:**   Clariant Corporation
c/o Registered Agent
Corporation Service Company
135 North Pennsylvania Street, Suite 1610
Indianapolis, IN, 46204

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____    4/10/2024

_____ ME (Seal)
Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT
73D01-2404-PL-000009
CAUSE NO. _____

|  |  |
|---|---|
| STATE OF INDIANA<br><br>                      Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>                    Defendants. | **SUMMONS** |

**TO DEFENDANT:**      Corteva, Inc.
                              c/o Registered Agent
                              CT Corporation System
                              334 North Senate Avenue
                              Indianapolis, IN, 46204

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____   4/10/2024   _____ (Seal)

Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

2

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT
CAUSE NO. _____    73D01-2404-PL-000009

| | |
|---|---|
| STATE OF INDIANA<br><br>     Plaintiff,<br><br> v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>     Defendants. | **SUMMONS** |

**TO DEFENDANT:**  Dynax Corporation
        c/o Registered Agent
        Corporate Systems LLC
        3500 S. Dupont Highway
        Dover, DE 19901

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _4/10/2024_____   _____ ML (Seal)

Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. _____ 73D01-2404-PL-000009

| | |
|---|---|
| STATE OF INDIANA<br><br>               Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>               Defendants. | **SUMMONS** |

**TO DEFENDANT:**      EIDP, Inc. f/k/a E. I. du Pont de Nemours and Company
                           c/o Registered Agent
                           CT Corporation System
                           334 North Senate Avenue
                           Indianapolis, IN, 46204

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____  4/10/2024        _____ (Seal)

Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

2

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. _____   73D01-2404-PL-000009

STATE OF INDIANA

                Plaintiff,

    v.

3M COMPANY; AGC CHEMICALS
AMERICAS, INC.; ARCHROMA U.S.,
INC.; ARKEMA INC.; BASF
CORPORATION; BUCKEYE FIRE
EQUIPMENT COMPANY; CARRIER FIRE
& SECURITY CORPORATION; CARRIER
FIRE & SECURITY AMERICAS
CORPORATION; CARRIER GLOBAL
CORPORATION; CHEMDESIGN
PRODUCTS, INC.; CHEMGUARD, INC.;
CLARIANT CORPORATION; CORTEVA,
INC.; DUPONT DE NEMOURS, INC.;
DYNAX CORPORATION; EIDP, INC.,
F/K/A E.I. DU PONT DE NEMOURS AND
COMPANY; THE CHEMOURS
COMPANY; KIDDE-FENWAL, INC.;
KIDDE LIMITED; NATIONAL FOAM,
INC.; TYCO FIRE PRODUCTS LP;
UNITED TECHNOLOGY CORPORATION
N/K/A RTX CORPORATION; and ABC
CORPORATIONS 1-10 (Names Fictitious),

                Defendants.

**SUMMONS**

**TO DEFENDANT:**    Kidde Limited f/k/a Kidde plc
                       c/o Registered Agent
                       United Agent Group Inc.
                       1521 Concord Pike Suite 201
                       Wilmington, DE 19803

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____  4/10/2024          _____ Jill Tracy _____ ML __ (Seal)
                                            Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

                                        Respectfully submitted,

                                        THEODORE E. ROKITA
                                        Attorney General of Indiana
                                        Attorney No. 18857-49

                                        /s/ Scott L. Barnhart
                                        Scott L. Barnhart (Attorney No. 25474-82)
                                        Office of Attorney General
                                        Indiana Gov't Center South
                                        302 West Washington St., 5th Floor
                                        Indianapolis, IN 46204
                                        Telephone: (317) 232-6309
                                        Fax: (317) 232-7979

                                        /s/ Cory C. Voight
                                        Cory C. Voight (Attorney No. 23180-49)
                                        Office of Attorney General
                                        Indiana Gov't Center South
                                        302 West Washington St., 5th Floor
                                        Indianapolis, IN 46204
                                        Telephone: (317) 234-7132
                                        Fax: (317) 232-7979

                                        /s/ Betsy M. DeNardi
                                        Betsy M. DeNardi (Attorney No. 23856-71)
                                        Office of Attorney General
                                        Indiana Gov't Center South
                                        302 West Washington St., 5th Floor
                                        Indianapolis, IN 46204
                                        Telephone: (317) 232-6231
                                        Fax: (317) 232-7979

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. _____   73D01-2404-PL-000009

|  |  |
|---|---|
| STATE OF INDIANA<br><br>          Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>          Defendants. | **SUMMONS** |

**TO DEFENDANT:**      Kidde-Fenwal, Inc.
c/o Registered Agent
United Agent Group Inc.
225 Cedar Hill Street #200
Marlborough, MA 01752

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or ~~occurrence~~ you must assert it in your written answer.

Dated:  **4/10/2024**                   _____

Clerk of the Court of Shelby County

(Seal)

ML

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

2

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. 73D01-2404-PL-000009 _____

|  |  |
|---|---|
| STATE OF INDIANA<br><br>                 Plaintiff,<br><br>    v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>                 Defendants. | **SUMMONS** |

**TO DEFENDANT:**      National Foam, Inc.
c/o Registered Agent
The Corporation Trust Company
Corporation Trust Center 1209 Orange St
Wilmington, DE 19801

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____4/10/2024_____          _____ (Seal)

Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

2

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

73D01-2404-PL-000009
CAUSE NO. _____

| | |
|---|---|
| STATE OF INDIANA<br><br>               Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>               Defendants. | **SUMMONS** |

**TO DEFENDANT:**      DuPont de Nemours, Inc. f/k/a DowDuPont Inc.
c/o Registered Agent
The Corporation Trust Company
Corporation Trust Center 1209 Orange St
Wilmington, DE 19801

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____4/10/2024_____         _____ (Seal)
                                      Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

                                      Respectfully submitted,

                                      THEODORE E. ROKITA
                                      Attorney General of Indiana
                                      Attorney No. 18857-49

                                      /s/ Scott L. Barnhart
                                      Scott L. Barnhart (Attorney No. 25474-82)
                                      Office of Attorney General
                                      Indiana Gov't Center South
                                      302 West Washington St., 5th Floor
                                      Indianapolis, IN 46204
                                      Telephone: (317) 232-6309
                                      Fax: (317) 232-7979

                                      /s/ Cory C. Voight
                                      Cory C. Voight (Attorney No. 23180-49)
                                      Office of Attorney General
                                      Indiana Gov't Center South
                                      302 West Washington St., 5th Floor
                                      Indianapolis, IN 46204
                                      Telephone: (317) 234-7132
                                      Fax: (317) 232-7979

                                      /s/ Betsy M. DeNardi
                                      Betsy M. DeNardi (Attorney No. 23856-71)
                                      Office of Attorney General
                                      Indiana Gov't Center South
                                      302 West Washington St., 5th Floor
                                      Indianapolis, IN 46204
                                      Telephone: (317) 232-6231
                                      Fax: (317) 232-7979

2

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

73D01-2404-PL-000009
CAUSE NO. _____

|  |  |
|---|---|
| STATE OF INDIANA | |
| Plaintiff, | |
| v. | **SUMMONS** |
| 3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious), | |
| Defendants. | |

**TO DEFENDANT:**     Tyco Fire Products LP
c/o Registered Agent
The Corporation Trust Company
Corporation Trust Center 1209 Orange St
Wilmington, DE 19801

Tyco Fire Products LP
c/o Registered Agent
CT Corporation System
208 So Lasalle St, Suite 814
Chicago, IL 60604

1

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____4/10/2024_____    _____ (Seal)
Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South

302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. ___73D01-2404-PL-000009___

| | |
|---|---|
| STATE OF INDIANA<br><br>               Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>               Defendants. | **SUMMONS** |

**TO DEFENDANT:**      United Technologies Corporation n/k/a RTX Corporation
                          CT Corporation
                          4701 Cox Rd Ste 285
                          Glen Allen, VA 23060

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

1

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____    _____ (Seal)
       4/10/2024                    Clerk of the Court of Shelby County

Plaintiff designates the following manner of service:
**Personal Service at the above address**

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Scott L. Barnhart
Scott L. Barnhart (Attorney No. 25474-82)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6309
Fax: (317) 232-7979

/s/ Cory C. Voight
Cory C. Voight (Attorney No. 23180-49)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-7132
Fax: (317) 232-7979

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

2

Filed: 5/10/2024 10:03 AM
Judge, Superior Court 1
Shelby County, Indiana
RS

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. 73D01-2404-PL-000009

| | |
|---|---|
| STATE OF INDIANA<br><br>Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>Defendants. | **APPEARANCE** |

Attorney Cory Voight now appears in this civil action for the State of Indiana. Party and attorney information for service as required by Trial Rule 5(B)(2) and for case information as required by Trial Rules 3.1 and 77(B) follows.

|  |  |
|---|---|
| Party: | **State of Indiana** |
| Party Classification: | **Plaintiff** |
| Attorney Name: | **Cory C. Voight** |
| Attorney Number: | **23180-49** |

Page 1 of 3

|                        |                                      |
|------------------------|--------------------------------------|
| Office:                | **Office of the Indiana Attorney General** |
| Address:               | **Indiana Government Center South**  |
|                        | **Fifth Floor**                      |
|                        | **302 West Washington Street**       |
|                        | **Indianapolis, IN 46204**           |
| Telephone:             | **(317) 234-7132**                   |
| Fax:                   | **(317) 232-7979**                   |
| Computer Address:      | **Cory.Voight@atg.in.gov**           |
| Other party members:   | **No**                               |
| Case Type:             | **PL**                               |
| Support issues:        | **No**                               |
| Related cases:         | **No**                               |
| Certificate of Service:| **No**                               |
| Additional information:| **None**                             |

Each attorney specified on this appearance:

1.  certifies that the contact information listed for him on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this Appearance;

2.  acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the email address(es) specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorney; and

3.  understands that he is solely responsible for keeping his Roll of Attorneys contact information current and accurate, see Ind. Admis. Disc. R. 2(A).

Respectfully submitted,

*Counsel for Plaintiff*

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

By: /s/ Cory C. Voight
Deputy Attorney General
Atty. No. 23180-49
Indiana Government Center South – 5th Fl.

302 W. Washington Street
Indianapolis, IN  46204-2770
Phone: (317) 234-7132
Fax: (317) 232-7979
Email:  Cory.Voight@atg.in.gov

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

CAUSE NO. 73D01-2404-PL-000009

|  |  |
|---|---|
| STATE OF INDIANA<br><br>                            Plaintiff,<br><br>          v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>                            Defendants. | **APPEARANCE** |

Attorney Scott L. Barnhart now appears in this civil action for the State of Indiana. Party and attorney information for service as required by Trial Rule 5(B)(2) and for case information as required by Trial Rules 3.1 and 77(B) follows.

|  |  |
|---|---|
| Party: | **State of Indiana** |
| Party Classification: | **Plaintiff** |
| Attorney Name: | **Scott L. Barnhart** |
| Attorney Number: | **25474-82** |

Page 1 of 3

| | |
|---|---|
| Office: | **Office of the Indiana Attorney General** |
| Address: | **Indiana Government Center South** |
| | **Fifth Floor** |
| | **302 West Washington Street** |
| | **Indianapolis, IN 46204** |
| Telephone: | **(317) 232-6309** |
| Fax: | **(317) 232-7979** |
| Computer Address: | **Scott.Barnhart@atg.in.gov** |
| Other party members: | **No** |
| Case Type: | **PL** |
| Support issues: | **No** |
| Related cases: | **No** |
| Certificate of Service: | **No** |
| Additional information: | **None** |

Each attorney specified on this appearance:

1.    certifies that the contact information listed for him on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this Appearance;

2.    acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the email address(es) specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorney; and

3.    understands that he is solely responsible for keeping his Roll of Attorneys contact information current and accurate, see Ind. Admis. Disc. R. 2(A).

Respectfully submitted,

*Counsel for Plaintiff*

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

By: /s/ Scott L. Barnhart
Deputy Attorney General
Atty. No. 25474-82
Indiana Government Center South – 5th Fl.

Page 2 of 3

302 W. Washington Street
Indianapolis, IN  46204-2770
Phone: (317) 232-6309
Fax: (317) 232-7979
Email:  Scott.Barnhart@atg.in.gov

Filed: 4/25/2024 10:02 AM
Judge, Superior Court 1
Shelby County, Indiana
RS

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT
CAUSE NO. 73D01-2404-PL-000009

|  |  |
|---|---|
| STATE OF INDIANA<br><br>                    Plaintiff,<br><br>v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious),<br><br>                    Defendants. | **RETURN OF SERVICE** |

Plaintiff, State of Indiana, by counsel, hereby certifies that the Complaint for Damages and Injunctive Relief, Summons, and Appearance(s) in this cause were served upon the following Defendants on April 11, 2024: 3M Company, AGC Chemicals Americas, Inc., Archroma U.S., Inc., Arkema Inc., BASF Corporation, Carrier Fire & Security Americas Corporation, ChemDesign Products, Inc., Chemguard, Inc., The Chemours Company, Clariant Corporation, Corteva, Inc., Dupont De Nemours, Inc., Dynax Corporation, EIDP, Inc. F/K/A E.I. Du Pont De Nemours and

1

Company, Kidde-Fenwal, Inc., Kidde Limited,  National Foam, Inc., and Tyco Fire Products LP. Defendants were served by personal service. True and correct copies of the returns of service are attached hereto as Exhibit A.

On April 12, 2024, the Complaint for Damages and Injunctive Relief, Summons, and Appearance(s) in this cause were served upon the remaining Defendants: Buckeye Fire Equipment Company, Carrier Fire & Security Corporation, Carrier Global Corporation, and United Technology Corporation N/K/A RTX Corporation, by personal service. True and correct copies of the returns of service are attached hereto as Exhibit B.

Respectfully submitted,

**THEODORE E. ROKITA,**
**ATTORNEY GENERAL FOR THE**
**STATE OF INDIANA**
**Attorney No. 18857-49**

/s/ Betsy M. DeNardi
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St.
5th Floor
Indianapolis, IN 46204
Telephone: (317) 232-6231
Fax: (317) 232-7979

2

## **CERTIFICATE OF SERVICE**

I certify that, on April 25, 2024, I electronically filed the foregoing using the Indiana Electronic Filing System ("IEFS"). I hereby certify that a copy of the foregoing was served upon the following person(s) via IEFS, if Registered Users, or, by depositing the foregoing document in the U.S. Mail, first class, postage prepaid, if exempt or non-registered user.

3M Company
Corporation Service Company
135 North Pennsylvania Street, Suite 1610
Indianapolis, IN, 46204

Arkema Inc.
Corporation Service Company
135 North Pennsylvania Street, Suite 1610
Indianapolis, IN, 46204

Clariant Corporation
Corporation Service Company
135 North Pennsylvania Street, Suite 1610
Indianapolis, IN, 46204

AGC Chemicals Americas, Inc.
CT Corporation System
334 North Senate Avenue
Indianapolis, IN, 46204

Archroma U.S., Inc.
CT Corporation System
334 North Senate Avenue
Indianapolis, IN, 46204

BASF Corporation
CT Corporation System
334 North Senate Avenue
Indianapolis, IN, 46204

The Chemours Company
CT Corporation System
334 North Senate Avenue
Indianapolis, IN, 46204

Corteva Inc.
CT Corporation System
334 North Senate Avenue
Indianapolis, IN, 46204

EIDP, Inc.
CT Corporation System
334 North Senate Avenue
Indianapolis, IN, 46204

Buckeye Fire Equipment Company
Kevin J. Bower
110 Kings Road
Kings Mountain, NC 28086

Carrier Fire & Security Corporation
United Agent Group Inc.
801 US Highway 1
North Palm Beach, FL 33408

Carrier Fire & Security Americas
Corporation
United Agent Group Inc.
8520 Allison Pointe Blvd #220
Indianapolis, IN, 46250, USA

Carrier Global Corporation
United Agent Group Inc.
801 US Highway 1
North Palm Beach, FL 33408

ChemDesign Products, Inc.
Corporation Service Company
33 East Main Street Suite 610
Madison, WI 53703

3

Chemguard Inc.
Ct Corporation System
1999 Bryan St., Ste. 900
Dallas, TX 75201

DuPont de Nemours, Inc.
The Corporation Trust Company
Corporation Trust Center 1209 Orange St.
Wilmington, DE 19801

National Foam Inc.
The Corporation Trust Company
Corporation Trust Center 1209 Orange St.
Wilmington, DE 19801

Tyco Fire Products LP
The Corporation Trust Company
Corporation Trust Center 1209 Orange St
Wilmington, DE 19801

Tyco Fire Products LP
Ct Corporation System
208 So Lasalle St, Suite 814
Chicago, IL 60604

Dynax Corporation
Corporate Systems LLC
3500 S. Dupont Highway
Dover, DE 19901

Kidde-Fenwal Inc.
United Agent Group Inc.
225 Cedar Hill Street #200
Marlborough, MA 01752

Kidde Limited
United Agent Group Inc.
1521 Concord Pike Suite 201
Wilmington, DE 19803

UTC n/k/a RTX
CT Corporation
4701 Cox Rd., Ste 285
Glen Allen, VA 23060

By:     *s/ Betsy DeNardi*
        Betsy DeNardi
        Director of Complex Litigation
        Attorney No. 23856-71

OFFICE OF THE INDIANA ATTORNEY GENERAL
302 West Washington Street, 5th Floor
Indiana Government Center South
Indianapolis, IN  46204
Telephone: (317) 232-6231
Fax: (317) 232-7979
Email: Betsy.DeNardi@atg.in.gov

4

Filed: 8/25/2024 10:02 AM
Judge, Superior Court 1
Shelby County, Indiana
RS

# Exhibit A

## AFFIDAVIT OF SERVICE

| Case:<br>73D01-2404-PL-000009 | Court:<br>STATE OF INDIANA IN THE SHELBY COUNTY SUPERIOR COURT | County:<br>Shelby, IN | Job:<br>10845163 |
|---|---|---|---|
| **Plaintiff / Petitioner:**<br>STATE OF INDIANA | | **Defendant / Respondent:**<br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious) | |
| **Received by:**<br>Hoosier Process Service, LLC | | **For:**<br>Classic Legal Support, Inc. | |
| **To be served upon:**<br>3M Company c/o Registered Agent Corporation Service Company | | | |

I, Jon Robb, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   Hannah Rarick, 135 North Pennsylvania Street Suite 1610, Indianapolis, IN 46204

**Manner of Service:**   Corporation, Apr 11, 2024, 11:29 am EDT

**Documents:**   Summons, COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF REQUEST FOR JURY TRIAL, APPEARANCE, APPEARANCE, APPEARANCE

**Additional Comments:**
1) Successful Attempt: Apr 11, 2024, 11:29 am EDT at 135 North Pennsylvania Street Suite 1610, Indianapolis, IN 46204 received by Hannah Rarick. Relationship: Authorized Agent;

_____     04/15/2024
Jon Robb                                Date

Hoosier Process Service, LLC
Indianapolis, IN 46254
317-829-0420

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
Notary Public

7/15/24                    1/15/24
Date                        Commission Expires

TARYN BURKE
Notary Public, State of Indiana
Hendricks County
Commission Number NP0753885
My Commission Expires
January 15, 2032

# Affidavit of Process Server

IN THE SUPERIOR COURT OF SHELBY COUNTY, INDIANA

| STATE OF INDIANA | VS | 3M COMPANY, ET AL. | 73D01-2404-PL-000009 |
|---|---|---|---|
| PLAINTIFF/PETITIONER | | DEFENDANT/RESPONDENT | CASE NUMBER |

I GILBERT DEL VALLE _____ being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service. RECEIVED 04/11/2024

**Service:** I served ___TYCO FIRE PRODUCTS LP___
NAME OF PERSON / ENTITY BEING SERVED

with (list documents) SUMMONS; COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF WITH REQUEST FOR
JURY TRIAL; APPEARANCES;

by leaving with THE CORPORATION TRUST COMPANY AS REGISTERED AGENT, ACCEPTED BY: ROBIN   At
HUTT-BANKS (MANAGING AGENT EMPLOYED BY THE CORPORATION TRUST COMPANY)

☒ Business ___1209 ORANGE ST., WILMINGTON, DE 19801___
ADDRESS                                              CITY / STATE

On____04/11/2024____ AT____10:30 AM____
DATE                                         TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on_____
DATE

from_____
CITY                    STATE                    ZIP

**Manner of Service:**
☒ CORPORATE

☐ **Personal:** By personally delivering copies to the person being served.

☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of_____ and explaining the general nature of the papers.

☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.

☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

☐ **Non-Service:** After due search, careful inquiry and diligent attempts at the address (es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address   ☐ Moved, Left no Forwarding   ☐ Service Cancelled by Litigant ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist ☐ Other_____

**Service Attempts:** Service was attempted on: (1)_____ _____ (2)_____ _____
DATE          TIME                    DATE          TIME

(3)_____ _____ (4)_____ _____ (5)_____ _____
DATE       TIME                  DATE       TIME                  DATE       TIME

AGE  55   Sex FEMALE Race BLACK Height 5'5   Weight 150   HAIR BLACK

GILBERT DEL VALLE

SUBSCRIBED AND SWORN to before me this 11TH day of APRIL ,2024.

KEVIN DUNN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires on July 26, 2024

_____
SIGNATURE OF NOTARY PUBLIC

NOTARY PUBLIC for the state of  DELAWARE

# Affidavit of Process Server

IN THE SUPERIOR COURT OF SHELBY COUNTY, INDIANA

| STATE OF INDIANA | VS   3M COMPANY, ET AL. | 73D01-2404-PL-000009 |
|---|---|---|
| PLAINTIFF/PETITIONER | DEFENDANT/RESPONDENT | CASE NUMBER |

I GILBERT DEL VALLE _____ being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.   RECEIVED 04/11/2024

**Service: I served** NATIONAL FOAM, INC.
<br>NAME OF PERSON / ENTITY BEING SERVED

with (list documents) SUMMONS; COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF WITH REQUEST FOR JURY TRIAL; APPEARANCES;

by leaving with THE CORPORATION TRUST COMPANY AS REGISTERED AGENT, ACCEPTED BY: ROBIN    At HUTT-BANKS (MANAGING AGENT EMPLOYED BY THE CORPORATION TRUST COMPANY)

☒ **Business** 1209 ORANGE ST., WILMINGTON, DE 19801
<br>ADDRESS                                                CITY / STATE

On _____ 04/11/2024 _____ AT _____ 10:30 AM
<br>DATE                                                          TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on _____
<br>DATE

from _____
<br>CITY                        STATE                  ZIP

**Manner of Service:**
☒ CORPORATE

☐ **Personal:** By personally delivering copies to the person being served.

☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of _____ and explaining the general nature of the papers.

☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.

☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

☐ **Non-Service:** After due search, careful inquiry and diligent attempts at the address (es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address    ☐ Moved, Left no Forwarding    ☐ Service Cancelled by Litigant ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist ☐ Other _____

**Service Attempts:** Service was attempted on: (1) _____    _____    (2) _____    _____
<br>                                                                          DATE          TIME                  DATE          TIME

(3) _____    _____    (4) _____    _____    (5) _____    _____
<br>       DATE          TIME                  DATE          TIME                  DATE          TIME

AGE    55    Sex FEMALE Race BLACK Height 5'5    Weight 150    HAIR BLACK

GILBERT DEL VALLE

SUBSCRIBED AND SWORN to before me this 11TH    day of APRIL    ,2024.

KEVIN DUNN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires on July 26, 2026

SIGNATURE OF NOTARY PUBLIC

NOTARY PUBLIC for the state of   DELAWARE

NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS

# Affidavit of Process Server

IN THE SUPERIOR COURT OF SHELBY COUNTY, INDIANA

| STATE OF INDIANA | VS | 3M COMPANY, ET AL. | 73D01-2404-PL-000009 |
|---|---|---|---|
| PLAINTIFF/PETITIONER | | DEFENDANT/RESPONDENT | CASE NUMBER |

GILBERT DEL VALLE _____ being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.   RECEIVED 04/11/2024

**Service:** I served KIDDE LIMITED f/k/a KIDDE PLC
NAME OF PERSON / ENTITY BEING SERVED
SUMMONS; COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF WITH REQUEST FOR
with (list documents) JURY TRIAL; APPEARANCES;

by leaving with UNITED AGENT GROUP, INC., AS REGISTERED AGENT, ACCEPTED BY PAMELA
LAROSSA (MANAGING AGENT EMPLOYED AT REGISTERED AGENT)                At
ADDRESS

☒ Business  AT 1521 CONCORD PIKE, SUITE 201, WILMINGTON, DE 19803
ADDRESS                          CITY / STATE

On _____04/11/2024_____ AT _____11:00 AM_____
DATE                          TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on _____
DATE

from _____
CITY            STATE            ZIP
**Manner of Service:**
☒ CORPORATE

☐ **Personal:** By personally delivering copies to the person being served.

☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of _____ and explaining the general nature of the papers.
☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

☐ **Non-Service:** After due search, careful inquiry and diligent attempts at the address (es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address   ☐ Moved, Left no Forwarding   ☐ Service Cancelled by Litigant ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist ☐ Other

**Service Attempts:** Service was attempted on: (1)_____ (2)_____
DATE        TIME            DATE        TIME

(3)_____ (4)_____ (5)_____
DATE    TIME        DATE    TIME            DATE    TIME

AGE 35   Sex FEMALE Race WHITE Height 5'5   Weight 130   HAIR BLACK

_____
SIGNATURE OF PROCESS SERVER

GILBERT DEL VALLE

SUBSCRIBED AND SWORN in the State of Delaware, New Castle County before me this 11TH day of APRIL ,2024.

KEVIN DUNN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires on July 26, 2026

_____
SIGNATURE OF NOTARY PUBLIC

NOTARY PUBLIC for the state of  DELAWARE

STATE OF INDIANA
IN THE SHELBY COUNTY SUPERIOR COURT

Cause No. 73D01 2404 PL 000009

State of Indiana

v

3M Company, Kidde Fenwal, Inc et al

Middlesex County, MA

I, Paul Nardizzi, being duly sworn, depose and say that I am not a party to this action and that corporate service of the Summons, Complaint for Damages and Injunction Relief, and Request For Jury Trial was made on Kidde Fenwal Inc. by serving its Registered Agent: United Agent Group Inc., at 225 Cedar Hill Road, Marlborough, MA 01752. Service was made on 4/11/24 at 9:10 am by handing papers to Service Rep Caroline Ostreicher.

Description of Person Served: WF black hair, 5 7, 120 lbs, 30s

Sworn to before me on   4/11/24

Paul Nardizzi- Constable
17 Clovelly Lane
Framingham, MA 01702

## AFFIDAVIT OF SERVICE

| Case: 73D01-2404-PL-000009 | Court: STATE OF INDIANA IN THE SHELBY COUNTY SUPERIOR COURT | County: Shelby, IN | Job: 10845055 |
|---|---|---|---|
| **Plaintiff / Petitioner:** STATE OF INDIANA | | **Defendant / Respondent:** 3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious) | |
| **Received by:** Hoosier Process Service, LLC | | **For:** Classic Legal Support, Inc. | |
| **To be served upon:** EIDP, Inc. f/k/a E. I. du Pont de Nemours and Company c/o Registered Agent CT Corporation System | | | |

I, Jon Robb, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Patrick Jones, 334 North Senate Avenue, Indianapolis, IN 46204

**Manner of Service:** Corporation, Apr 11, 2024, 11:18 am EDT

**Documents:** Summons, COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF REQUEST FOR JURY TRIAL, APPEARANCE, APPEARANCE, APPEARANCE

**Additional Comments:**
1) Successful Attempt: Apr 11, 2024, 11:18 am EDT at 334 North Senate Avenue, Indianapolis, IN 46204 received by Patrick Jones. Relationship: Authorized Agent;

04/15/2024

Jon Robb                    Date

Hoosier Process Service, LLC
Indianapolis, IN 46254
317-829-0420

*Subscribed and sworn to before me by the affiant who is personally known to me.*

Notary Public

4/15/24                    1/15/24

Date                    Commission Expires

TARYN BURKE
Notary Public, State of Indiana
Hendricks County
Commission Number NP0753885
My Commission Expires
January 15, 2032

# Affidavit of Process Server

IN THE SUPERIOR COURT OF SHELBY COUNTY, INDIANA

| STATE OF INDIANA | VS | 3M COMPANY, ET AL. | 73D01-2404-PL-000009 |
|---|---|---|---|
| PLAINTIFF/PETITIONER | | DEFENDANT/RESPONDENT | CASE NUMBER |

I FRANK PRITCHETT _____ being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service. RECEIVED 04/11/2024

**Service:** I served DYNAX CORP.

NAME OF PERSON / ENTITY BEING SERVED

with (list documents) SUMMONS; COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF WITH REQUEST FOR JURY TRIAL; APPEARANCES;

by leaving with CORPORATE SYSTEMS LLC, AS REGISTERED AGENT, ACCEPTED BY: JOSH DEHART (MANAGING AGENT EMPLOYED BY CORPORATE SYSTEMS LLC)     At

☒ Business   3500 S. DUPONT HIGHWAY, DOVER, DE 19901

ADDRESS                                          CITY / STATE

On_____ 04/11/2024 _____ AT _____ 2:45 PM _____
        DATE                                   TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on_____

DATE

from_____
     CITY            STATE            ZIP

**Manner of Service:**
☒ CORPORATE
☐ **Personal:** By personally delivering copies to the person being served.
☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of 18_____ and explaining the general nature of the papers.
☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

☐ **Non-Service:** After due search, careful inquiry and diligent attempts at the address (es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address   ☐ Moved, Left no Forwarding   ☐ Service Cancelled by Litigant ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist ☐ Other

**Service Attempts:** Service was attempted on: (1)_____ ____ (2)_____ ____
                                              DATE    TIME      DATE   TIME

(3)_____ ____ (4)_____ ____ (5)_____ ____
   DATE   TIME      DATE   TIME      DATE   TIME

AGE 45   Sex MALE Race WHITE Height 5'9   Weight 170   HAIR BROWN

SIGNATURE OF PROCESS SERVER
FRANK PRITCHETT
PROCESS SERVER

SUBSCRIBED AND SWORN in the State of Delaware, New Castle County before me this 11TH day of APRIL ,2024

KEVIN DUNN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires on July 26, 2026

SIGNATURE OF NOTARY PUBLIC

NOTARY PUBLIC for the state of DELAWARE

NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS

# Affidavit of Process Server

IN THE SUPERIOR COURT OF SHELBY COUNTY, INDIANA

| STATE OF INDIANA | VS | 3M COMPANY, ET AL. | 73D01-2404-PL-000009 |
|---|---|---|---|
| PLAINTIFF/PETITIONER | | DEFENDANT/RESPONDENT | CASE NUMBER |

I GILBERT DEL VALLE _____ being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.   RECEIVED 04/11/2024

**Service:** I served _____ DUPONT DE NEMOURS, INC., f/k/a DOWDUPONT INC. _____
NAME OF PERSON / ENTITY BEING SERVED

with (list documents) SUMMONS; COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF WITH REQUEST FOR JURY TRIAL; APPEARANCES;

by leaving with THE CORPORATION TRUST COMPANY AS REGISTERED AGENT, ACCEPTED BY: ROBIN   At
HUTT-BANKS (MANAGING AGENT EMPLOYED BY THE CORPORATION TRUST COMPANY)

☒ **Business**   1209 ORANGE ST., WILMINGTON, DE 19801
ADDRESS                                                    CITY / STATE

On ___ 04/11/2024 ___ AT ___ 10:30 AM ___
DATE                                        TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on _____
DATE

from _____
CITY                    STATE                ZIP
**Manner of Service:**
☒ CORPORATE

☐ **Personal:** By personally delivering copies to the person being served.

☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of _____ and explaining the general nature of the papers.

☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.

☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

☐ **Non-Service:** After due search, careful inquiry and diligent attempts at the address (es) listed above. I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address   ☐ Moved, Left no Forwarding   ☐ Service Cancelled by Litigant ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist ☐ Other_____

**Service Attempts:** Service was attempted on: (1)_____ (2)_____
DATE          TIME              DATE        TIME

(3)_____ (4)_____ (5)_____
DATE    TIME          DATE      TIME          DATE    TIME

AGE   55   Sex FEMALE Race BLACK Height 5'5   Weight 150   HAIR BLACK

GILBERT DEL VALLE

SUBSCRIBED AND SWORN to before me this 11TH   day of APRIL _____ ,2024

| KEVIN DUNN |
| NOTARY PUBLIC |
| STATE OF DELAWARE |
| My Commission Expires on July 26, 2026 |

SIGNATURE OF NOTARY PUBLIC

NOTARY PUBLIC for the state of   DELAWARE

NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS

## AFFIDAVIT OF SERVICE

| Case:<br>73D01-2404-PL-000009 | Court:<br>STATE OF INDIANA IN THE SHELBY COUNTY SUPERIOR COURT | County:<br>Shelby, IN | Job:<br>10845067 |
|---|---|---|---|
| **Plaintiff / Petitioner:**<br>STATE OF INDIANA | | **Defendant / Respondent:**<br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious) | |
| **Received by:**<br>Hoosier Process Service, LLC | | **For:**<br>Classic Legal Support, Inc. | |
| **To be served upon:**<br>Corteva, Inc. c/o Registered Agent CT Corporation System | | | |

I, Jon Robb, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   Patrick Jones, 334 North Senate Avenue, Indianapolis, IN 46204

**Manner of Service:**   Corporation, Apr 11, 2024, 11:18 am EDT

**Documents:**   Summons, COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF REQUEST FOR JURY TRIAL, APPEARANCE, APPEARANCE, APPEARANCE

**Additional Comments:**
1) Successful Attempt: Apr 11, 2024, 11:18 am EDT at 334 North Senate Avenue, Indianapolis, IN 46204 received by Patrick Jones. Relationship: Authorized Agent;

_____
Jon Robb                                    04/12/2024
                                                    Date

Hoosier Process Service, LLC
Indianapolis, IN 46254
317-829-0420

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
Notary Public

4/12/24                     1/15/32
Date                          Commission Expires

TARYN BURKE
Notary Public, State of Indiana
Hendricks County
Commission Number NP0753686
My Commission Expires
January 15, 2032
SEAL

## AFFIDAVIT OF SERVICE

| Case: 73D01-2404-PL-000009 | Court: STATE OF INDIANA IN THE SHELBY COUNTY SUPERIOR COURT | County: Shelby, IN | Job: 10845142 |
|---|---|---|---|
| **Plaintiff / Petitioner:** STATE OF INDIANA | | **Defendant / Respondent:** 3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious) | |
| **Received by:** Hoosier Process Service, LLC | | **For:** Classic Legal Support, Inc. | |
| **To be served upon:** Clariant Corporation c/o Registered Agent Corporation Service Company | | | |

I, Jon Robb, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   Hannah Rarick, 135 North Pennsylvania Street Suite 1610, Indianapolis, IN 46204

**Manner of Service:**   Corporation, Apr 11, 2024, 11:29 am EDT

**Documents:**   Summons, COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF REQUEST FOR JURY TRIAL, APPEARANCE, APPEARANCE, APPEARANCE

**Additional Comments:**
1) Successful Attempt: Apr 11, 2024, 11:29 am EDT at 135 North Pennsylvania Street Suite 1610, Indianapolis, IN 46204 received by Hannah Rarick. Relationship: Authorized Agent;

Jon Robb                                              04/12/2024

Jon Robb                                                 Date

Hoosier Process Service, LLC
Indianapolis, IN 46254
317-829-0420

Subscribed and sworn to before me by the affiant who is personally known to me.

Notary Public

4/12/24                          1/15/32

Date                          Commission Expires

TARYN BURKE
Notary Public, State of Indiana
Hendricks County
Commission Number NP0753885
My Commission Expires
January 15, 2032

## AFFIDAVIT OF SERVICE

| Case:<br>73D01-2404-PL-<br>000009 | Court:<br>STATE OF INDIANA IN THE SHELBY COUNTY<br>SUPERIOR COURT | County:<br>Shelby, IN | Job:<br>10845078 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>STATE OF INDIANA | | Defendant / Respondent:<br>3M COMPANY; ASC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious) | |
| Received by:<br>Hoosier Process Service, LLC | | For:<br>Classic Legal Support, Inc. | |
| To be served upon:<br>The Chemours Company c/o Registered Agent CT Corporation System | | | |

I, Jon Robb, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:     Patrick Jones, 334 North Senate Avenue, Indianapolis, IN 46204

Manner of Service:     Corporation, Apr 11, 2024, 11:18 am EDT

Documents:     Summons, COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF REQUEST FOR JURY TRIAL, APPEARANCE, APPEARANCE, APPEARANCE

Additional Comments:
1) Successful Attempt: Apr 11, 2024, 11:18 am EDT at 334 North Senate Avenue, Indianapolis, IN 46204 received by Patrick Jones.
Relationship: Authorized Agent;

Jon Robb

04/12/2024
Date

Hoosier Process Service, LLC
Indianapolis, IN 46254
317-829-0420

Subscribed and sworn to before me by the affiant who is
personally known to me.

Notary Public

4/12/24
Date

1/15/32
Commission Expires

TARYN BURKE
Notary Public, State of Indiana
Hendricks County
Commission Number NP0753885
My Commission Expires
January 15, 2032
SEAL

## AFFIDAVIT OF SERVICE

**State of Indiana**                    **County of Shelby**                    **Superior Court**

Case Number: 73D01-2404-PL-000009

Plaintiff: **STATE OF INDIANA**
vs.
Defendant: **3M COMPANY; AGC CHEMICALS
AMERICAS, INC.; ARCHROMA U.S.,
INC.; ARKEMA INC.; BASF
CORPORATION; BUCKEYE FIRE
EQUIPMENT COMPANY; CARRIER FIRE
& SECURITY CORPORATION; CARRIER
FIRE & SECURITY AMERICAS
CORPORATION; CARRIER GLOBAL
CORPORATION; CHEMDESIGN
PRODUCTS, INC.; CHEMGUARD, INC.;
CLARIANT CORPORATION; CORTEVA,
INC.; DUPONT DE NEMOURS, INC.;
DYNAX CORPORATION; EIDP, INC.,
F/K/A E.I. DU PONT DE NEMOURS AND
COMPANY; THE CHEMOURS
COMPANY; KIDDE-FENWAL, INC.;
KIDDE LIMITED; et. al.**

For:
Theodore E. Rokita
302 West Washington St.
5th Floor
Indianapolis, IN 46204

Received by Anthony Collins on the 10th day of April, 2024 at 3:34 pm to be served on **Chemguard Inc. c/o
Registered Agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Dallas County, TX
75201**.

I, Anthony Collins, being duly sworn, depose and say that on the **11th day of April, 2024** at **2:50 pm, I:**

Executed service by hand delivering a true copy of the **Summons, Complaint for damages and
injunctive relief** to: **George Martinez ,** an authorized acceptance agent employed by **Registered Agent
CT Corporation System, Inc.,** who is authorized to accept service of process for **Chemguard Inc. ,** at
the address of: **1999 Bryan Street, Suite 900, Dallas, Dallas County, TX 75201**, and informed said
person of the contents therein, in compliance with state statutes.

"I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process
Server in good standing in the judicial circuit in which the process was served. I have personal knowledge
of the facts set forth in this affidavit, and they are true and correct."

CHARLES PARKER GOODSON
Notary Public, State of Texas
Comm. Expires 10-27-2027
Notary ID 130419821

**Anthony Collins**
PSC-357 Expires 12/31/2025

Subscribed and Sworn to before me on the 15th day
of April, 2024 by the affiant who is personally known
to me.

NOTARY PUBLIC

**Classic Legal Support, Inc.**
**475 Park Avenue South**
**18th floor**
**New York, NY 10016**
**(212) 889-3200**

Our Job Serial Number: ONT-2024002696



STATE OF INDIANA
IN THE SHELBY COUNTY
SUPERIOR COURT

STATE OF INDIANA

v.                                                    Case No. 73D01-2404-PL-9

3M COMPANY, ET AL.

## AFFIDAVIT OF SERVICE

STATE OF WISCONSIN          )
                            ) ss.
COUNTY OF DANE              )

Kamille Valenzuela-Sanchez, an adult resident of the State of Wisconsin, not a party to this action, being duly sworn under oath, deposes that on April 11, 2024, at 12:22 PM, in the City of Madison, Dane County, Wisconsin, at *33 East Main Street, Suite 610*, **ChemDesign Products, Inc.** were served with an authenticated copy of the Summon and Complaint for Damages and Injunctive Relief and Request for Jury Trial in the above-referenced matter by then and there leaving copies thereof with Nicholas Santas, Legal Assistant, a person authorized to accept service on behalf of said Company. Registered Agent of said corporation. Such copies were endorsed with my name, the date and time of service.

Subscribed and sworn to before me
The __16__ day of April, . 2024.

Notary Public, Dane County, WI
My Commission expires 9-4-25

Kamille Valenzuela-Sanchez
Process Server
Dane County Legal Notice, LLC
6041 Monona Drive, Suite 105
Madison, Wisconsin 53716
(608)251-1181

## AFFIDAVIT OF SERVICE

| Case: 73D01-2404-PL-000009 | Court: STATE OF INDIANA IN THE SHELBY COUNTY SUPERIOR COURT | County: Shelby, IN | Job: 10845123 |
|---|---|---|---|
| Plaintiff / Petitioner: STATE OF INDIANA | | Defendant / Respondent: 3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious) | |
| Received by: Hoosier Process Service, LLC | | For: Classic Legal Support, Inc. | |
| To be served upon: Carrier Fire & Security Americas Corporation c/o Registered Agent United Agent Group Inc. | | | |

I, Jon Robb, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   Patrick Kukura, 8520 Allison Pointe Boulevard #220, Indianapolis, IN 46250

**Manner of Service:**   Corporation, Apr 11, 2024, 12:20 pm EDT

**Documents:**   Summons, COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF REQUEST FOR JURY TRIAL, APPEARANCE, APPEARANCE, APPEARANCE

**Additional Comments:**
1) Successful Attempt: Apr 11, 2024, 12:20 pm EDT at 8520 Allison Pointe Boulevard #220, Indianapolis, IN 46250 received by Patrick Kukura. Relationship: Authorized Agent;

Jon Robb

04/15/2024
Date

Hoosier Process Service, LLC
Indianapolis, IN 46254
317-823-0420

Subscribed and sworn to before me by the affiant who is personally known to me.

Notary Public

4/15/24
Date

1/15/24
Commission Expires



TARYN BURKE
Notary Public, State of Indiana
Hendricks County
Commission Number NP0753885
My Commission Expires
January 15, 2022

## AFFIDAVIT OF SERVICE

| Case:<br>73D01-2404-PL-<br>000009 | Court:<br>STATE OF INDIANA IN THE SHELBY COUNTY<br>SUPERIOR COURT | County:<br>Shelby, IN | Job:<br>10845083 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>STATE OF INDIANA | | Defendant / Respondent:<br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious) | |
| Received by:<br>Hoosier Process Service, LLC | | For:<br>Classic Legal Support, Inc. | |
| To be served upon:<br>BASF Corporation c/o Registered Agent CT Corporation System | | | |

I, Jon Robb, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:   Patrick Jones, 334 North Senate Avenue, Indianapolis, IN 46204

Manner of Service:   Corporation, Apr 11, 2024, 11:18 am EDT

Documents:   Summons, COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF REQUEST FOR JURY TRIAL, APPEARANCE, APPEARANCE, APPEARANCE

Additional Comments:
1) Successful Attempt: Apr 11, 2024, 11:18 am EDT at 334 North Senate Avenue, Indianapolis, IN 46204 received by Patrick Jones.
Relationship: Authorized Agent;

| | |
|---|---|
| _Jon Robb_ | 04/12/2024 |
| Jon Robb | Date |

Hoosier Process Service, LLC
Indianapolis, IN 46254
317-829-0420

Subscribed and sworn to before me by the affiant who is personally known to me.

_Tary Burke_

Notary Public

4/12/24          1/15/32

Date          Commission Expires

TARYN BURKE
Notary Public, State of Indiana
Hendricks County
Commission Number NP0753885
My Commission Expires
January 15, 2032
NOTARY PUB
SEAL
INDIANA

## AFFIDAVIT OF SERVICE

| Case:<br>73D01-2404-PL-000009 | Court:<br>STATE OF INDIANA IN THE SHELBY COUNTY SUPERIOR COURT | County:<br>Shelby, IN | Job:<br>10845150 |
|---|---|---|---|
| **Plaintiff / Petitioner:**<br>STATE OF INDIANA | **Defendant / Respondent:**<br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious) | | |
| **Received by:**<br>Hoosier Process Service, LLC | **For:**<br>Classic Legal Support, Inc. | | |
| **To be served upon:**<br>Arkema Inc. c/o Registered Agent Corporation Service Company | | | |

I, Jon Robb, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein.

**Recipient Name / Address:**  Hannah Rarick, 135 North Pennsylvania Street Suite 1610, Indianapolis, IN 46204

**Manner of Service:**  Corporation, Apr 11, 2024, 11:29 am EDT

**Documents:**  Summons, COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF REQUEST FOR JURY TRIAL, APPEARANCE, APPEARANCE, APPEARANCE

**Additional Comments:**
1) Successful Attempt: Apr 11, 2024, 11:29 am EDT at 135 North Pennsylvania Street Suite 1610, Indianapolis, IN 46204 received by Hannah Rarick. Relationship: Authorized Agent;

_____  04/12/2024
Jon Robb                                     Date

Hoosier Process Service, LLC
Indianapolis, IN 46254
317-829-0420

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
Notary Public

4/12/24                    1/15/32
Date                    Commission Expires

TARYN BURKE
Notary Public, State of Indiana
Hendricks County
Commission Number NP0753885
My Commission Expires
January 15, 2032

# AFFIDAVIT OF SERVICE

| Case:<br>73D01-2404-PL-<br>000009 | Court:<br>STATE OF INDIANA IN THE SHELBY COUNTY<br>SUPERIOR COURT | County:<br>Shelby, IN | Job:<br>10845087 |
|---|---|---|---|
| **Plaintiff / Petitioner:**<br>STATE OF INDIANA | | **Defendant / Respondent:**<br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious) | |
| **Received by:**<br>Hoosier Process Service, LLC | | **For:**<br>Classic Legal Support, Inc. | |
| **To be served upon:**<br>Archroma U.S., Inc. c/o Registered Agent CT Corporation System | | | |

I, Jon Robb, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   Patrick Jones, 334 North Senate Avenue, Indianapolis, IN 46204

**Manner of Service:**   Corporation, Apr 11, 2024, 11:18 am EDT

**Documents:**   Summons, COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF REQUEST FOR JURY TRIAL, APPEARANCE, APPEARANCE, APPEARANCE

**Additional Comments:**
1) Successful Attempt: Apr 11, 2024, 11:18 am EDT at 334 North Senate Avenue, Indianapolis, IN 46204 received by Patrick Jones. Relationship: Authorized Agent;

Jon Robb

04/12/2024
Date

Hoosier Process Service, LLC
Indianapolis, IN 46254
317-829-0420

Subscribed and sworn to before me by the affiant who is
personally known to me.

Taryn Burke

Notary Public

4/12/24
Date

1/15/32
Commission Expires

TARYN BURKE
Notary Public, State of Indiana
Hendricks County
Commission Number NP0793885
My Commission Expires
January 15, 2032

# AFFIDAVIT OF SERVICE

| Case:<br>73D01-2404-PL-000009 | Court:<br>STATE OF INDIANA IN THE SHELBY COUNTY<br>SUPERIOR COURT | County:<br>Shelby, IN | Job:<br>10845093 |
|---|---|---|---|
| **Plaintiff / Petitioner:**<br>STATE OF INDIANA | | **Defendant / Respondent:**<br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., F/K/A E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; UNITED TECHNOLOGY CORPORATION N/K/A RTX CORPORATION; and ABC CORPORATIONS 1-10 (Names Fictitious) | |
| **Received by:**<br>Hoosier Process Service, LLC | | **For:**<br>Classic Legal Support, Inc. | |
| **To be served upon:**<br>AGC Chemicals Americas, Inc. c/o Registered Agent CT Corporation System | | | |

I, Jon Robb, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Patrick Jones, 334 North Senate Avenue, Indianapolis, IN 46204

**Manner of Service:** Corporation, Apr 11, 2024, 11:18 am EDT

**Documents:** Summons, COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF REQUEST FOR JURY TRIAL, APPEARANCE, APPEARANCE, APPEARANCE

**Additional Comments:**
1) Successful Attempt: Apr 11, 2024, 11:18 am EDT at 334 North Senate Avenue, Indianapolis, IN 46204 received by Patrick Jones.
Relationship: Authorized Agent;

Jon Robb

04/12/2024

Date

Hoosier Process Service, LLC
Indianapolis, IN 46254
317-829-0420

Subscribed and sworn to before me by the affiant who is personally known to me.

Notary Public

4/12/24

Date

1/15/32

Commission Expires

TARYN BURKE
Notary Public, State of Indiana
Hendricks County
[SEAL]
Commission Number NP0753885
My Commission Expires
January 15, 2032

Filed: 8/25/2024 10:02 AM
Judge, Superior Court 1
Shelby County, Indiana
RS

Exhibit B

# AFFIDAVIT OF SERVICE

*IN THE SUPERIOR COURT OF SHELBY COUNTY, INDIANA*

*Case No.: 73D01-2404-PL-000009*

*STATE OF INDIANA,*

**Plaintiff,**

-against-

*3M COMPANY, ET AL,*

**Defendants.**

*State of North Carolina, County of Gaston SS:*
**BOBBY POOLE**
Being duly sworn, deposes and says that he is over eighteen years of age, is not a party to this action, and resides in the State of North Carolina

That on the 12th day of **APRIL 2024** at: **1:30 PM**

At: **C/O KEVIN BEWER, 110 KINGS Rd., KINOS MT., N.C. 28086**

Deponent served the: **SUMMONS, COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIVE WITH REQUEST FOR JURY TRIAL, APPEARANCES**

Upon: **BUCKEYE FIRE EQUIPMENT COMPANY**

**PERSONAL SERVICE ON A LIMITED LIABILITY COMPANY**
A Limited Liability Company by delivering thereat a true copy to **JACKIE GOLD** personally, who stated, that she is the said individual *Authorized to Accept Service* on behalf of **BUCKEYE FIRE EQUIPMENT COMPANY**

**DESCRIPTION** -- Deponent describes the individual served as follows:
Sex: **FEMALE** Color: **WHITE** Hair: **BLONDE/GRAY** App. Age: **50** App. Ht. **5'10"** App. Wt. **140 lbs.**
Other identifying features: **GLASSES**

Subscribed and sworn to before
me this ___ day of **APRIL 2024**

Granct Moser

My Commission Expires
10/13/2025

**BOBBY POOLE (Process Server)**
c/o CLASSIC LEGAL SUPPORT # 2022186-DCA
475 PARK AVE SOUTH, 23rd FLOOR
NEW YORK, NEW YORK 10016
(212) 889 3200

## AFFIDAVIT OF SERVICE

**State of Indiana**                    **County of Shelby**                    **Superior Court**

Case Number: 73D01-2404-PL-000009

Plaintiff:
**State of Indiana**

vs.

Defendant:
**3M Company, et al.**

For:
Classic Legal Support Inc.
475 Park Avenue South
18th Floor
New York, NY 10016

Received by Richmond Court Services Inc. to be served on **United Technologies Corporation c/o CT Corporation System (Registered Agent), 4701 Cox Road, Suite 285, Glen Allen, VA 23060**.

I, Kenneth Condrey, being duly sworn, depose and say that on the **12th day of April, 2024** at **2:20 pm**, I:

served an **AUTHORIZED** entity by delivering a true copy of the **Summons & Complaint for Damages and Injunctive Relief** to: **Katie Bush** as **Authorized Agent** at the address of: **4701 Cox Road, Suite 285, Glen Allen, VA 23060**, who stated they are authorized to accept service for **United Technologies Corporation**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 40, Sex: F, Race/Skin Color: White, Height: 5'4", Weight: 220, Hair: Hair, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 12th day
of April, 2024 by the affiant who is personally known
to me.

NOTARY PUBLIC

**Kenneth Condrey**
Process Server

**Richmond Court Services Inc.**
**7742 Robinwood Drive**
**Chesterfield, VA 23832**
**(804) 271-1442**

Our Job Serial Number: RCT-2024000601

Copyright © 1992-2024 DreamBuilt Software, Inc. - Process Server's Toolbox V8.2w

## VERIFIED RETURN OF SERVICE

State of Indiana             County of Shelby             SUPERIOR Court

Case Number: 73D01-2402-PL-000009

Plaintiff,:
**STATE OF INDIANA,**

vs.

Defendants:
**3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; EIDP, INC., FIKIA E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.; TYCO**

For:
THEODORE E. ROKITA, ESQ.
ATTORNEY GENERAL OF INDIANA
302 WEST WASHINGTON ST.,
5th Floor
INDIANAPOLIS, IN 46204

Received by CLASSIC LEGAL SUPPORT, INC. on the 11th day of April, 2024 at 11:00 am to be served on **CARRIER GLOBAL CORPORATION C/O REGISTERED AGENT: UNITED AGENT GROUP, 801 U.S. HIGHWAY ONE, NORTH PALM BEACH, FL 33408.**

I, MARSHALL A. BISHOP, being duly sworn, depose and say that on the **12th day of April, 2024** at **1:20 pm, I:**

served a **CORPORATION** by serving a true copy of the **SUMMONS / COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF / APPEARANCE x (3).** with the date and hour of service endorsed thereon by me, to: **UNITED AGENT GROUP, INC.** as **Registered Agent** at the address of: **801 U.S. HIGHWAY ONE, NORTH PALM BEACH, FL 33408** on behalf of **CARRIER GLOBAL CORPORATION**, and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
SERVICE ACCEPTED BY COLLEEN CARTWRIGHT, S.O.P. SPECIALIST.

**Description** of Person Served: Age: 35, Sex: F, Race/Skin Color: BLK, Height: 5'8", Weight: 240, Hair: BLK, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and have proper authority in the jurisdiction in which this service was effected. Under the penalty of perjury, I declare I have read the foregoing documents and the facts stated in it are true to the best of my knowledge. I am a Certified Process Server / Special Appointed Process Server, in good standing, in the judicial circuit in which the process was served and no Notary is required under F.S.S. 92.525 (2).



Notary Public State of Florida
Sierra Kotlarz
My Commission HH 298454
Expires 8/8/2025

Subscribed and Sworn to before me on the 17th day of April , 2024 by the affiant who is personally known to me.

NOTARY PUBLIC

MARSHALL A. BISHOP
Certified Process Server #785

CLASSIC LEGAL SUPPORT, INC.
475 PARK AVENUE SOUTH, 18TH FL.
NEW YORK, NY 10016

Our Job Serial Number: TEN-2024000571

Copyright © 1992-2024 Database Services, Inc. - Process Server's Toolbox V8.1z

## VERIFIED RETURN OF SERVICE

**State of Indiana**                    **County of Shelby**                    **SUPERIOR Court**

Case Number: 73D01-2402-PL-000009

Plaintiff,:
**STATE OF INDIANA,**

vs.

Defendants:
**3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA
INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE &
SECURITY CORPORATION; CARRIER FIRE & SECURITY AMERICAS CORPORATION;
CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD,
INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX
CORPORATION; EIDP, INC., FIKIA E.I. DU PONT DE NEMOURS AND COMPANY; THE
CHEMOURS COMPANY; KIDDE-FENWAL, INC.; KIDDE LIMITED; NATIONAL FOAM, INC.;
TYCO**

For:
THEODORE E. ROKITA, ESQ.
ATTORNEY GENERAL OF INDIANA
302 WEST WASHINGTON ST.,
5th Floor
INDIANAPOLIS, IN 46204

Received by CLASSIC LEGAL SUPPORT, INC. on the 11th day of April, 2024 at 11:00 am to be served on **CARRIER FIRE &
SECURITY CORPORATION C/O REGISTERED AGENT: UNITED AGENT GROUP, 801 U.S. HIGHWAY ONE, NORTH PALM
BEACH, FL 33408.**

I, MARSHALL A. BISHOP, being duly sworn, depose and say that on the **12th day of April, 2024** at **1:20 pm,** I:

served a **CORPORATION** by serving a true copy of the **SUMMONS / COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF /
APPEARANCE x (3).** with the date and hour of service endorsed thereon by me, to: **UNITED AGENT GROUP, INC. as Registered
Agent** at the address of: **801 U.S. HIGHWAY ONE, NORTH PALM BEACH, FL 33408** on behalf of **CARRIER FIRE & SECURITY
CORPORATION,** and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
SERVICE ACCEPTED BY COLLEEN CARTWRIGHT, S.O.P. SPECIALIST.

**Description** of Person Served: Age: 35, Sex: F, Race/Skin Color: BLK, Height: 5'8", Weight: 240, Hair: BLK, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and have proper authority in the jurisdiction in which this
service was effected. Under the penalty of perjury, I declare I have read the foregoing documents and the facts stated in it are true to
the best of my knowledge. I am a Certified Process Server / Special Appointed Process Server, in good standing, in the judicial circuit
in which the process was served and no Notary is required under F.S.S. 92.525 (2).



Notary Public State of Florida
Sierra Kotlarz
My Commission HH 298454
Expires 8/8/2026

Subscribed and Sworn to before me on the __17th__ day
of __April__ , __2024__ by the affiant who is
personally known to me.

NOTARY PUBLIC

**MARSHALL A. BISHOP**
Certified Process Server #785

CLASSIC LEGAL SUPPORT, INC.
475 PARK AVENUE SOUTH, 18TH FL.
NEW YORK, NY 10016

Our Job Serial Number: TEN-2024000570

Copyright © 1992-2024 Database Services, Inc. - Process Server's Toolbox V8.1z